## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, <u>et al.</u>[1] | Case No. 16-11354 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO CONTINUE FACTORING THEIR RECEIVABLES UNDER VARIOUS FACTORING AGREEMENTS

The above-captioned debtors and debtors in possession (each a "<u>Debtor</u>," and

collectively, the "<u>Debtors</u>") submit this motion (the "<u>Motion</u>") pursuant to sections 105(a),

363(b)(1), 363(c)(1) and 364(c)(3) of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"), rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

<u>Rules</u>"), and rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), requesting entry of an

interim order (the "<u>Interim Order</u>") and a final order (the "<u>Final Order</u>") authorizing, but not

requiring,  the Debtors to (i) continue factoring their customer accounts receivable (the

"<u>Receivables</u>") under various factoring agreements (each, a "<u>Factoring Agreement</u>" and

collectively, the "<u>Factoring Agreements</u>"), (ii) satisfy their obligations related to the Factoring

Agreements, and (iii) in their discretion, negotiate and enter into additional factoring agreements

on terms that are the same or generally similar to those described in this Motion.  In support of

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857).  The mailing address for each Debtor is 1900 West Field Court, Lake Forest, Illinois 60045.

this Motion, the Debtors submit the *Declaration of Brian Whittman in Support of the Debtors'*
*Chapter 11 Petitions and First Day Pleadings* (the "Whittman Declaration"), filed
contemporaneously herewith and incorporated by reference.  In further support of this Motion,
the Debtors respectfully state as follows:

## STATUS OF THE CASE AND JURISDICTION

1.       On June 2, 2016, (the "Petition Date"), each of the Debtors filed a voluntary
petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this
Motion, the Debtors have requested procedural consolidation and joint administration of these
chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2.       The Debtors continue to operate their businesses and manage their properties as
debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party
has requested the appointment of a trustee or examiner in these cases, and no statutory committee
has been appointed.

3.       The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*
*Standing Order of Reference from the United States District Court for the District of Delaware*,
dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. §
157(b)(2).  The Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a
final order or judgment by the Court in connection with this Motion if it is determined that the
Court, absent consent of the parties, cannot enter final orders or judgments in connection
herewith consistent with Article III of the United States Constitution.

4.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory and other bases for the relief requested in this Motion are sections 105(a), 363(b)(1), 363(c)(1) and 364(c)(3) of the Bankruptcy Code, Bankruptcy Rules 4001 and 6004, and Local Rule 4001-2.

## BACKGROUND OF THE DEBTORS

6. The Debtors are leaders in the design, manufacturing, and distribution of vehicle replacement parts, including a broad range of filtration, fuel delivery systems, and cooling systems products in the automotive, trucking, marine, mining, construction, agricultural, and industrial vehicles markets. Together with their non-Debtor subsidiaries, the Debtors operate out of twelve manufacturing facilities and fourteen distribution and warehouse facilities in North America, Europe and Asia. The Debtors have approximately 1,800 employees, all of whom are located in the United States.

7. Headquartered in Lake Forest, Illinois, Debtor UCI International, LLC ("UCI") is a holding company that conducts its business through three principal operating subsidiary Debtors and their respective affiliates: Airtex Products, LP, Champion Laboratories, Inc., and ASC Industries, Inc. UCI is an indirect wholly-owned subsidiary of Debtor UCI Holdings Limited, a New Zealand limited liability company and an intermediate parent of the other Debtors and their respective non-Debtor affiliates.

8. Additional information regarding the Debtors' businesses and the events preceding the Petition Date may be found in the Whittman Declaration.

## RELIEF REQUESTED

9. In the ordinary course of the Debtors' business, the Debtors have, at the request of certain customers, factored such customers' Receivables. The Debtors believe that they are authorized pursuant to section 363(c) of the Bankruptcy Code to continue factoring the

Receivables, including pursuant to the Factoring Agreements, as part of their ordinary course business operations.  However, in an abundance of caution, by this Motion the Debtors seek entry of the Interim Order and the Final Order authorizing, but not requiring, the Debtors to (i) continue factoring the Receivables under the Factoring Agreements, and (ii) satisfy their obligations related to the Factoring Agreements.  Additionally, the Debtors further seek authorization in the Interim Order and Final Order to, in their discretion, negotiate and enter into additional factoring agreements on terms that are the same or generally similar to those described in this Motion.

## OVERVIEW OF THE RECEIVABLES FACTORING

10.      The Debtors generally rely on various sources of liquidity.  In addition to cash flow from operations and debt facility borrowings, the Debtors generate significant liquidity by selling the Receivables pursuant to various factoring relationships.[2]

### A.      The Debtors' Factoring Relationships

11.      The Debtors' products are sold to a diverse group of customers, including certain large retailers across the United States.  As a condition to conducting business with the Debtors, several of the Debtors' retail customers require extended payment terms that can reach approximately 360 days, resulting in a significant time lapse between when the Debtors deliver and receive payment for their products.

---

[2] Prior to the Petition Date, the Debtors made borrowings under their prepetition asset-based loan facility. Concurrently with the filing of this Motion, the Debtors have filed a motion seeking authority to, among other things, continue to use certain cash collateral.  See Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to the Prepetition ABL Agent Pursuant to 11 U.S.C. §§ 105(a), 361, 362, 363, 364 and 507; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b); and (IV) Granting Related Relief (the "Cash Collateral Motion").  The budget presented in the Cash Collateral Motion does not account for the continuation of factoring under the Factoring Agreements.  While the Debtors are optimistic that the Factoring Banks will continue to accept the Receivables for factoring during the pendency of these chapter 11 cases, as of the Petition Date, it is uncertain whether these arrangements will in fact continue.

12.     To enable their vendors, including the Debtors, to offer the extended payment terms, certain of the Debtors' customers (each a "Participating Customer," and collectively, the "Participating Customers") arrange for their vendors to enter into agreements with banks under which the banks may purchase the Participating Customer's Receivables from the vendors without recourse (i.e., the banks' remedy for nonpayment of the Receivables by a Participating Customer comes from the Participating Customer rather than the vendor).  In order to meet the demands of the Participating Customers without compromising their ability to maintain sufficient liquidity, the Debtors, in the ordinary course of their business operations, sell certain Receivables to certain banks which purchase or facilitate the purchase of the Receivables under the Factoring Agreements (each a "Factoring Bank," and, collectively the "Factoring Banks").

13.     As of the Petition Date, the Debtors maintain thirty-eight (38) Factoring Agreements arranged by seven (7) Participating Customers with eight (8) Factoring Banks.[3] The Debtors' participation in the Factoring Agreements is an integral component of their relationship with the Participating Customers, and is necessary to prevent such customers from seeking to discount the Debtors' pricing or considering alternative suppliers.  Furthermore, arrangements such as the Factoring Agreements are standard in the Debtors' industry, and an inability to factor the Receivables would put the Debtors at a significant competitive disadvantage.

14.     The Debtors and the Factoring Banks began operating under the first Factoring Agreements in 2004.  Pursuant to the terms of the Factoring Agreements, the Debtors have the option to sell to the Factoring Banks the Receivables due from the Participating Customers.  The relevant Factoring Bank may choose to purchase such Receivables, either on its own behalf or as

---

[3] The Factoring Agreements contain confidential, non-public or proprietary business terms, as well as heavily negotiated and commercially sensitive provisions.  Consequently, this Motion describes the various Factoring Agreements but the specific details of any particular Factoring Agreement have not been disclosed herein.

an agent for a third party, in exchange for an amount equal to the face value of the Receivables,

less the applicable negotiated discount rate and certain fees, as may be applicable, charged by the

Factoring Bank (collectively, the "Factoring Fees").  The Factoring Fees charged by the

Factoring Banks are based on the credit risk of the applicable Participating Customer.  The

Debtors believe that the Factoring Fees are competitive with those charged for similar

transactions in the Debtors' industry.

15.    Following the sale of the Receivables to the Factoring Banks, the Debtors do not

furnish any services in respect of the sold Receivables.  Instead, the transactions executed

pursuant to the Factoring Agreements are contemplated to be true sales of the Receivables.

Accordingly, the Factoring Banks collect the sold Receivables directly from the Participating

Customers and, therefore, assume the risk of the Participating Customers not paying the amounts

due in respect of such Receivables.  In addition, with the exception of certain customary

protections that are provided to the Factoring Banks pursuant to the Factoring Agreements, the

Debtors have no obligations with respect to the sold Receivables, and retain no rights or interests

in the Receivables.

16.    While the Factoring Agreements explicitly provide for a sale of the Receivables

without recourse to the Debtors, the Factoring Agreements also provide certain customary

protections to the Factoring Banks, including, under certain circumstances, the grant of a security

interest in the Receivables.  In particular, to protect the Factoring Banks against the risk that the

sale of certain Receivables will later be deemed a financing arrangement rather than a true sale,

the Factoring Agreements generally require the relevant Debtor to grant to the applicable

Factoring Bank a security interest in the subject Receivables.[4]  For the avoidance of doubt,
however, none of the Debtors or the Factoring Banks intend for the transactions executed
pursuant to the Factoring Agreements to be, or for any purpose to be characterized as, loans from
the Factoring Banks to the Debtors.

17.    The Debtors generate significant liquidity by factoring the Receivables pursuant
to the Factoring Agreements.  During the years ended December 31, 2015 and 2014, the Debtors
sold approximately $214.0 million and $240.8 million of Receivables, respectively.  As of the
Petition Date, approximately $33.8 million of Receivables are eligible for sale pursuant to the
Factoring Agreements.

## BASIS FOR RELIEF REQUESTED

### A.    Section 363(c) of the Bankruptcy Code Authorizes the Debtors to Continue Factoring the Receivables.

18.    The Debtors believe that Section 363(c) of the Bankruptcy Code provides
authority for the Debtors to continue factoring the Receivables, including pursuant to the
Factoring Agreements.  Specifically, section 363(c)(1) provides that a debtor in possession "may
enter into transactions, including the sale or lease of property of the estate, in the ordinary course
of business, without notice or a hearing, and may use property of the estate in the ordinary course
of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  Pursuant to sections 1107 and
1108 of the Bankruptcy Code, the Debtors are operating as debtors in possession.

19.    As further described above, the Factoring Agreements expressly contemplate true
sales of the Receivables to the Factoring Banks.  The Debtors seek to continue such sales on
terms and conditions similar to those regularly utilized by the Debtors prior to the Petition Date.

---

[4] For example, many of the Factoring Agreements provide that if a transaction executed pursuant to a Factoring Agreement is determined to be a financing arrangement, then the relevant Debtor shall be deemed to grant to the applicable Factoring Bank a security interest in the subject Receivables.

Accordingly, the Debtors believe that continuing to factor the Receivables pursuant to the Factoring Agreements and similar agreements that may be entered from time to time by the Debtors is authorized under section 363(c)(1) of the Bankruptcy Code.

**B.      The Debtors' Factoring Activities are a Sound Exercise of the Debtors' Business Judgment and in the Best Interests of the Debtors' Estates.**

20.      To the extent applicable, the requirements of Section 363(b) of the Bankruptcy Code are also satisfied.  Section 363(b) of the Bankruptcy Code states that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ."  Under the law of this Circuit and others, if a debtor's proposed use of its assets represents a reasonable business judgment, such use should be approved pursuant to section 363(b) of the Bankruptcy Code.  See, e.g., Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 143, 145 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070–71 (2d Cir. 1983) (stating that a judge ruling on a motion under § 363(b) should determine whether there is a good business reason to grant the request); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175–76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); see also In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (a bankruptcy court is authorized to approve the sale of assets of the estate outside of the ordinary course of business if the debtors articulate a reasonable business reason for the sale). Additionally, section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105 (a).

21.     The Factoring Agreements enable the Debtors to offer industry-competitive payment terms to the Participating Customers while maintaining sufficient liquidity to continue operations.  If the relief requested herein is not granted, the Participating Customers may insist upon imposing certain discounts to the Debtors' pricing, may demand extended payment terms without the benefit of factoring, and may even seek alternative suppliers.  Moreover, absent access to the liquidity provided by the Factoring Agreements, the Debtors would experience difficulties in continuing their operations while also meeting their ongoing obligations to suppliers, vendors, employees, and other creditors.  If the Debtors are unable to access sufficient liquidity to fund their ongoing operations, they will face operational constraints that would jeopardize the success of their reorganization.  In contrast, preservation of the Factoring Agreements and authorization to enter similar agreements on a postpetition basis will promote stability during these chapter 11 proceedings and facilitate the Debtors' ability to operate normally and without undue disruption.  Based on the foregoing, the Debtors believe, in their business judgment, that it is in the best interests of their estates and all parties in interest that the Debtors continue factoring the Receivables under the Factoring Agreements and be authorized to enter into additional factoring agreements on terms that are the same or generally similar to those described in this Motion.

**C.      This Court Should Authorize the Debtors to Continue Granting Security Interests in the Factored Receivables.**

22.     The Debtors and the Factoring Banks intend the transfer of Receivables pursuant to the Factoring Agreements to be true sales.  However, as described above, in order to protect the Factoring Banks against the risk of the sale of certain Receivables later being deemed a financing arrangement rather than a true sale, the Factoring Agreements generally provide that the Debtor selling its Receivables will grant a security interest in the sold Receivables in favor of

the Factoring Bank.  Therefore, the Debtors request that the Court authorize the grant of a

security interest, to the extent required pursuant to the Factoring Agreements or similar

agreements that may be entered by the Debtors, pursuant to Section 364(c) of the Bankruptcy

Code.

23.    Section 364(c) of the Bankruptcy Code provides that when a debtor in possession

"is unable to obtain unsecured credit allowable under section 503(b)(1) . . . the court, after notice

and a hearing, may authorize the obtaining of credit or the incurring of debt . . . secured by a lien

on property of the estate that is not otherwise subject to a lien . . . or secured by a junior lien on

property of the estate that is subject to a lien."  To show that the credit required is not obtainable

on an unsecured basis, the debtor need only demonstrate "by a good faith effort that credit was

not available" without the protections afforded to potential lenders by sections 364(c) or 364(d)

of the Bankruptcy Code.  Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789

F.2d 1085, 1088 (4th Cir. 1986).  Thus, "[t]he statute imposes no duty to seek credit from every

possible lender before concluding that such credit is unavailable."  Id. at 1088.

24.    The Debtors, before entering into the Factoring Agreements, engaged in

commercially reasonable efforts to secure the most favorable terms possible.  Indeed, prior to

entering into each of the Factoring Agreements, the Debtors' legal and business personnel

reviewed and analyzed proposed terms from the relevant Factoring Bank.  In each case, the

Debtors and relevant Factoring Bank then negotiated specific terms of the Factoring Agreement

before executing it, including recourse language, discount rates and terms governing

collectability.  Often, the Factoring Agreements went through a series of negotiations prior to

execution.  The Debtors do not believe that they now could secure liquidity on more favorable

terms than those provided by the Factoring Agreements.

25.      Moreover, under each of the Factoring Agreements, the Factoring Banks may, in their sole discretion, accept or reject any Receivables the Debtors offer for sale.  There exists a significant risk that absent a court order authorizing the Debtors' continued performance under the Factoring Agreements, including their ability to grant security interests in the factored Receivables, the Factoring Banks would stop purchasing the Receivables altogether.[5]  If the Factoring Banks stopped factoring the Receivables, the Debtors would be forced to seek alternate sources of liquidity on less favorable terms than those under the Factoring Agreements.  For these reasons, the Debtors request that the Court authorize the Debtors to continue factoring the Receivables pursuant to the terms and conditions described herein, including granting security interests as provided for in the Factoring Agreements.

> **D.    To the Extent Applicable, the Requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 are Satisfied.**

26.      Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for authority to obtain financing during the 14-day period following the filing of a motion "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2).  In examining requests under Bankruptcy Rule 4001, courts apply the same business judgment standard as is applicable to other business decisions.  See, e.g., In re Ames Dept.Stores, Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

27.      The Debtors believe that the transactions executed pursuant to the Factoring Agreements are true sales, and therefore, do not implicate Bankruptcy Rule 4001(c) or Local Rule 4001-2, which requires certain provisions of financing motions to be highlighted.  In an

---

[5] As of the filing of this Motion, the Debtors have not yet communicated with the Factoring Banks regarding the commencement of these chapter 11 cases.  As a result, while the Debtors are optimistic that the Factoring Banks will continue factoring the Receivables during these chapter 11 cases, the Debtors are not certain whether the Factoring Banks will choose to continue performing under the Factoring Agreements.  The Debtors therefore seek authorization to enter into additional factoring agreements, including to, among other things, replace any Factoring Agreements that may be terminated following the commencement of these chapter 11 cases.

abundance of caution, however, the Debtors submit that, to the extent applicable the requirements of Bankruptcy Rule 4001(c) and Local Rule 4001-2 are satisfied. As further set forth herein, the Debtors must continue to factor the Receivables to maintain sufficient liquidity for their business operations. Accordingly, the relief requested in this Motion is necessary to avert immediate and irreparable harm to the Debtors' operations. Additionally, the Debtors submit that there are no provisions in the Factoring Agreements that are required to be identified in accordance with Local Rule 4001-2.

## RESERVATION OF RIGHTS

28.     Nothing contained in this Motion is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any obligations honored pursuant to the Court's order are not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

29.     Bankruptcy Rule 6003 empowers the Court to issue an order, within twenty-one (21) days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons discussed above, entry of the Interim Order is integral to the Debtors' ability to successfully transition into chapter 11. Specifically, the relief requested is necessary is necessary to avoid a severe disruption in the Debtors' operations at this critical juncture, in order to

preserve the ongoing value of the Debtors' operations and to maximize the value of the Debtors'

estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have

satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support

granting the relief requested herein.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

30.     In addition, by this Motion, the Debtors seek a waiver of any stay of the

effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n

order authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth

above, the Debtors require immediate relief to continue ordinary business operations for the

benefit of all parties in interest.  Accordingly, the Debtors submit that ample cause exists to

justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that

it applies.

## NO PRIOR REQUEST

31.     The Debtors have not previously sought the relief requested herein from this or

any other court.

## NOTICE

32.     Notice of this Motion will be provided to: (i) each of the Participating Customers;

(ii) each of the Factoring Banks; (iii) the Office of the United States Trustee for the District of

Delaware; (iv) the United States Securities and Exchange Commission; (v) the Office of the

United States Attorney for the District of Delaware; (vi) the Internal Revenue Service; (vii) the

holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (viii)

counsel to Credit Suisse AG, Cayman Islands Branch, the administrative agent, collateral agent

and issuing lender for the Debtors' prepetition credit facility; (ix) counsel to Wilmington Trust, N.A., the indenture trustee for the Debtors' prepetition unsecured notes; and (x) counsel to certain holders of the Debtors' prepetition unsecured notes.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final

Order, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively,

granting the relief requested herein and granting such other relief as is just and proper.


Dated:  June 2, 2016         SIDLEY AUSTIN LLP
Wilmington, Delaware       Larry J. Nyhan
                        Jessica C.K. Boelter
                        Kerriann S. Mills
                        Jackson T. Garvey
                        One South Dearborn Street
                        Chicago, Illinois 60603
                        Telephone:  (312) 853-7000
                        Facsimile:  (312) 853-7036

                            -and-

                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

                        */s/ Edmon L. Morton*
                        Robert S. Brady (No. 2847)
                        Edmon L. Morton (No. 3856)
                        Ashley E. Jacobs (No. 5635)
                        Elizabeth S. Justison (No. 5911)
                        Rodney Square
                        1000 North King Street
                        Wilmington, Delaware 19801
                        Telephone:  (302) 571-6600
                        Facsimile:  (302) 571-1253

                        PROPOSED ATTORNEYS FOR THE DEBTORS
                        AND DEBTORS IN POSSESSION

## Exhibit A

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, <u>et al.</u>[1] | Case No. 16-11354 (___) |
| Debtors. | (Joint Administration Requested) |

### INTERIM ORDER GRANTING THE
### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### AUTHORIZING THE DEBTORS TO CONTINUE FACTORING
### <u>THEIR RECEIVABLES UNDER VARIOUS FACTORING AGREEMENTS</u>

Upon the Motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an interim order (this "<u>Interim Order</u>") pursuant to sections 105(a), 363(c)(1), 363(b)(1) and 364(c) of the Bankruptcy Code, Bankruptcy Rules 4001 and 6004, and Local Rule 4001-2, authorizing, but not requiring, the Debtors to (i) continue factoring the Receivables under the Factoring Agreements and to satisfy obligations related thereto, (ii) satisfy their obligations related to the Factoring Agreements, and (iii) in their discretion, negotiate and enter into additional factoring agreements on terms that are the same or generally similar to those described in the Motion; and upon consideration of the Whittman Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding within

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857).  The mailing address for each Debtor is 1900 West Field Court, Lake Forest, Illinois 60045.

[2] Capitalized terms used but not defined herein have the meanings assigned to such terms in the Motion.

the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent

with Article III of the United States Constitution; and venue of this proceeding and the Motion

being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the

opportunity for a hearing on the Motion having been given; and the relief requested in the

Motion being in the best interests of the Debtors' estates, their creditors and other parties in

interest; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors may continue postpetition to factor the Receivables under the

Factoring Agreements on an interim basis.

3.      The Debtors may, in their discretion, negotiate and enter into additional factoring

agreements on terms that are the same or generally similar to those described in the Motion on an

interim basis.

4.      That to the extent required by the Factoring Agreements or any additional

factoring agreements which the Debtors may enter into in accordance with this Interim Order,

the Debtors may grant security interests in the factored Receivables.

5.      To the extent necessary, the Debtors may cause, or allow the counterparties under

any of the Debtors' factoring agreements to cause, financing statements to be filed in the

appropriate location to perfect such security interests.

6.      The Debtors may take any actions necessary to maintain compliance with the

Factoring Agreements or any additional factoring agreements which the Debtors may enter into

in accordance with this Interim Order.

7.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b) because the relief granted in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

9.      The hearing to consider entry of the Final Order shall be held on _____, 2016 at _____ (prevailing Eastern Time) (the "Final Hearing").  Any objections or responses to entry of the Final Order shall be filed on or before _____, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline") and served on the following parties:  (i) the Debtors, 1900 West Field Court, Lake Forest, Illinois 60045, Attn: Keith A. Zar, General Counsel; (ii) proposed counsel for the Debtors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attn: Jessica C.K. Boelter, Esq. and Kerriann S. Mills, Esq., and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Edmon L. Morton, Esq.; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter, Esq.; (iv) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York, 10019, Attn: Paul H. Zumbro, Esq. and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis, Esq. and Matthew B. McGuire, Esq., counsel to Credit Suisse AG, Cayman Islands Branch, in its capacity as the administrative agent and the collateral agent for the Debtors' prepetition credit facility; (v) Wilmington Trust, N.A., in its capacity as the indenture trustee for the Debtors' prepetition notes; (vi) counsel to any statutory committee

appointed in these chapter 11 cases; and (vii) any party that has requested notice pursuant to

Bankruptcy Rule 2002. Notice of this Interim Order will be served in accordance with Local

Rule 9013-1(m).

      10.    Notice of this Motion shall be deemed good and sufficient notice of such Motion

under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Local Rules

are satisfied by such notice.

      11.    This Court shall retain jurisdiction with respect to all matters arising from or

related to the implementation of this Interim Order.

Dated: _____, 2016
Wilmington, Delaware

                                  _____
                                    UNITED STATES BANKRUPTCY JUDGE

**Exhibit B**

**Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, <u>et al.</u>[1] | Case No. 16-11354 (___) |
| Debtors. | (Joint Administration Requested) |

## FINAL ORDER GRANTING THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO CONTINUE FACTORING THEIR RECEIVABLES UNDER VARIOUS FACTORING AGREEMENTS

Upon the Motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of a final order (this "<u>Final Order</u>") pursuant to sections 105(a), 363(c)(1), 363(b)(1) and 364(c) of the Bankruptcy Code, Bankruptcy Rules 4001 and 6004, and Local Rule 4001-2, authorizing, but not requiring, the Debtors to (i) continue factoring the Receivables under the Factoring Agreements, (ii) satisfy their obligations related to the Factoring Agreements, and (iii) in their discretion, negotiate and enter into additional factoring agreements on terms that are the same or generally similar to those described in the Motion; and upon consideration of the Whittman Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857).  The mailing address for each Debtor is 1900 West Field Court, Lake Forest, Illinois 60045.

[2] Capitalized terms used but not defined herein have the meanings assigned to such terms in the Motion.

States Constitution; and venue of this proceeding and the Motion being proper pursuant to 28

U.S.C. §§ 1408 and 1409; and appropriate notice of and the opportunity for a hearing on the

Motion having been given; and the relief requested in the Motion being in the best interests of

the Debtors' estates, their creditors and other parties in interest; and the Court having determined

that the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.　　　The Motion is granted on a final basis.

2.　　　The Debtors may continue postpetition to factor the Receivables under the

Factoring Agreements.

3.　　　The Debtors may, in their discretion, negotiate and enter into additional factoring

agreements on terms that are the same or generally similar to those described in the Motion.

4.　　　To the extent required by the Factoring Agreements or any additional factoring

agreements which the Debtors may enter into in accordance with this Final Order, the Debtors

may grant security interests in the factored Receivables.

5.　　　To the extent necessary, the Debtors may cause, or allow the counterparties under

any of the Debtors' factoring agreements to cause, financing statements to be filed in the

appropriate location to perfect such security interests.

6.　　　The Debtors may take any actions necessary to maintain compliance with the

Factoring Agreements or any additional factoring agreements which the Debtors may enter into

in accordance with this Final Order.

01:18766892.1

7.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or any other Bankruptcy Rule, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

8.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b) because the relief granted in this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

9.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.


Dated: _____, 2016
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE