## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, et al.[1] | Case No. 16-11354 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION ABL SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 363 AND 507; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b); AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

submit this motion (this "Motion") requesting entry of an interim order (the "Interim Order"),[2]

and a final order (the "Final Order") (i) authorizing the Debtors to use the Cash Collateral of the

Prepetition ABL Agent (each as defined below) pursuant to section 363 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 4001, 6003, 6004 and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1,

4001-2 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") (ii) granting adequate protection to the Prepetition ABL Secured

Parties pursuant to sections 105(a), 361, 362, 363 and 507 of the Bankruptcy Code, (iii)

scheduling a hearing to consider entry of the Final Order (the "Final Hearing") pursuant to

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857).  The mailing address for each Debtor is 1900 West Field Court, Lake Forest, Illinois 60045.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Interim Order.

Bankruptcy Rule 4001(b) and (iv) granting related relief.  In support of this Motion, the Debtors

submit the *Declaration of Brian Whittman in Support of the Debtors' Chapter 11 Petitions and

First Day Pleadings* (the "Whittman Declaration"), filed contemporaneously herewith and

incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state

as follows:

## PRELIMINARY STATEMENT

1.      The Debtors' ability to continue their operations without interruption is essential

for the Debtors to maximize the value of their estates for the benefit of all stakeholders and avail

themselves of the "breathing room" afforded by a chapter 11 restructuring.  Absent authority to

use Cash Collateral, even for a short period of time, the Debtors would be forced to undertake

drastic measures such as idling their operations.  Such measures would result in the loss of

virtually all of the Debtors' customers and, in turn, irreparably damage the Debtors' estates.

Accordingly, because the Debtors' continued use of Cash Collateral during the pendency of these

cases is essential to preserve and maintain the going-concern value of their estates, the Debtors

request authorization to use Cash Collateral pursuant to the terms of the Interim Order and the

Final Order.

2.      The Debtors' proposed use of Cash Collateral is premised upon a Budget,

attached hereto as Exhibit B, which assumes that the Debtors' receivables factoring facilities do

not continue on a post-petition basis.[3]   In the event this occurs, as reflected in the Budget, the

Debtors intend to request the Court's authorization to enter into a debtor-in-possession financing

facility to backstop their liquidity needs.  Indeed, the Debtors have received a proposal from the

ad hoc group of noteholders (the "Ad Hoc Group") for such a facility and, while the Debtors have not

---

[3] Although the Debtors have filed a first-day motion to continue their factoring facilities, as of the Petition Date, it is uncertain whether these arrangement will in fact continue.

reached agreement with any party with respect to backstop financing, they are confident that they will be able to obtain suitable financing if needed.  Alternatively, in the event that the receivables factoring facilities do continue on a post-petition basis, the Debtors may have sufficient liquidity to fund the duration of these chapter 11 cases.

<u>**STATUS OF THE CASE AND JURISDICTION**</u>

3.      On June 2, 2016, (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors have requested joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in these cases, and no statutory committee has been appointed.

5.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory and other bases for the relief requested in this Motion are sections 105(a), 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and Local Rules 2002-1, 4001-2 and 9013-1.

## BACKGROUND OF THE DEBTORS

8.      The Debtors are leaders in the design, manufacturing, and distribution of vehicle replacement parts, including a broad range of filtration, fuel delivery systems, and cooling systems products in the automotive, trucking, marine, mining, construction, agricultural, and industrial vehicles markets.  Together with their non-Debtor subsidiaries, the Debtors operate out of twelve manufacturing facilities and fourteen distribution and warehouse facilities in North America, Europe and Asia.  The Debtors have approximately 1,800 employees, all of whom are located in the United States.

9.      Headquartered in Lake Forest, Illinois, Debtor UCI International, LLC ("UCI") is a holding company that conducts its business through three principal operating subsidiary Debtors and their respective affiliates: Airtex Products, LP, Champion Laboratories, Inc., and ASC Industries, Inc..  UCI is an indirect wholly-owned subsidiary of Debtor UCI Holdings Limited ("UCI Holdings"), a New Zealand limited liability company and an intermediate parent of the other Debtors and their respective non-Debtor subsidiaries.

10.     Additional information regarding the Debtors' businesses and the events preceding the Petition Date may be found in the Whittman Declaration.

## RELIEF REQUESTED

11.     By this Motion, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as Exhibit A, and, after the Final Hearing, the Final Order, granting, among other things, the following relief:

(a)     authorizing the Debtors to use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "<u>Cash Collateral</u>") and all other Prepetition ABL Collateral in accordance with the 13-week cash-flow forecast attached hereto as <u>Exhibit B</u> (the "<u>Budget</u>"), subject to the Budget Variance;

(b)     authorizing the Debtors to provide adequate protection to the Prepetition ABL Secured Parties to the extent of any actual diminution in value of their interest in the Prepetition ABL Collateral, including Cash Collateral, in the form of the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the 507(b) Claims and the Adequate Protection Payments;

(c)     subject to certain challenge rights of certain parties in interest, approving certain stipulations by the Debtors with respect to the Prepetition ABL Documents and the liens and security interests arising therefrom;

(d)     vacating and modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the relief requested herein;

(e)     subject only to and effective upon entry of the Final Order, waiving the Debtors' right to surcharge the Prepetition ABL Collateral or the Adequate Protection Collateral pursuant to section 506(c) of the Bankruptcy Code and any "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(f)     authorizing the Debtors to (i) maintain and extend existing letters of credit under the Prepetition ABL Credit Facility and (ii) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit;

(g)     scheduling the Final Hearing, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, to be held no later than 30 days after entry of the Interim Order, to consider entry of the Final Order; and

(h)     granting certain related relief.

## SUMMARY OF MATERIAL TERMS OF THE INTERIM ORDER

12.     In accordance with the disclosure requirements of Bankruptcy Rule 4001(b), the

Debtors submit the following summary of the material provisions of the Interim Order.[4]

| Material Term | Summary |
|---|---|
| **Cash Collateral to Be Used**<br><br>Interim Order ¶ 2 | The Interim Order authorizes the Debtors to use the Cash Collateral of the Prepetition ABL Secured Parties until the occurrence of the Termination Date in accordance with the Budget, subject to the Budget Variance and the other terms of the Interim Order. |
| **Parties with Interest in Cash Collateral**<br><br>Interim Order ¶ D(i)-D(v) | Credit Suisse AG, Cayman Islands Branch, as Administrative Agent and Collateral Agent under the Prepetition ABL Credit Facility (the "Prepetition ABL Agent"), the lenders party to the Prepetition ABL Credit Facility from time to time (collectively, in such capacities, the "Prepetition ABL Lenders"), and the other "Secured Parties" (as defined in the Prepetition ABL Credit Agreement, and, together with the Prepetition ABL Agent and the Prepetition ABL Lenders, the "Prepetition ABL Secured Parties"). |
| **Budget and Reporting Provisions**<br><br>Interim Order ¶¶ 4, 6(d) | **Budget**.  The initial projected liquidity needs of the Debtors during the first 13 weeks of these chapter 11 cases are set forth in the Budget attached hereto as Exhibit B.<br><br>**Budget Variance**.  As of any date for which a Variance Report is delivered, (a) the Debtors shall not permit "Total Third Party Disbursements Excluding Chapter 11 Professional Fees" to be greater than 115% of the amount shown for "Total Third Party Disbursements Excluding Chapter 11 Professional Fees" in the Budget for the applicable Test Period,[5] and (b) the Debtors shall not permit "Total Cash Receipts" to be less than 85% of the amount shown for "Total Cash Receipts" in the Budget for the applicable Test Period.  The permitted variances from the Budget set forth in the preceding clauses (a) and (b) shall hereinafter be referred to as the "Budget Variance."<br><br>**Reporting**.  In addition to the Debtors' continued compliance with the reporting requirements set forth in the Prepetition ABL Documents (with the exception of the requirements of sections 7.1 and 7.2 of the Prepetition ABL Credit Agreement that the Debtors furnish to the Prepetition ABL Agent copies of their annual audited and unaudited quarterly financial statements), the Debtors shall provide the following reporting to the Prepetition ABL Agent and, subject to appropriate confidentiality provisions, counsel to the Ad Hoc Group and any Creditors' Committee: |

---

[4] This summary is qualified in its entirety by reference to the applicable provisions of the Interim Order.  In the event of any conflict or inconsistency between this summary and the provisions of the Interim Order, the provisions of the Interim Order shall control.

[5] "Test Period" shall mean, with respect to each of "Total Cash Receipts" and "Total Third Party Disbursements Excluding Chapter 11 Professional Fees," the four-week period ended the last business day of the immediately preceding week.

| Material Term | Summary |
|---|---|
| | (i) on or before the last business day of every fourth calendar week starting on July 1, 2016, an updated Budget (which shall include the prior 3 weeks of actual results) with respect to the Debtors for the current calendar week then ended and the immediately following consecutive 12 weeks (collectively, 13 weeks), set forth on a weekly basis;<br><br>(ii) on or before the last business day of every week starting on June 10, 2016, a report (each a "Variance Report"), in each case certified by the chief restructuring officer, chief financial officer, the treasurer or the controller of UCI Holdings, showing each of the following: (x) for the one-week period ended the last business day of the immediately preceding calendar week, "Total Cash Receipts," "Total Third-Party Disbursements Excluding Professional Fees," "Net Cash Flow Excluding Chapter 11 Professionals Fees," and "Ending Cash"; (y) for the Test Period, the cumulative actual "Total Cash Receipts," "Total Third Party Disbursements Excluding Chapter 11 Professional Fees" and "Net Cash Flow Excluding Chapter 11 Professional Fees"; provided that, with respect to the calculations for each of clauses (x) and (y), such calculations shall be computed in a manner consistent with the manner in which such line items are computed in the Budget in effect at such time; and (z) the variance (as a percentage) of the amounts set forth in clause (y) from the amounts set forth in the Budget; and<br><br>(iii) within thirty 30 days of the end of each calendar month, starting on July 30, 2016 with respect to the month of June 2016, a copy of the unaudited consolidated balance sheet of UCI Holdings and its consolidated subsidiaries as at the end of such month and the related unaudited consolidated statements of operations and cash flows of UCI Holdings and its consolidated subsidiaries for such month, in each case prepared by management of the Debtors in consultation with their advisors. |
| **Adequate Protection**<br><br>Interim Order ¶ 5 | The Debtors propose to provide the following forms of adequate protection in favor of the Prepetition ABL Secured Parties:<br><br>**Adequate Protection Liens**. The Debtors will provide the Prepetition ABL Agent, for the ratable benefit of the Prepetition ABL Lenders, solely to the extent of any actual postpetition diminution in value of their interest in the Prepetition ABL Collateral (including Cash Collateral), valid, binding, continuing, enforceable, fully perfected, first priority senior replacement security interests in liens on (collectively, the "Adequate Protection Liens") any and all tangible and intangible prepetition and postpetition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof (collectively, the "Adequate Protection Collateral"), including, without limitation, the proceeds of any claims and causes of action of the Debtors arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"); provided, |

| Material Term | Summary |
|---|---|
| | *however*, that the Adequate Protection Collateral shall not include any Avoidance Actions of the Debtors.<br><br>**Adequate Protection Superpriority Claims**.  The Adequate Protection Obligations due to the Prepetition ABL Agent will constitute allowed superpriority administrative expense claims against the Debtors in the amount of any actual diminution in value of the interest of the Prepetition ABL Secured Parties in the value of the Prepetition ABL Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims").<br><br>**Adequate Protection Payments**.  As additional adequate protection for  the Prepetition ABL Secured Parties, the Debtors will make the payments set forth below (collectively, the "Adequate Protection Payments"):<br><br>(i)  any and all accrued and unpaid prepetition and postpetition interest, fees and costs due and payable to the Prepetition ABL Agent under the Prepetition ABL Documents; and<br><br>(ii)  the reasonable and documented prepetition and postpetition fees and expenses payable to the Prepetition ABL Agent under the Prepetition ABL Documents, including, but not limited to, the reasonable and documented prepetition and postpetition fees and disbursements of professionals, including Cravath, Swaine & Moore LLP, Landis Rath & Cobb LLP and Russell McVeagh, counsel to the Prepetition ABL Agent, promptly upon receipt of invoices therefor. |
| **Priority of Adequate Protection Liens and Adequate Protection Superpriority Claims**<br><br>Interim Order ¶¶ 5(b), 5(d) | The Adequate Protection Liens shall be junior only to (i) the Carve-Out, and (ii) any other valid, enforceable, unavoidable, and properly perfected liens on the Prepetition ABL Collateral existing on the Petition Date with priority over the Prepetition Liens pursuant to the Prepetition ABL Documents.   The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.<br><br>The Adequate Protection Superpriority Claims shall have priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors and any successor trustee or creditor in these chapter 11 cases or any Successor Case, subject and subordinate only to the Carve-Out. |
| **Perfection of Adequate Protection Liens**<br><br>Interim Order ¶¶ 5(a), 10 | Upon entry of the Interim Order, the Adequate Protection Liens will be perfected without the need for execution by the Debtors or the recordation or other filing by the Prepetition ABL Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition ABL |

| Material Term | Summary |
|---|---|
| | Agent of any Adequate Protection Collateral |
| | The Prepetition ABL Secured Parties are authorized, but not required, to file or record financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens. |
| | A certified copy of the Interim Order (or the notice of the filing hereof) may, in the discretion of the Prepetition ABL Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are authorized to accept such certified copy of the Interim Order or notice for filing and/or recording, as applicable. |
| **Modification of Automatic Stay**<br><br>Interim Order ¶ 9 | The automatic stay under section 362(a) of the Bankruptcy Code is modified to the extent necessary to effectuate all of the terms and provisions of the Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition ABL Agent may request to assure the perfection and priority of the liens granted by the Interim Order; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition ABL Agent under the Interim Order; (d) authorize the Debtors to pay, and the Prepetition ABL Agent to retain and apply, any payments made in accordance with the terms of the Interim Order; and (e) permit the Prepetition ABL Agent, upon the occurrence of the Termination Date, to exercise all rights and remedies provided for under Interim Order. |
| **Debtors' Stipulations**<br><br>Interim Order ¶¶ D(i)-D(v) | The Debtors stipulate to their prepetition obligations under the Prepetition ABL Documents, the Prepetition ABL Liens securing the Prepetition ABL Collateral, the validity, perfection and priority of the Prepetition Liens, and the extent of the Cash Collateral of the Prepetition ABL Secured Parties. |
| **Termination Event**<br><br>Interim Order ¶ 11 | The Debtors' right to use Cash Collateral  under the Interim Order shall terminate without further order of the Court upon the occurrence of the Termination Date.<br><br>A "<u>Termination Date</u>" shall occur upon five (5) days' prior written notice from the Prepetition ABL Agent to the Debtors of the occurrence of any of the following events:<br><br>(i)   any Debtor's failure to comply with any of the material terms or conditions of the Interim Order, including, but not limited to, failure to comply with the Budget (subject to the Budget Variance);<br><br>(ii)  the failure of the Debtors to make any payment under the Interim Order to the Prepetition ABL Agent within five (5) business days after such payment becomes due (other than payments required under Paragraph 6(a) of the Interim Order, which payments shall be made as required therein); |

| Material Term | Summary |
|---|---|
| | (iii) the Interim Order or the Final Order (if entered) ceases to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing; |
| | (iv) the Court shall have entered an order amending, supplementing or otherwise modifying this Interim Order in a manner materially adverse to the Prepetition ABL Agent or the Prepetition ABL Lenders without the consent of the Prepetition ABL Agent and the Prepetition ABL Lenders; |
| | (v) any Debtor affirmatively supports in writing an action commenced any other person against the Prepetition ABL Agent or the Prepetition ABL Lenders, with respect to the Prepetition ABL Documents, including, without limitation, any action to avoid or subordinate any action to avoid or subordinate any obligations under the Prepetition ABL Documents fees; provided, however, that the Termination Date shall not be deemed to occur if the Debtors seek approval of or obtain debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens; |
| | (vi) the Court shall have entered an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets which have an aggregate value in excess of $[_____]; |
| | (vii) the filing of any pleading by any Debtor in support of any other person's opposition to any motion filed in the Court by the Prepetition ABL Agent or the Prepetition ABL Lenders seeking confirmation of the amount of its or their claims or the validity or enforceability of the Prepetition Liens or the Adequate Protection Liens, except with regard to good faith disputes over the payment of expenses and fees; provided, however, that the Termination Date shall not be deemed to occur if the Debtors seek approval of or obtain debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens; and |
| | (viii)      an order shall have been entered dismissing any of the chapter 11 cases or converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code. |
| **Carve-Out**<br><br>Interim Order ¶ 13 | The "Carve-Out" is the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate (without regard to the notice set forth in clause (iii) below); (ii) fees and expenses of up to |

| Material Term | Summary |
|---|---|
| | $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) allowed and unpaid claims against the Debtors' estates for unpaid fees, costs, and expenses (the "Professional Fees") incurred by persons or firms retained by the Debtors or the Creditors' Committee, if any, whose retention is approved by a final order of the Court pursuant to sections 327 and 1103 of the Bankruptcy Code, that are incurred (A) at any time before delivery by the Prepetition ABL Agent of a Carve-Out Trigger Notice, in an aggregate amount in accordance with and solely to the extent set forth in the Budget in effect prior to the date of delivery of a Carve-Out Trigger Notice, and (B) after the occurrence of the Termination Date and delivery of written notice (the "Carve-Out Trigger Notice") thereof to the Debtors, the Debtors' counsel, counsel to the Ad Hoc Group, the U.S. Trustee and lead counsel for the Creditors' Committee, if any, in an aggregate amount not to exceed $500,000.<br><br>The Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with :<br><br>(i) the investigation (other than as expressly permitted by the terms of the Interim Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the Prepetition ABL Secured Parties, other than as set forth in the Interim Order or the Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under, other than as set forth in this Interim Order or any Final Order, as applicable, the Prepetition ABL Documents, including, without limitation, for lender liability or, other than as set forth in the Interim Order or the Final Order, as applicable, pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise;<br><br>(ii) attempts to modify any of the rights granted to any of the Prepetition ABL Secured Parties under the Interim Order; or<br><br>(iii) paying any amount on account of any claims arising before the commencement of these cases unless such payments are approved by an order of the Court; provided, however, that nothing in the Interim Order shall preclude the Debtors from seeking reimbursement for their reasonable fees and expenses incurred in responding to formal or informal discovery requests in connection with any of the foregoing. |
| **Lien Challenges**<br><br>Interim Order ¶ 16 | A party in interest with requisite standing, including the Creditors' Committee, if appointed, must commence, as appropriate, an adversary proceeding or contested matter objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition ABL Debt or the Prepetition ABL Liens or otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance |

| Material Term | Summary |
|---|---|
|  | power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Prepetition ABL Secured Parties or their Representatives (collectively, a "<u>Challenge Proceeding</u>") by no later than a date that is the later of (i) in the case of a party in interest with requisite standing other than a Creditors' Committee, 75 days after entry of this Interim Order, (ii) in the case of a Creditors' Committee, 75 days after the filing of notice of appointment of the Creditors' Committee. |
|  | If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then:  (a) the Debtors' Stipulations shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (b) the obligations of the Debtors under the Prepetition ABL Documents, including the Prepetition ABL Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance; (c) the Prepetition ABL Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition ABL Debt and the Prepetition ABL Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these cases, or any other party in interest acting or seeking to act on behalf of the Debtors' estates, and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition ABL Secured Parties and their Representatives arising out of or relating to the Prepetition ABL Documents shall be deemed forever waived, released and barred. |
|  | If any such Challenge Proceeding is timely filed during the Challenge Period, each of the Debtors' Stipulations shall nonetheless remain binding and preclusive on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions and agreements were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. |
| **Section 506(c) Waiver**<br><br>Interim Order ¶ 14, 15 | Subject only to and effective upon entry of the Final Order (if any), except to the extent of the Carve-Out, no costs or expenses of administration of the cases or any future proceeding that may result therefrom shall be charged against or recovered from the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition ABL Agent. |
|  | Any and all payments or proceeds remitted to any Prepetition ABL Secured Party pursuant to the Interim Order, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, but subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code. |

| Material Term | Summary |
|---|---|
| **Waiver of "equities of the case" exception to section 552(b)**<br><br>Interim Order ¶ 15 | Any and all payments or proceeds remitted to any Prepetition ABL Secured Party pursuant to the Interim Order, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, but subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or indirectly, the "equities of the case" exception of section 552(b) of the Bankruptcy Code. |

## **PROVISIONS TO BE HIGHLIGHTED UNDER LOCAL RULE 4001-2(A)(2)**

13. Local Rule 4001-2 requires that all requests to use cash collateral under section 363 of the Bankruptcy Code shall (a) recite whether the proposed order contains certain specified provisions (collectively, the "Highlighted Provisions"), (b) identify the location of any such provisions in the proposed order and (c) justify the inclusion of such provision in the proposed order. In compliance with Local Rule 4001-2, the following summary sets forth the applicable provisions of the Interim Order and provides a justification for the inclusion of such Highlighted Provisions therein.

### I.    **Local Rule 4001-2(a)(i)(A)**

14. *Cross-Collateralization*. Local Rule 4001-2(a)(i)(A) requires disclosure of provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law). The Interim Order does not grant cross-collateralization protection.

### II.    **Local Rule 4001-2(a)(i)(B)**

15. *Stipulation and Challenge Provisions*. Local Rule 4001-2(a)(i)(B) requires disclosure of provisions or findings of fact that bind the estates or other parties in interest to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days

from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from

the date of its formation to investigate such matters.  Paragraph D of the Interim Order binds the

estates and all other parties in interest with respect to the amount of the Prepetition ABL Debt

and the validity, perfection and enforceability of the Prepetition ABL Liens but, as set forth in

Paragraph 16 of the Interim Order, is subject to the rights of any party in interest with requisite

standing to commence a Challenge Proceeding by no later than the date that is the later of:  (a)

with respect to any Creditors' Committee, sixty (60) days after the appointment of such

Creditors' Committee and (b) with respect to other parties in interest with requisite standing

(other than the Creditors' Committee) seventy-five (75) days after the date of entry of the Interim

Order.  Thus, parties in interest will have an adequate opportunity to investigate the Prepetition

ABL Credit Facility and associated liens.

**III.**    **Local Rule 4001-2(a)(i)(C)**

16.    *Section 506(c) Waiver*.  Local Rule 4001-2(a)(i)(C) requires explicit disclosure of

provisions that seek to waive, without notice, whatever rights the estates may have under section

506(c) of the Bankruptcy Code.  Paragraph 14 of the Interim Order provides that, subject to and

effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or

expenses of administration of these cases, or any future proceeding that may result therefrom,

shall, without the prior written consent of the Prepetition ABL Agent, be charged against or

recovered from the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or

otherwise.  Because this waiver will only be effective upon entry of the Final Order, parties in

interest will have an opportunity to be heard and, as such, the waiver will not be "without

notice."

01:18766912.1

## IV.    Local Rule 4001-2(a)(i)(D)

17.    *Liens on Avoidance Actions*.  Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the Debtors' claims and causes of action under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code (the "Highlighted Avoidance Actions").  Paragraph 5(a) of the Interim Order provides that, subject to and effective upon entry of the Final Order, the Adequate Protection Liens shall attach to any proceeds of any claims and causes of action of the Debtors arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code.  This provision does not grant a lien on the Highlighted Avoidance Actions but, rather, on the proceeds thereof.  Moreover, this provision is subject to the approval of the Court at the Final Hearing.  As such, the Debtors submit that Prepetition ABL Secured Parties are not being granted liens on the Highlighted Avoidance Actions, and parties in interest will have an opportunity to be heard regarding the requested relief.

## V.    Local Rule 4001-2(a)(i)(E)

18.    *Use of Postpetition Loans to Pay Prepetition Debt*.  Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.  The Interim Order does not deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

## VI.    Local Rule 4001-2(a)(i)(F)

19.    *Carve-Out*.  Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the Debtors with respect to a professional fee carve-out.  Paragraph 13 of the Interim Order provides for a Carve-Out for the fees and expenses of the Debtors'

professionals and professionals retained by any Creditors' Committee.  The Interim Order does not provide for disparate treatment of such professionals.

## VII.    Local Rule 4001-2(a)(i)(G)

20.    *Non-Consensual Priming Liens*.  Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that prime any secured lien without the consent of that lienor.  The Interim Order does not provide for non-consensual priming of any existing secured lien.

## VIII.    Local Rule 4001-2(a)(i)(H)

21.    *Waiver of Section 552(b) "Equities of the Case" Exception*.  Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider the equities of the case under section 552(b)(1) of the Bankruptcy Code.  Paragraph 15 of the Interim Order provides that, subject to entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to any payments or proceeds remitted to any Prepetition ABL Secured Party pursuant to the Interim Order, subject to the Carve-Out and other potential challenged as permitted under the terms of the Interim Order.  The Debtors believe that waivers of their rights under the "equities of the case" exception is justified here because such waiver will not be effective until entry of the Final Order, after parties in interest receive notice and an opportunity to be heard.

### SUMMARY OF THE DEBTORS' PREPETITION INDEBTEDNESS

22.    As of the Petition Date, the Debtors had approximately $469.4 million in aggregate funded indebtedness, comprised of approximately $69.4 million outstanding under the Prepetition ABL Credit Facility (as defined below), plus $5.8 million in outstanding letters of credit, and $400 million outstanding under the Unsecured Notes (as defined below), in each case excluding accrued interest.  The Debtors have granted security interests in and liens on

substantially all of their assets to secure their obligations under the Prepetition ABL Credit

Facility.

I.      **The Prepetition ABL Credit Facility**

23.     On September 30, 2015, UCI, as parent borrower, certain of its subsidiaries, as

subsidiary borrowers (collectively, the "Prepetition Borrowers"), UCI Holdings and UCI

Acquisition Holdings (No. 1) Corp, entered into that certain ABL Credit Agreement with Credit

Suisse in its capacity as Administrative Agent, Collateral Agent and Issuing Lender ("Credit

Suisse" and, in its capacity as Administrative Agent and Collateral Agent, the "Prepetition ABL

Agent"), initially providing the Debtors with senior secured asset-based revolving loans and

letters of credit of up to a maximum aggregate principal amount of $125 million outstanding at

any time (the "Prepetition ABL Credit Facility").  Extensions of credit under the Prepetition

ABL Credit Facility are limited by a borrowing base calculated periodically based on specified

percentages of the value of eligible inventory and eligible accounts receivable, subject to certain

reserves and other adjustments.  The Debtors used the proceeds of the Prepetition ABL Credit

Facility to refinance in full and terminate all of the $74.9 million outstanding under the Debtors'

then-existing Senior Secured Credit Facilities, and to pay certain related fees and expenses.  On

November 30, 2015, the aggregate lender commitments under the Prepetition ABL Credit

Facility were decreased by $25 million to $100 million.

24.     The Prepetition ABL Credit Facility is guaranteed by each of the Debtors, and the

Debtors' obligations arising under the Prepetition ABL Credit Facility are secured by a first-

priority lien (subject to certain permitted liens) on substantially all of the assets of the Debtors

(subject to certain specified exclusions), including, without limitation, the Debtors' accounts,

cash, contracts, equipment, intellectual property, inventory and certain commercial tort claims,

together with all of the proceeds of the foregoing (collectively, the "Prepetition ABL

Collateral").  Additionally, pursuant to that certain Guarantee and Collateral Agreement dated as of September 30, 2015, each of the Debtors pledged 100% of its equity interests in its domestic subsidiaries and 65% of its equity interests in its foreign subsidiaries to secure the Debtors' obligations under the Prepetition ABL Credit Facility.  Moreover, pursuant to that certain General Security Deed dated as of September 30, 2015, UCI Holdings granted to Credit Suisse a security interest in all of UCI Holdings' personal property and a mortgage of all of its interests in any land if the fair market value of such interests is $10 million or more individually.  Finally, pursuant to that certain Specific Security Deed, dated as of September 30, 2015, UCI Holdings granted to Credit Suisse a security interest in UCI Holdings' right, title and interest in all shares in UCI Acquisition Holdings (No. 1) Corp.

25.    Borrowings under the Prepetition ABL Credit Facility bear interest at a fluctuating rate per annum measured by reference, at the option of the Prepetition Borrowers, to either adjusted LIBOR or an alternate base rate, in each case plus an applicable margin.  The Prepetition Borrowers also pay various fees, commissions and related charges and expenses under the Prepetition ABL Facility.  The Prepetition ABL Credit Facility matures on November 15, 2018 if the Unsecured Notes are not repaid in full or refinanced by such date in accordance with the applicable terms of the Prepetition ABL Credit Agreement.  Otherwise, the Prepetition ABL Credit Facility matures on September 30, 2020.

26.    After Credit Suisse funded the Prepetition ABL Credit Facility on September 30, 2015, but before Credit Suisse was able to syndicate a portion thereof, which was its original intention, the Debtors' businesses suffered a significant downturn.  As a result, rather than syndicate the Prepetition ABL Credit Facility to third-party lenders, on December 22, 2015,

Credit Suisse and Rank Group Finance Holdings Limited ("Rank Group Finance")[6] (together

with Credit Suisse, the "Prepetition ABL Lenders") entered into that certain Affiliated Lender

Assignment and Acceptance (the "Assignment and Acceptance").  The Assignment and

Acceptance provided, among other things, for the sale and assignment by Credit Suisse to Rank

Group Finance of $65.0 million of the commitments and approximately $35.7 million of the

then-outstanding principal amount of revolving loans under the Prepetition ABL Credit

Agreement.  On March 15, 2016, UCI submitted a request to Credit Suisse for an additional

borrowing of $22.25 million under the Prepetition ABL Credit Facility.  On the same date, Rank

Group Finance funded its pro rata share of this borrowing in the amount of $14,462,500, while

Credit Suisse did not.

27.     As a result, as of the Petition Date, Rank Group Finance held 65% and Credit

Suisse held 35% of the outstanding loans under the Prepetition ABL Credit Agreement.  Also, as

of the Petition Date, approximately $69.4 million of aggregate indebtedness was outstanding

under the Prepetition ABL Credit Facility, including $5.8 million in outstanding letters of credit.

## II.     The Unsecured Notes

28.     On January 26, 2011, UCI issued $400 million in aggregate principal amount of

8.625% senior unsecured notes due 2019 (the "Unsecured Notes") pursuant to that certain

Indenture, dated as of January 26, 2011 (as amended, restated, supplemented, or otherwise

modified from time to time, the "Indenture"), between UCI and Wilmington Trust, N.A., as

successor by merger to Wilmington Trust FSB, as Trustee, Paying Agent, Transfer Agent and

Registrar.  On April 17, 2015, Debtor UCI Acquisition Holdings (No. 3) LLC joined the

Indenture as a co-issuer of the Unsecured Notes.  The Unsecured Notes mature on February 15,

---

[6] Rank Group Finance is owned by Mr. Graeme Richard Hart, who also indirectly owns 100% of the equity interests of the Debtors.

2019 and pay interest at a rate of 8.625% per annum, payable in cash in arrears semi-annually on

February 15 and August 15 of each year.  The Unsecured Notes are guaranteed by each of the

Debtors.  As of the Petition Date, $400 million in aggregate principal amount of Unsecured

Notes was outstanding.

## THE DEBTORS' URGENT NEED TO USE CASH COLLATERAL

29.     As discussed in the Whittman Declaration, the Debtors urgently need to use Cash

Collateral continue to operate their capital-intensive businesses and to fund the administration of

these chapter 11 cases.  As of the Petition Date, the Debtors had approximately $31.7 million in

cash on hand, all of which constitutes Cash Collateral of the Prepetition ABL Agent.  Absent the

relief requested herein, the Debtors will not have sufficient liquidity to continue to their business

operations, fund employee payroll and benefits obligations, pay vendors of necessary goods and

services, and satisfy other working capital and operational requirements during their

restructuring.  All of the foregoing expenditures are necessary to preserve the value of the

Debtors' estates as a going concern.  Thus, without immediate access to Cash Collateral, the

Debtors would be forced to idle their manufacturing facilities and take other cost-cutting

measures, resulting in the loss of valuable customer accounts and damaging the Debtors'

prospects as a going concern.  Any delay in the Debtors' ability to access Cash Collateral would

irreparably harm the Debtors and their estates.

## BASIS FOR RELIEF REQUESTED

30.     A debtor's use of property of the estate, including cash collateral, is governed by

section 363 of the Bankruptcy Code, which provides, in pertinent part, as follows:

> If the business of the debtor is authorized to be operated under
> section . . . 1108 . . . of [the Bankruptcy Code] and unless the
> court orders otherwise, the [debtor] may . . . use property of the

estate in the ordinary course of business without notice or a
hearing.

11 U.S.C. § 363(c)(1).  A debtor may use cash collateral (a) with the consent of the secured party

or (b) without the consent of the secured party if the court, after notice and a hearing, authorizes

the debtor to use cash collateral in accordance with the provisions of section 363 of the

Bankruptcy Code.  See 11 U.S.C. § 363(c)(2).

31.    Section 363 of the Bankruptcy Code further provides that a debtor must "provide

adequate protection" of the secured party's interest in the property against any diminution in

value of such interest resulting from the debtor's use of the property.  See 11 U.S.C. § 363(e).

Notably, the Bankruptcy Code does not define "adequate protection."  Instead, section 361 of the

Bankruptcy Code provides a non-exhaustive list of examples of adequate protection, including

cash payments, additional or replacement liens and other relief that will "result in the realization

by such [secured party] of the indubitable equivalent of such entity's interest in such property."

See 11 U.S.C. § 361; see also Resolution Tr. Corp. v. Swedeland Dev. Grp., Inc. (In re

Swedeland Dev. Grp., Inc.), 16 F.3d 552, 564 (3d Cir. 1994) ("The Code does not expressly

define adequate protection, but section 361 states that it may be provided by (1) periodic cash

payments; (2) additional or replacement liens; or (3) other relief resulting in the 'indubitable

equivalent' of the secured creditor's interest in such property.").

32.    Thus, determining what constitutes adequate protection is necessarily a fact-

specific inquiry.  See id., 16 F.3d at 564 ("[A] determination of whether there is adequate

protection is made on a case by case basis") (citing In re O'Connor, 808, F.2d 1393, 1397 (10th

Cir. 1987)).  The focus of the adequate protection requirement is to preserve the secured party's

position at the time of the bankruptcy filing and protect the secured party from diminution in the

value of its collateral during the reorganization process.  Id. ("The whole purpose of adequate

protection for a creditor is to insure that the creditor receives the value for which he bargained

prebankruptcy") (quoting In re O'Connor, 808 F.2d at 1396); see also In re WorldCom, Inc., 304

B.R. 611, 618–19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the

Bankruptcy Code, which sets forth how adequate protection may be provided under section 363,

makes clear that the purpose . . . is to insure that the secured creditor receives the value for which

the creditor bargained for prior to the debtor's bankruptcy."). "However, neither the legislative

history nor the Bankruptcy Code require the Court to protect a creditor beyond what was

bargained for by the parties." Id. at 619.

33.    Furthermore, the Bankruptcy Code mandates that a secured party be protected

against diminution in the value of its interest in cash collateral only during the period of use. See

In re Cont'l Airlines, Inc., 146 B.R. 536, 539–40 (Bankr. D. Del. 1992) (noting that a secured

party is only entitled to adequate protection to the extent the collateral declined in value); In re

Pursuit Athletic Footwear, Inc., 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is

no diminution in the value of the secured party's collateral and the debtor can operate profitably

postpetition, then the secured creditor is adequately protected against the use of cash collateral);

see also In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal

of adequate protection is to safeguard the secured creditor from diminution in the value of its

interest during the chapter 11 reorganization."). The preservation of a debtor's business as a

going concern itself provides "adequate protection" under the Bankruptcy Code. See id. at 631

(noting that whether the value of a debtor's property will increase as a result of the use of

collateral is part of considering whether a party is adequately protected).

34.    The Prepetition ABL Agent has not consented to the Debtors' use of Cash

Collateral.  As set forth in above and in the Whittman Declaration, however, the Debtors

urgently need to use Cash Collateral continue to fund the continued operation of their businesses. Failure to obtain authorization to use Cash Collateral would be fatal to the Debtors and disastrous for their creditors.  Accordingly, to ensure their continued access to the Cash Collateral during these cases, the Debtors propose to provide the Prepetition ABL Agent, for the ratable benefit of the Prepetition ABL Secured Parties, with adequate protection to the extent of any actual diminution in value of their interest in the Cash Collateral during the pendency of these chapter 11 cases.

35.     Specifically, the Debtors propose to provide the Prepetition ABL Secured Parties with the following primary forms of adequate protection against the postpetition diminution in value of their interest in the Cash Collateral resulting from the Debtors' use of such property: (a) replacement liens on all of the property of the Debtors' estates to the extent of any actual postpetition diminution in value; (b) allowed superpriority administrative expense claims against the Debtors as provided in section 507(b) of the Bankruptcy Code to the extent of any actual diminution in value; and (c) periodic payments of (i) accrued and unpaid prepetition and postpetition interest, fees and costs due and payable under the Prepetition ABL Documents and (ii) the reasonable and documented fees and expenses payable to the Prepetition ABL Agent under the Prepetition ABL Documents.

36.     Courts have held that granting replacement liens on assets generated by the debtors postpetition is an appropriate form of adequate protection.  See Swedeland Dev. Grp., 16 F.3d at 564, 566; In re Conf. of African Union First Colored Methodist Protestant Church, 184 B.R. 207, 209 n.9 (Bankr. D. Del. 1995) ("[P]ursuant to Code § 361, 'adequate protection' to a secured creditor may be provided in the form of an additional or replacement lien."); see also In re Int'l Design & Display Grp., Inc., 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (same); In re

<u>Karl A. Neise, Inc.</u>, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981) (same).  Thus, the Debtors'

proposal to provide the Prepetition ABL Secured Parties with replacement liens and superpriority

administrative expense claims adequately protects the Prepetition ABL Secured Parties supports

the Debtors' use of Cash Collateral.

37.     Considered in the context of the Debtors' current and projected cash and

position—and because the Debtors will use the Cash Collateral to preserve the value of the

Debtors' businesses as a going concern—the proposed adequate protection is more than

sufficient to protect the Prepetition ABL Secured Parties against any actual diminution in value

of their interest in the Cash Collateral.  The Prepetition ABL Secured Parties are also adequately

protected because, as set forth in the attached Budget, the Debtors anticipate they will continue

to stay within the borrowing base formula under the requirements of the Prepetition ABL Credit

Agreement through the end of (and beyond) the interim period.  Thus, under the circumstances

of these cases, the Debtors submit that the adequate protection provided in the Interim Order is

fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and

363(e) of the Bankruptcy Code, and is in the best interests of the Debtors, their estates, and all

parties in interest.

38.     Moreover, courts in this district have approved similar adequate protection

packages in recent chapter 11 cases.  <u>See</u>, <u>e.g.</u>, <u>In re Offshore Grp. Inv. Ltd.</u>, No. 15- 12422

(BLS) (Bankr. D. Del. Jan. 8, 2016); <u>In re Samson Res. Corp.</u>, No. 15- 11934 (CSS) (Bankr. D.

Del. Sept. 25, 2015); <u>In re Quicksilver Res. Inc.</u>, No. 15-10585 (LSS) (Bankr. D. Del. May 1,

2015); <u>In re Entegra Power Grp. LLC</u>, No. 14-11859 (PJW) (Bankr. D. Del. Sept. 3, 2014); <u>In re</u>

<u>Energy Future Holdings Corp.</u>, No. 14-10979 (CSS) (Bankr. D. Del. June 6, 2014).  Similar

authorization is appropriate in these cases.

## REQUEST FOR MODIFICATION OF THE AUTOMATIC STAY

39.     Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition.  The proposed Interim Order  provides for the modification of the automatic stay to permit the Debtors to (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition ABL Agent may request to assure the perfection and priority of the liens granted by the Interim Order; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition ABL Agent under the Interim Order; (d) authorize the Debtors to pay, and the Prepetition ABL Agent to retain and apply, any payments made in accordance with the terms of the Interim Order; and (e) permit the Prepetition ABL Agent, upon the occurrence of the Termination Date, to exercise all rights and remedies provided for under Interim Order.  Stay modifications of this type are standard features for the use of cash collateral and, in the Debtors' business judgment, are reasonable under the circumstances.  Accordingly, the Debtors request that the Court authorize the modification of the automatic stay as set forth in the Interim Order.

## REQUEST FOR INTERIM RELIEF

40.     Bankruptcy Rule 4001(b) provides that the Court may commence a final hearing on a motion to use cash collateral no earlier than 14 days after service of the motion.  Fed. R. Bankr. P. 4001(b).  If the motion so requests, however, the Court may conduct a preliminary hearing before such 14-day period expires, and the Court may authorize the use of cash collateral only to the extent necessary to avoid immediate and irreparable harm to the debtors' estates pending a final hearing.  Id.

41.     For the reasons discussed above, entry of the Interim Order authorizing the Debtors to use Cash Collateral and granting the other relief requested herein is necessary to

avoid a severe disruption in the Debtors' operations at this critical juncture, to preserve the going-concern value of the Debtors' businesses and to maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 4001(b) to support granting the relief requested herein.

### REQUEST FOR WAIVER OF BANKRUPTCY RULE 4001(a)(3)

42.    The Debtors request a waiver of the stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 4001(a)(3). Bankruptcy Rule 4001(a)(3) provides, "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3). The use of Cash Collateral is essential to prevent irreparable damage to the Debtors' estates. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Bankruptcy Rule 4001(a)(3), to the extent such stay applies.

### BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

43.    Bankruptcy Rule 6003 empowers the Court to issue an order, within twenty-one (21) days after the Petition Date, granting a motion to "use . . . property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" if such requested relief "is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons discussed above, entry of the Interim Order is integral to the Debtors' ability to successfully transition into chapter 11. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h) REQUIREMENTS

44.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As set forth above, the Debtors require immediate relief to continue ordinary business operations for the benefit of all parties in interest.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

45.     Similarly, for the reasons stated above, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed applicable.

## REQUEST TO SCHEDULE A FINAL HEARING

46.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than thirty (30) days following the Petition Date, and fix the deadline for parties to object to the Motion.  The Debtors will serve a copy of the signed Interim Order, which fixes the deadline for parties to object to the Motion, on each of the parties listed below.

## NOTICE

47.     Notice of this Motion will be provided to: (i) the Prepetition ABL Lenders; (ii) the Office of the United States Trustee for the District of Delaware; (iii) the United States Securities and Exchange Commission; (iv) the Office of the United States Attorney for the District of Delaware; (v) the Internal Revenue Service; (vi) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (vii) counsel to Credit Suisse AG, Cayman Islands

Branch, the administrative agent, collateral agent and issuing lender for the Debtors' prepetition

credit facility; (viii) counsel to certain holders of the Debtors' prepetition unsecured notes (ix)

counsel to Wilmington Trust, N.A., the indenture trustee for the Debtors' prepetition unsecured

notes; and (x) counsel to the Ad Hoc Group.  Notice of this Motion and any order entered hereon

will be served in accordance with Local Rule 9013-1(m).  In light of the nature of the relief

requested herein, the Debtors submit that no other or further notice is necessary.

## <u>NO PRIOR REQUEST</u>

48.    The Debtors have not previously sought the relief requested herein from this or

any other court.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that the Court (a) enter the Interim

Order, substantially in the form attached hereto as Exhibit A, (b) following the Final Hearing,

enter the Final Order and (c) grant such other and further relief as is just and proper.


Dated:  June 2, 2016                  SIDLEY AUSTIN LLP
Wilmington, Delaware                  Larry J. Nyhan
                                      Jessica C.K. Boelter
                                      Kerriann S. Mills
                                      Matthew E. Linder
                                      One South Dearborn Street
                                      Chicago, Illinois 60603
                                      Telephone:  (312) 853-7000
                                      Facsimile:  (312) 853-7036

                                              -and-

                                      YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                      */s/ Edmon L. Morton*
                                      Robert S. Brady (No. 2847)
                                      Edmon L. Morton (No. 3856)
                                      Ashley E. Jacobs (No. 5635)
                                      Elizabeth S. Justison (No. 5911)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, Delaware 19801
                                      Telephone:  (302) 571-6600
                                      Facsimile:  (302) 571-1253

                                      PROPOSED ATTORNEYS FOR THE DEBTORS
                                      AND DEBTORS IN POSSESSION

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, et al.[1] | Case No. 16-11354 (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. __ |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS
## TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363;
## (II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION
## ABL SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 105(a), 361, 362, 363 AND 507;
## (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY
## RULE 4001(b); AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") requesting entry of an interim order (this "Interim

Order") and a final order, pursuant to sections 105(a), 361, 362, 363 and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rules 2002, 4001, 6003,

6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules

2002-1, 4001-2 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"):

(a)      authorizing the Debtors to continue to use Cash Collateral and all other

Prepetition ABL Collateral (each as defined below) in which any of the Prepetition ABL Secured

Parties have an interest in accordance with this Interim Order, and the granting of adequate

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857).  The mailing address for each Debtor is 1900 West Field Court, Lake Forest, Illinois 60045.

[2]  All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

protection to the Prepetition ABL Secured Parties with respect to, <u>inter alia</u>, such use of their Cash Collateral and the other Prepetition ABL Collateral;

       (b)       authorizing the Debtors to provide adequate protection to the Prepetition ABL Secured Parties to the extent of any diminution in value of their interest in the Prepetition ABL Collateral, including Cash Collateral, under or in connection with (i) that certain ABL Credit Agreement, dated as of September 30, 2015 by and among UCI International, LLC, as Parent Borrower ("<u>Parent Borrower</u>"), the subsidiary loan parties party thereto, UCI Holdings Limited ("<u>UCI Holdings</u>"), UCI Acquisition Holdings (No. 1) Corp, the lenders party thereto from time to time (collectively, in such capacities, the "<u>Prepetition ABL Lenders</u>") and Credit Suisse AG, Cayman Islands Branch, in its capacities as Administrative Agent and Collateral Agent (in such capacities, the "<u>Prepetition ABL Agent</u>" and, together with the Prepetition ABL Lenders and the other "Secured Parties" (as defined in the Prepetition ABL Credit Agreement), the "<u>Prepetition ABL Secured Parties</u>") (as amended, supplemented or otherwise modified prior to the date hereof, the "<u>Prepetition ABL Credit Agreement</u>"); and (ii) that certain ABL Guarantee and Collateral Agreement, dated as of September 30, 2015, by and among Parent Borrower, UCI Holdings, UCI Acquisition Holdings (No. 1) Corp, certain subsidiaries of UCI Holdings from time to time party thereto and the Prepetition ABL Agent (as amended, supplemented or otherwise modified prior to the date hereof, the "<u>Prepetition ABL Security Agreement</u>," and, together with the Prepetition ABL Credit Agreement and all other agreements and documentation executed in connection with the foregoing, including all other "Loan Documents" (as defined in the Prepetition ABL Credit Agreement), the "<u>Prepetition ABL Documents</u>");

(c)        subject to certain challenge rights of certain parties in interest (subject to the limitations specified herein), approving certain stipulations by the Debtors with respect to the Prepetition ABL Documents (as defined below) and the liens and security interests arising therefrom;

(d)        vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein;

(e)        subject only to and effective upon entry of the Final Order, waiving the Debtors' right to surcharge the Prepetition ABL Collateral or the Adequate Protection Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and any "equities of the case" exception in section 552(b) of the Bankruptcy Code;

(f)        authorizing the Debtors to (i) maintain and extend existing letters of credit under the Prepetition ABL Credit Facility and (ii) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit;

(g)        scheduling, pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b), an interim hearing (the "Interim Hearing") for this Court to consider the relief requested in the Motion and the entry of this Interim Order;

(h)        scheduling, pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(c), a final hearing (the "Final Hearing"), to be held within thirty (30) days of the entry of this Interim Order to consider entry of the Final Order approving the relief granted herein on a final basis; and

(i)        waiving any applicable stay with respect to the effectiveness and enforceability of this Interim Order and, as later applicable, the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

01:18766914.1

3

and upon consideration of the Whittman Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.     *Disposition.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of, and to the extent set forth in, this Interim Order.  Any and all objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or resolved, and all reservations of rights, are hereby denied and overruled on the merits, except as may be set forth herein.  This Interim Order shall become effective immediately upon its entry.

B.     *Jurisdiction.*  This Court has core jurisdiction over these chapter 11 cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

01:18766914.1

4

C.      *Notice.*  Under the circumstances of these cases, proper, timely, adequate and

sufficient notice of the Motion, the Interim Hearing and the Interim Order has been provided in

accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules,

and no other or further notice of the Motion, the Interim Hearing or this Interim Order shall be

required, except as set forth in Paragraph 31 below.  The interim relief granted herein is

necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the

Final Hearing.

D.      Debtors' Stipulations.  Without prejudice to the rights of the Debtors or any other

party in interest as and to the extent such rights are set forth in Paragraph 16 below (but subject

to the limitations thereon contained herein), the Debtors acknowledge, represent, admit, stipulate

and agree as follows (Paragraphs D(i) through D(v) below are collectively referred to herein as

the "Debtors' Stipulations"):

(i)      *Prepetition Obligations.*  As of the Petition Date, the Debtors were truly,

justly and lawfully indebted and liable to the Prepetition ABL Secured Parties in the aggregate

principal amount of not less than $69,443,839.66 in respect of loans made and $5,803,837.00 in

respect of undrawn letters of credit issued by the Prepetition ABL Lenders (and, if applicable,

unpaid borrowings as a result of any drawing on any letters of credit), pursuant to and in

accordance with the terms of the Prepetition ABL Documents, plus accrued and unpaid interest

thereon and fees, expenses (including any attorneys', accountants', appraisers', field examiners',

consultants', financial advisors' and other advisors fees and expenses, in each case, that are

chargeable or reimbursable under the Prepetition ABL Documents), charges, indemnities and

other costs and obligations incurred in connection therewith, whether arising before or after the

Petition Date, including any "Obligations" (as defined in the Prepetition ABL Credit

Agreement)), of any kind or nature, whether or not evidenced by any note, agreement or other instrument, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Debtors' obligations under the Prepetition ABL Documents (collectively, the "Prepetition ABL Debt"), which Prepetition ABL Debt has been guaranteed on a joint and several basis by all of the Debtors; (ii) the Prepetition ABL Debt constitutes the legal, valid and binding obligations of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition ABL Debt or any payments made to the Prepetition ABL Secured Parties or applied to or paid on account of the obligations owing under the Prepetition ABL Documents prior to the Petition Date is subject to any contest, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise), recovery, reduction, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, crossclaim, offset, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any nature under the Bankruptcy Code or any other applicable law or regulation or otherwise and the Debtors do not possess, and shall not assert, any claim, counterclaim, setoff or defense of any kind, nature or description that would in any way affect the validity, enforceability and non-avoidability of any Prepetition ABL Debt;

(ii) *Prepetition Liens and Collateral.* Pursuant to and in connection with the Prepetition ABL Documents, each Debtor granted to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, continuing, valid, binding, properly perfected, enforceable, non-avoidable first priority liens on and security interests in (the "Prepetition ABL Liens") all of the "Collateral" (as defined in the Prepetition ABL Credit Agreement) (the "Prepetition ABL Collateral"), which Prepetition ABL Liens (x) secure all of the Prepetition

ABL Debt; (y) are not subject to any contest, avoidance, recharacterization, subordination (whether equitable, contractual or otherwise) (except as expressly set forth in subclause (z) below), recovery, reduction, attachment, recoupment, disallowance, impairment, rejection, attack, effect, counterclaim, crossclaim, offset, defense or any other claim (as defined in the Bankruptcy Code) of any kind, cause of action or any other challenge of any nature under the Bankruptcy Code or any other applicable law or regulation or otherwise; and (z) are and remain senior in priority over any and all other liens on and security interests in the Prepetition ABL Collateral, subject only to valid, perfected and unavoidable liens permitted under the Prepetition ABL Documents to the extent that such liens or security interests were as of the Petition Date senior to or pari passu with the Prepetition ABL Liens;

(iii)    The aggregate value of the Prepetition ABL Collateral exceeds the aggregate amount of the Prepetition ABL Debt.[3]

(iv)    *Other Liens on the Prepetition ABL Collateral.*  As of the Petition Date, other than as expressly permitted under the Prepetition ABL Documents, there were no liens on or security interests in the Prepetition ABL Collateral other than the Prepetition ABL Liens.

(v)    *Cash Collateral*.  All proceeds of the Prepetition ABL Collateral (including cash on deposit at depository institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition ABL Collateral) are "cash collateral" of the Prepetition ABL Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

---

[3] In support of this stipulation, the Debtors attached the Budget to the Motion, which Budget sets forth a Prepetition ABL Borrowing Base Forecast.

E.    <u>Necessity of Relief Requested</u>.  The Debtors have an immediate and critical need to continue to use the Prepetition ABL Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, and to satisfy other working capital and operational needs, in each such case in accordance with the terms of this Interim Order, including in accordance with the Budget (as defined below).  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition ABL Collateral is necessary to preserve and maintain the going concern value of the Debtors' estates and is vital to the Debtors' reorganization efforts.  Without the use of Cash Collateral, the Debtors would not have sufficient liquidity to continue to operate their businesses.  Entry of this Interim Order will preserve the assets of each Debtor's estate and its value and is in the best interests of the Debtors, their creditors and their estates.  The Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Payments provided herein, together with the other benefits and privileges provided herein, are consistent with and authorized by the Bankruptcy Code.  Absent authorization to immediately access and use Cash Collateral, the Debtors, the estates and their creditors would suffer immediate and irreparable harm.

F.    <u>Exercise of Debtors' Business Judgment</u>.  Based on the Motion, the Whittman Declaration and the record presented to the Court at the Interim Hearing, the terms on which the Debtors may continue to use the Prepetition ABL Collateral (including Cash Collateral) pursuant to this Interim Order are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

Based on the foregoing

G.      <u>Final Hearing</u>.  At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion on a final basis pursuant to the Final Order, notice of which Final Hearing will be provided in accordance with this Interim Order.

H.      <u>Immediate and Irreparable Harm</u>.  Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules.  Absent granting the relief set forth in this Interim Order, the Debtors and their estates will be immediately and irreparably harmed.  Entry of this Interim Order and the use of Prepetition ABL Collateral, including Cash Collateral, in accordance with this Interim Order are in the best interests of the Debtors, their estates and their creditors.  The terms of this Interim Order are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with fiduciary duties and are supported by reasonably equivalent value and fair consideration.

Based on the foregoing, the Motion, the Whittman Declaration and the record made before the Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      <u>Motion Granted</u>.  The Motion is GRANTED, and the Debtors' use of Cash Collateral and other Prepetition ABL Collateral on an interim basis is authorized, subject to the terms and conditions of this Interim Order.

2.      <u>Authorization to Use Cash Collateral</u>.  The Debtors are hereby authorized, subject to the terms and conditions of this Interim Order, to use all Cash Collateral; <u>provided</u> that (a) the Prepetition ABL Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.

3.    <u>Budget</u>.  The initial projected liquidity needs of the Debtors during these chapter 11 cases are set forth in the 13-week cash flow forecast attached to the Motion as <u>Exhibit B</u> (the "<u>Budget</u>").  The Debtors' use of Cash Collateral is subject to and governed by the terms of the Budget, and the Prepetition ABL Agent shall have no obligation to permit the use of Cash Collateral, and the Debtor shall have no authority to use Cash Collateral, hereunder other than in accordance with the Budget, subject to the Budget Variance (as defined below), and as set forth in this Interim Order.

4.    <u>Budget Variance</u>.  As of any date for which a Variance Report (as defined below) is delivered pursuant to Paragraph 6(b) of this Interim Order, (a) the Debtors shall not permit "Total Third Party Disbursements Excluding Chapter 11 Professional Fees" to be greater than 115% of the amount shown for "Total Third Party Disbursements Excluding Chapter 11 Professional Fees" in the Budget for the applicable Test Period,[4] and (b) the Debtors shall not permit "Total Cash Receipts" to be less than 85% of the amount shown for "Total Cash Receipts" in the Budget for the applicable Test Period.  The permitted variances from the Budget set forth in the preceding clauses (a) and (b) shall hereinafter be referred to as the "<u>Budget Variance</u>."

5.    <u>Adequate Protection of Prepetition ABL Secured Parties</u>.  The Prepetition ABL Secured Parties are entitled, pursuant to sections 361, 362, 363(e) and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition ABL Collateral, including the Cash Collateral, in an amount equal to the aggregate actual diminution in the value of the Prepetition ABL Secured Parties' interests in the Prepetition ABL Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the

---

[4] "<u>Test Period</u>" shall mean, with respect to each of "Total Third Party Disbursements Excluding Chapter 11 Professional Fees" and "Total Cash Receipts," the four-week period ended the last business day of the immediately preceding week.

Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Debtors (or any other decline in value) of the Prepetition ABL Collateral (including Cash Collateral, whether pursuant to the Budget or otherwise), the Carve-Out or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Adequate Protection Claim"); provided that the avoidance of any Prepetition ABL Secured Party's interests in Prepetition ABL Collateral shall not constitute diminution in the value of such Prepetition ABL Secured Party's interests in Prepetition ABL Collateral.  As adequate protection of the Adequate Protection Claim, the Prepetition ABL Secured Parties are hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)     *Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection against any actual diminution (if any) in value of the Prepetition ABL Collateral, including Cash Collateral, effective as of the Petition Date and perfected without the need for execution by the Debtors or the recordation or other filing by the Prepetition ABL Secured Parties of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Prepetition ABL Agent of any Adequate Protection Collateral (as defined below), the Prepetition ABL Agent is hereby granted, for the ratable benefit of the Prepetition ABL Lenders, solely to the extent of any actual diminution in value, if any, of the Prepetition ABL Collateral, valid, binding, continuing, enforceable, fully perfected, first priority senior replacement security interests in liens on (collectively, the "Adequate Protection Liens") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether

01:18766914.1

11

arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing (collectively, the "Adequate Protection Collateral").  Subject to and effective upon entry of the Final Order (if entered), the Adequate Protection Collateral shall also include, without limitation, the proceeds of any claims and causes of action of the Debtors arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"); provided, however, that the Adequate Protection Collateral shall not include any Avoidance Actions of the Debtors.

(b)     The Adequate Protection Liens shall be junior only to (i) the Carve-Out, and (ii) any other valid, enforceable, unavoidable, and properly perfected liens on the Prepetition ABL Collateral existing on the Petition Date with priority over the Prepetition Liens pursuant to the Prepetition ABL Documents.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Adequate Protection Collateral.

(c)     The Adequate Protection Liens shall be enforceable against and binding upon the Debtors, their estates and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Debtors' chapter 11 cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' chapter 11 cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases").  The Adequate Protection Liens shall not be subject to sections 506(c)

(effective upon entry of the Final Order (if entered)), 510, 549, or 550 of the Bankruptcy Code. Nor shall any lien or security interest avoided and preserved for the benefit of any of the Debtors' estates pursuant to section 551 of the Bankruptcy Code be made pari passu with or senior to the Adequate Protection Liens.

(d)    *Adequate Protection Superpriority Claims*.  The Adequate Protection Obligations due to the Prepetition ABL Agent shall constitute allowed superpriority administrative expense claims against the Debtors in the amount of any actual diminution (if any) in value of the Prepetition ABL Collateral, including Cash Collateral, as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors and any successor trustee or creditor in these chapter 11 cases or any Successor Case (the "Adequate Protection Superpriority Claims"), subject and subordinate only to the Carve-Out.

(e)    *Payment of Prepetition ABL Interest*.  The Debtors shall pay to the Prepetition ABL Agent for the benefit of the Prepetition ABL Secured Parties all accrued and unpaid interest (including, for the avoidance of doubt, interest accruing and becoming due after the Petition Date) as set forth in the Prepetition ABL Credit Agreement.

(f)    *Prepetition ABL Agent Fees and Expenses*.  As additional adequate protection, the Prepetition ABL Agent shall receive from the Debtors, for the benefit of the Prepetition ABL Lenders, current cash payments of all reasonable and documented prepetition

and postpetition fees and expenses payable to the Prepetition ABL Agent under the Prepetition

ABL Documents, including, but not limited to, the reasonable and documented prepetition and

postpetition fees and disbursements of professionals, including Cravath, Swaine & Moore LLP,

Landis Rath & Cobb LLP and Russell McVeagh, counsel to the Prepetition ABL Agent,

promptly upon receipt of invoices therefor, which payments shall be made in the manner

provided for in Paragraph 5(g) below.

   (g) Payment of the fees, expenses and disbursements set forth in Paragraph

5((f) of this Interim Order shall be made within fifteen (15) days (which time period may be

extended by the applicable professional) after receipt of invoices therefor by the Debtors, any

official committee of unsecured creditors in these cases (the "Creditors' Committee"), the office

of the United States Trustee (the "U.S. Trustee"), and counsel to the ad hoc group of noteholders

(the "Ad Hoc Group") and without need to file with the Court any interim or final fee application

with respect thereto.  The invoices for such fees, expenses and disbursements shall include the

time detail of services provided; provided, however, that any such invoice may be redacted to

protect privileged, confidential or proprietary information.   The Debtors, any Creditors'

Committee, the Ad Hoc Group and the U.S. Trustee shall have ten (10) days following their

receipt of such invoices to file objections with the Court, with notice to the Prepetition ABL

Agent and the Prepetition ABL Lenders, with respect to the reasonableness of the fees and

expenses included therein.  If any such objection is not resolved within ten (10) days after such

objection is made, then a hearing with respect thereto shall be conducted at a regularly scheduled

omnibus hearing in the Debtors' chapter 11 cases; provided further, however, that the Debtors

shall pay any undisputed portion of such fees, costs and expenses within fifteen (15) days after

their receipt of such invoice.

6.     <u>Reporting</u>.  The Debtors shall comply with the reporting requirements set forth in the Prepetition ABL Documents (with the exception of the requirements of sections 7.1 and 7.2 of the Prepetition ABL Credit Agreement that the Debtors furnish to the Prepetition ABL Agent copies of their annual audited and unaudited quarterly financial statements), and the Debtors shall provide the following additional reporting to the Prepetition ABL Agent and, subject to appropriate confidentiality provisions, the Ad Hoc Group and any Creditors' Committee:

(a)     on or before the last business day of every fourth calendar week starting on July 1, 2016, an updated Budget (which shall include the prior 3 weeks of actual results) with respect to the Debtors for the current calendar week then ended and the immediately following consecutive 12 weeks (collectively, 13 weeks), set forth on a weekly basis; and

(b)     on or before the last business day of every week starting on June 10, 2016, a report (each a "<u>Variance Report</u>"), in each case certified by the chief restructuring officer, chief financial officer, the treasurer or the controller of UCI Holdings, showing each of the following: (x) for the one-week period ended the last business day of the immediately preceding calendar week, "Total Cash Receipts," "Total Third-Party Disbursements Excluding Professional Fees," "Net Cash Flow Excluding Chapter 11 Professionals Fees," and "Ending Cash"; (y) for the Test Period, the cumulative actual "Total Cash Receipts" and "Total Third Party Disbursements Excluding Chapter 11 Professional Fees"; <u>provided</u> that, with respect to the calculations for each of clauses (x) and (y), such calculations shall be computed in a manner consistent with the manner in which such line items are computed in the Budget in effect at such time; and (z) the variance (as a percentage) of the amounts set forth in clause (y) from the amounts set forth in the Budget.

(c)      within thirty 30 days of the end of each calendar month, starting on July 30, 2016 with respect to the month of June 2016, a copy of the unaudited consolidated balance sheet of UCI Holdings and its consolidated subsidiaries as at the end of such month and the related unaudited consolidated statements of operations and cash flows of UCI Holdings and its consolidated subsidiaries for such month, in each case prepared by management of the Debtors in consultation with their advisors.

7.      <u>Cash Management</u>.  The Debtors shall maintain their cash management arrangements in a manner substantially consistent with that described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue To Use Their Cash Management System, Including Existing Bank Accounts, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Continue Interdebtor Transactions and (D) Maintain Existing Business Forms and (II) Granting Related Relief*.

8.      <u>Requests for Further Adequate Protection</u>.  Nothing in this Interim Order shall waive any right of the Prepetition ABL Agent to request that the Court provide additional or further protection of their interests in the Prepetition ABL Collateral (including Cash Collateral) or to seek further or additional adequate protection in the event the Prepetition ABL Agent contends that the adequate protection provided herein is inadequate, or the ability of the Debtors or any other party in interest to oppose any such relief.

9.      <u>Modification of Automatic Stay</u>.  The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Prepetition ABL Agent may request to assure the perfection

and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition ABL Agent under this Interim Order; (d) authorize the Debtors to pay, and the Prepetition ABL Agent to retain and apply, any payments made in accordance with the terms of this Interim Order; and (e) permit the Prepetition ABL Agent, upon the occurrence of the Termination Date (as defined below), to exercise all rights and remedies provided for hereunder.

10.    Perfection of Adequate Protection Liens.

(a)    The Prepetition ABL Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the Adequate Protection Liens. Whether or not the Prepetition ABL Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, patent filings, mortgages, deeds of trust, notices of lien or similar instruments, or take possession of or control over any cash, securities or any other property of the Debtors, or take any action that otherwise may be required under federal, state or local law in any jurisdiction to validate and perfect a security interest or lien, in any such case, the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination (subject to the priorities set forth in this Interim Order), at the time and on the date of entry of this Interim Order or thereafter.  Upon the reasonable request of the Prepetition ABL Agent, each of the Prepetition ABL Secured Parties (at the Debtors' cost and expense) and the Debtors, without any further

consent of any party, is authorized to take, execute, deliver and file such instruments (in each

case, without representation or warranty of any kind) to enable the Prepetition ABL Agent to

further validate, perfect, preserve and enforce the Adequate Protection Liens.  All such

documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order (or the notice of the filing hereof)

may, in the discretion of the Prepetition ABL Agent, be filed with or recorded in filing or

recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust,

notices of lien or similar instruments, and all filing offices are hereby authorized to accept such

certified copy of this Interim Order or notice for filing and/or recording, as applicable.  The

automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent

necessary to permit the Prepetition ABL Agent to take all actions, as applicable, referenced in

this subparagraph (b) and the immediately preceding subparagraph (a).

11.    <u>Termination of Cash Collateral Authorization</u>.

(a)    Unless otherwise ordered by the Court, waived in writing by the

Prepetition ABL Agent, or cured (to the extent capable of being cured) by the Debtors within

five (5) days of their receipt of a Termination Notice (as defined below), the Debtors' right to use

Cash Collateral under the terms of this Interim Order shall terminate without further order of the

Court upon the occurrence of the "<u>Termination Date</u>" (notice of which shall promptly be

provided to the Debtors, any Creditors' Committee, the Ad Hoc Group, and the U.S. Trustee),

which shall occur upon five (5) days' prior written notice (a "<u>Termination Notice</u>") from the

Prepetition ABL Agent to the Debtors of the occurrence of any of the following events:

　　　　　i.　　　any Debtor's failure to comply with any of the material terms or
conditions of this Interim Order, including, but not limited to,
failure to comply with the Budget (subject to the Budget
Variance);

ii.     the failure of the Debtors to make any payment under this Interim Order to the Prepetition ABL Agent within five (5) business days after such payment becomes due (other than payments required under Paragraph 5(f) of this Interim Order, which payments shall be made as required therein);

iii.     this Interim Order or the Final Order (if entered) ceases, for any reason (other than by reason of the express written agreement by the Prepetition ABL Agent and the Prepetition ABL Lenders), to be in full force and effect in any material respect, or any Debtor so asserts in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by this Interim Order or the Final Order (if entered) cease in any material respect to be enforceable and of the same effect and priority purported to be created hereby or any Debtor so asserts in writing;

iv.     the Court shall have entered an order amending, supplementing or otherwise modifying this Interim Order in a manner materially adverse to the Prepetition ABL Agent or the Prepetition ABL Lenders without the consent of the Prepetition ABL Agent and the Prepetition ABL Lenders;

v.     any Debtor affirmatively supports in writing an action commenced by any other person against the Prepetition ABL Agent or the Prepetition ABL Lenders, with respect to the Prepetition ABL Documents, including, without limitation, any action to avoid or subordinate any action to avoid or subordinate any obligations under the Prepetition ABL Documents; provided, however, that the Termination Date shall not be deemed to occur if the Debtors seek approval of or obtain debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens;

vi.     the Court shall have entered an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets which have an aggregate value in excess of $[_____];

vii.     the filing of any pleading by any Debtor in support of (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party in interest executed by or on behalf of any such Debtor) any other person's opposition to any motion filed in the Court by the Prepetition ABL Agent or the Prepetition ABL Lenders seeking confirmation of the amount of its

or their claims or the validity or enforceability of the Prepetition Liens or the Adequate Protection Liens, except with regard to good faith disputes over the payment of expenses and fees; provided, however, that the Termination Date shall not be deemed to occur if the Debtors seek approval of or obtain debtor in possession financing, including, without limitation, debtor in possession financing which primes existing liens; and

viii.    an order shall have been entered dismissing any of the chapter 11 cases or converting any of the chapter 11 cases to a case under chapter 7 of the Bankruptcy Code.

12.    Remedies upon the Occurrence of the Termination Date.  Unless otherwise ordered by the Court, Upon the occurrence of the Termination Date, (a) the Adequate Protection Obligations, if any, shall become due and payable and (b) the Prepetition ABL Agent may, upon five (5) business days' written notice to counsel to the Debtors, counsel to any Creditors' Committee, counsel to the Ad Hoc Group and the U.S. Trustee, may (i) set off amounts in any account of the Debtors maintained with the Prepetition ABL Agent or with respect to which the Prepetition ABL Agent controls pursuant to a deposit account control agreement to the extent necessary for payment of the Adequate Protection Obligations and (ii) exercise the rights and remedies available under the Prepetition ABL Documents, this Interim Order or applicable law. The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to permit such actions upon the occurrence of the Termination Date.  Notwithstanding anything to the contrary herein or the occurrence of the Termination Date, all of the rights, remedies, benefits, and protections provided to the Prepetition ABL Agent under this Interim Order shall survive the occurrence of the Termination Date.  The Debtors and all parties in interest shall be entitled to seek an emergency hearing before this Court to contest whether the Termination Date has occurred under Paragraph 11, provided that, in such a hearing,

the only issue the Debtors may raise or seek a determination regarding is whether the

Termination Date has occurred.

      13.    <u>Carve-Out</u>.

      (a)    For purposes hereof, the "<u>Carve-Out</u>" means an amount equal to the sum

of (i) all fees required to be paid to the clerk of the Court and to the Office of the U.S. Trustee

under section 1930(a) of title 28 of the United States Code, <u>plus</u> interest at the statutory rate

(without regard to the notice set forth in clause (iii) below); (ii) fees and expenses of up to

$25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the

notice set forth in clause (iii) below); and (iii) allowed and unpaid claims against the Debtors'

estates for unpaid fees, costs, and expenses (the "<u>Professional Fees</u>") incurred by persons or

firms retained by the Debtors or the Creditors' Committee, if any, whose retention is approved

by a final order of the Court (which order has not been reversed, vacated, stayed or appealed)

pursuant to sections 327 and 1103 of the Bankruptcy Code, subject to the terms of this Interim

Order, the Final Order and any other interim or other compensation order entered by the Court

that are incurred (A) at any time before delivery by the Prepetition ABL Agent of a Carve-Out

Trigger Notice (as defined below), in an aggregate amount in accordance with and solely to the

extent set forth in the Budget in effect prior to the date of delivery of a Carve-Out Trigger Notice

(and subject to any further limits imposed by this Interim Order or the Final Order or otherwise

on Professional Fees permitted to be incurred in connection with any permitted investigations of

claims and defenses against any Prepetition ABL Secured Parties), and (B) after the occurrence

of the Termination Date and delivery of written notice (the "<u>Carve-Out Trigger Notice</u>") thereof

(which may be by email) to the Debtors, the Debtors' counsel, counsel to the Ad Hoc Group, the

U.S. Trustee and lead counsel for the Creditors' Committee, if any, in an aggregate amount not

to exceed $500,000 (the amount set forth in this clause (iii)(B) being the "Post-EoD Carve-Out Amount"); provided that the Post-EoD Carve-Out Amount shall be reduced on a dollar-for-dollar basis by any payments of Professional Fees made on or after the date of delivery of a Carve-Out Trigger Notice; provided further that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any grounds.

(b)      Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation (other than as expressly permitted herein), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the Prepetition ABL Secured Parties, other than as set forth in this Interim Order or the Final Order, as applicable, or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under, other than as set forth in this Interim Order or any Final Order, as applicable, the Prepetition ABL Documents, including, without limitation, for lender liability or, other than as set forth in this Interim Order or the Final Order, as applicable, pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to any of the Prepetition ABL Secured Parties hereunder; or (c) paying any amount on account of any claims arising before the commencement of these cases unless such payments are approved by an order of the Court; provided, however, that nothing herein shall preclude the Debtors from seeking reimbursement for their reasonable fees and expenses incurred in responding to formal or informal discovery requests in connection with any of the foregoing.

01:18766914.1

22

(c)     Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to all liens and claims granted under this Interim Order, including the Adequate Protection Liens, the Adequate Protection Superpriority Claims and any and all other liens or claims securing the Prepetition ABL Debt.

14.     <u>Limitation on Charging Expenses Against Collateral</u>.  Subject only to and effective upon entry of the Final Order (if any), except to the extent of the Carve-Out, no costs or expenses of administration of the cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition ABL Agent, as the case may be, with respect to their respective interests, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition ABL Secured Party, and nothing contained in this Interim Order shall be deemed to be a consent by the Prepetition ABL Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

15.     <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted, subject only to (i) the Carve-Out and (ii) the potential challenges as permitted by Paragraph 16 below (but subject to the limitations thereon as set forth herein and any other limitations contained herein on the use of Cash Collateral), to any Prepetition ABL Secured Party pursuant to the provisions of this Interim Order, shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, but subject to entry of the Final Order (if any), any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the

Bankruptcy Code or the "equities of the case" exception of section 552(b) of the Bankruptcy Code.

16.    <u>Effect of Stipulations on Third Parties</u>.  Each of the Debtors' Stipulations and each of the Debtors' other admissions and agreements contained in this Interim Order, including, without limitation, in Paragraph D of this Interim Order, shall be binding upon each of the Debtors and any successor(s) thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) under all circumstances and for all purposes.  Each of the Debtors' Stipulations and each of the Debtors' other admissions and agreements contained in this Interim Order, including, without limitation, in Paragraph D of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases (including a Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:  (a) such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case with requisite standing granted by the Court, has timely and properly filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, <u>inter</u> <u>alia</u>, in this Paragraph 16) by no later than a date that is the later of (i) in the case of a party in interest with requisite standing other than a Creditors' Committee, 75 days after entry of this Interim Order, (ii) in the case of a Creditors' Committee, 60 days after the filing of notice of appointment of the Creditors' Committee (and subject to the Investigation Budget (as defined below)), (iii) with respect to any Challenge Proceeding (as defined below) against any Prepetition ABL Secured

Parties, any such later date agreed to in writing by such Prepetition ABL Secured Party in its sole

discretion, and (iv) any such later date ordered by the Court for cause shown after notice and an

opportunity to be heard, provided that such order is entered before the expiration of any

applicable period as set forth in clauses (i) through (iii) of this sentence (the "Challenge Period"),

(A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent

of the Prepetition ABL Debt or the Prepetition ABL Liens, or (B) otherwise asserting or

prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance

power claims or any other claims, counterclaims or causes of action, objections, contests or

defenses (collectively, a "Challenge Proceeding") against the Prepetition ABL Secured Parties or

their respective subsidiaries, officers, directors, managers, principals, employees, agents,

financial advisors, attorneys, accountants, investment bankers, consultants, representatives and

other professionals and the respective successors and assigns thereof, in each case solely in their

respective capacities as such (collectively, the "Representatives"), and solely in their capacities

as Representatives of the Prepetition ABL Secured Parties, in connection with matters related to

the Prepetition ABL Documents, the Prepetition ABL Debt, the Prepetition ABL Liens and the

Prepetition ABL Collateral; and (b) there is a final and non-appealable order in favor of the

plaintiff in any such timely filed Challenge Proceeding; provided that any pleadings filed in any

Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and

any challenges or claims not so specified prior to the expiration of the Challenge Period shall be

deemed forever waived, released and barred.  If no such Challenge Proceeding is timely and

properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in

any such proceeding, then:  (a) the Debtors' Stipulations, admissions, agreements and releases

contained in this Interim Order, including, without limitation, those contained in Paragraph D of

this Interim Order, shall be binding on all parties in interest, including, without limitation, the

Creditors' Committee; (b) the obligations of the Debtors under the Prepetition ABL Documents,

including the Prepetition ABL Debt, shall constitute allowed claims not subject to defense,

claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in

these Cases, and any subsequent chapter 7 case(s); (c) the Prepetition ABL Liens shall be

deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests

and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the

Prepetition ABL Debt and the Prepetition ABL Liens shall not be subject to any other or further

claim or challenge by the Creditors' Committee, any non-statutory committees appointed or

formed in these Cases, or any other party in interest acting or seeking to act on behalf of the

Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by the

Creditors' Committee, any non-statutory committees appointed or formed in these Cases, or any

other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the

Bankruptcy Code or otherwise, against any of the Prepetition ABL Secured Parties and their

Representatives arising out of or relating to the Prepetition ABL Documents shall be deemed

forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the

Challenge Period, each of the Debtors' Stipulations and each of the Debtors' other admissions

and agreements contained in this Interim Order, including, without limitation, those contained in

Paragraph D of this Interim Order, shall nonetheless remain binding and preclusive on the

Creditors' Committee and on any other person or entity, except to the extent that such

stipulations, admissions and agreements were expressly and successfully challenged in such

Challenge Proceeding as set forth in a final, non-appealable order of a court of competent

jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the

01:18766914.1

Bankruptcy Code), including any Creditors' Committee or any non-statutory committees

appointed or formed in these cases, standing or authority to pursue any claim or cause of action

belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings

with respect to the Prepetition ABL Documents, the Prepetition ABL Debt or the Prepetition

ABL Liens.

      17.    <u>Limitation on Use of Collateral</u>.  Notwithstanding anything herein or in any other

order by this Court to the contrary, no Cash Collateral, Prepetition ABL Collateral, proceeds of

any of the foregoing or the Carve-Out may be used for any of the following (except to the extent

otherwise expressly agreed in writing by the Prepetition ABL Agent in response to a written

request from the Parent Borrower specifying the proposed use):  (a) for professional fees,

disbursements, costs or expenses incurred by any party in connection with any litigation or

threatened litigation (whether by contested matter, adversary proceeding or otherwise, including

any investigation in connection with litigation or threatened litigation) against any of the

Prepetition ABL Secured Parties (in their capacity as such) or for the purpose of objecting to or

challenging the validity, perfection, enforceability, extent or priority of any claim, lien or

security interest held or asserted by any of the Prepetition ABL Secured Parties (in their capacity

as such) or the validity or enforceability of this Interim Order or asserting any defense, claim,

cause of action, counterclaim, or offset with respect to the Prepetition ABL Debt (including,

without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or

552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise) or the Prepetition

ABL Liens or against any of the Prepetition ABL Secured Parties (in their capacity as such) or

their respective Representatives (in their capacity as such); (b) to prevent, hinder or otherwise

delay any of the Prepetition ABL Secured Parties' assertion, enforcement or realization on the

Prepetition ABL Collateral, including Cash Collateral, in accordance with the Prepetition ABL

Documents or this Interim Order other than to seek a determination that the Termination Date

has not occurred; (c) to seek to modify any of the rights granted to the Prepetition ABL Secured

Parties under this Interim Order or the Prepetition ABL Documents; (d) to pay any amount on

account of any claims arising prior to the Petition Date unless such payments are approved by an

order of this Court that is in form and substance satisfactory to the Prepetition ABL Agent; or (e)

for objecting to, contesting, delaying, preventing or interfering with in any way with the exercise

of rights or remedies by any Prepetition ABL Secured Party with respect to any Prepetition ABL

Collateral after the occurrence of the Termination Date; provided that, notwithstanding anything

to the contrary in this Paragraph 17, the Creditors' Committee, if any, may use Prepetition ABL

Collateral, including Cash Collateral, the proceeds thereof, and the Carve-Out to investigate (i)

the claims and liens of the Prepetition ABL Secured Parties, solely to the extent set forth in this

Paragraph 17 (but not to litigate, object to or challenge any of the foregoing) and (ii) potential

claims, counterclaims, causes of action or defenses against the Prepetition ABL Secured Parties,

solely to the extent set forth in this Paragraph 17 (but not to litigate any of the foregoing);

provided further that no more than an aggregate of $50,000 of the Prepetition ABL Collateral,

including Cash Collateral, the proceeds thereof, and the Carve-Out may be used by the Creditors'

Committee, if any, in respect of the investigations set forth in the preceding proviso (the

"Investigation Budget").

     18.   Maintenance of Letters of Credit.  Following entry of this Interim Order, the

Debtors shall be authorized, but not directed, to (a) maintain and extend letters of credit issued

under the Prepetition ABL Credit Agreement on an uninterrupted basis, in accordance with the

practices and procedures in effect before the Petition Date and subject to the terms and

conditions of the Prepetition ABL Credit Agreement, and to take all actions reasonably appropriate with respect thereto and (b) obtain new letters of credit to replace or backstop such existing letters of credit and to cash collateralize such new letters of credit, and to take all actions reasonably appropriate with respect thereto.  If any existing letter of credit under the Prepetition ABL Credit Agreement is renewed and then is subsequently drawn, any Reimbursement Obligation (as defined in the Prepetition ABL Credit Agreement) that is not paid by the Debtors shall constitute joint and several allowed administrative expense priority claims against the Debtors as provided for in sections 503(b) and 507(a)(2) of the Bankruptcy Code.

19.     Binding Effect of Interim Order.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these chapter 11 cases, including, without limitation, the Debtors, the Prepetition ABL Agent, the Prepetition ABL Secured Parties, all other creditors of the Debtors, any Creditors' Committee, and each of their respective successors and assigns (including any trustee or other fiduciary hereafter appointed in any of the cases, any Successor Cases) and shall inure to the benefit of the Debtors, the Prepetition ABL Agent, the Prepetition ABL Secured Parties, and their respective successors and assigns.

20.     Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in any of these chapter 11 cases; (b) converting any of these cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of these cases or any Successor Case; or (d) pursuant to which this Court abstains from hearing any of the cases or any Successor Case.  Notwithstanding the entry of any such order, the terms and provisions of this Interim Order, including the claims, liens,

security interests and other protections granted to the Prepetition ABL Agent pursuant to this Interim Order, shall continue in these cases, in any Successor Cases, or following dismissal of these cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all of the Prepetition ABL Debt has been indefeasibly paid in full in cash, notwithstanding the occurrence of the Termination Date or any earlier termination of the Debtors' authorization to use the Prepetition ABL Collateral, including Cash Collateral.

21.    <u>Limitation of Liability</u>.  Subject to entry of the Final Order, in determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the Prepetition ABL Documents, as applicable, the Prepetition ABL Secured Parties (in their capacity as such) or any successor of any of the foregoing shall not (i) be deemed to be in "control" of the operations of the Debtors or any of their affiliates; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors or any of their affiliates (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, <u>et</u> <u>seq.</u>, as amended, or any similar federal or state statute). Furthermore, nothing in this Interim Order or the Prepetition ABL Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition ABL Secured Parties, or any successor of any of the foregoing, of any liability for any claims arising from the prepetition or postpetition activities of the Debtors or any of their affiliates.

22.    <u>Effectiveness</u>.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable, <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date, immediately upon entry hereof.  Notwithstanding any Bankruptcy Rule, any Local Bankruptcy

Rule, or any Federal Rule of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

23.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than (i) the Prepetition ABL Secured Parties and their respective Representatives, (ii) the Debtors, and (iii) the respective successors and assigns of each of the foregoing.

24.     <u>Intercreditor Issues</u>.  Except as expressly set forth in this Interim Order, nothing in Interim Order shall be construed to convey on any individual Prepetition ABL Secured Party any consent, voting or other rights beyond those (if any) set forth in the Prepetition ABL Documents.

25.     <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

26.     <u>Rights Reserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (a) any of the Prepetition ABL Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors, including the right to seek new, different or additional adequate protection, as applicable, or the Debtors' or any other party in interest's rights to oppose such relief, or (b) any of the rights of the Debtors, the Prepetition ABL Secured Parties or any other party in interest under the Bankruptcy Code or applicable nonbankruptcy law.

27.     <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

28.    Necessary Action.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

29.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, including following confirmation and consummation of any chapter 11 plan for any one or more of the Debtors.

30.    <u>Final Hearing</u>.  The Final Hearing shall be held on _____, 2016 at _____ (prevailing Eastern Time).  Any objections or responses to entry of the Final Order shall be filed on or before _____, 2016 at 4:00 p.m. (prevailing Eastern Time) (the "<u>Objection Deadline</u>") and served on the following parties:  (i) the Debtors, 1900 West Field Court, Lake Forest, Illinois 60045, Attn: Keith A. Zar, General Counsel; (ii) proposed counsel for the Debtors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Attn: Jessica C.K. Boelter, Esq. and Matthew E. Linder, Esq., and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Edmon L. Morton, Esq.; (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Richard L. Schepacarter, Esq.; (iv) counsel to Credit Suisse AG, Cayman Islands Branch, as the Prepetition ABL Agent, (a) Cravath, Swaine & Moore LLP, Worldwide Plaza, 825 Eighth Avenue, New York, New York, 10019, Attn: Paul H. Zumbro, Esq. and (b) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis, Esq. and Matthew B. McGuire, Esq.; (v) Wilmington Trust, N.A., in its capacity as the indenture trustee for the Unsecured Notes; (vi) counsel to any Creditors' Committee; (vii)

counsel to the Ad Hoc Group; and (viii) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  Notice of the Interim Order will be served in accordance with Local

Rule 9013-1(m).

      31.    <u>Service of the Interim Order</u>.  The Debtors shall promptly serve copies of this

Interim Order (which shall constitute adequate notice of the Final Hearing, including, without

limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights

under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given

notice of the Interim Hearing, to any party that has filed a request for notices with this Court and

to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's

counsel, if the same shall have been appointed.


Dated: _____, 2016
Wilmington, Delaware

                    _____

                    UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Budget**

**UCI International LLC and Domestic Subsidiaries**
*13 Week Forecast for Week Ending 05/27/16*
<u>UCI US Cash Collateral Budget</u>
USD (000's)

*Filing 6/2*

| | Actual | | | | | | | | | Forecast for the Week Ending | | | | | | | 13 Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Week Ending | 6-May-16 | 13-May-16 | 20-May-16 | 27-May-16 | 3-Jun-16 | 10-Jun-16 | 17-Jun-16 | 24-Jun-16 | 1-Jul-16 | 8-Jul-16 | 15-Jul-16 | 22-Jul-16 | 29-Jul-16 | 5-Aug-16 | 12-Aug-16 | 19-Aug-16 | Total |
| **Cash Receipts** | | | | | | | | | | | | | | | | | |
| Third Party A/R Receipts | 7,492 | 9,592 | 9,378 | 9,215 | 7,773 | 4,959 | 5,216 | 10,495 | 9,202 | 8,054 | 8,266 | 9,322 | 8,442 | 8,137 | 8,016 | 8,961 | 106,058 |
| AR Factoring, net of discount [1] | 1,457 | 2,368 | 1,672 | 2,278 | 2,705 | - | 980 | 1,174 | 768 | 946 | 2,323 | 1,727 | 2,112 | 1,775 | 1,977 | 1,924 | 20,690 |
| APH/FRAM Group | - | - | 1,297 | 344 | 395 | 433 | 1,604 | 433 | 400 | 205 | 703 | 205 | 205 | 59 | 35 | 870 | 5,892 |
| Other Receipts | 23 | 5 | 8 | 359 | - | - | - | - | - | - | - | - | - | - | - | - | 359 |
| **Total Cash Receipts** | 8,972 | 11,964 | 12,355 | 12,196 | 10,873 | 5,392 | 7,800 | 12,102 | 10,370 | 9,205 | 11,293 | 11,255 | 10,760 | 9,971 | 10,027 | 11,754 | 132,998 |
| **Third Party Disbursements** | | | | | | | | | | | | | | | | | |
| Third Party Vendor Payments | (8,781) | (5,556) | (8,639) | (8,697) | (1,718) | (8,782) | (8,375) | (5,969) | (5,563) | (5,157) | (5,052) | (4,948) | (4,844) | (4,740) | (4,636) | (4,938) | (73,419) |
| Reorganization Fees | (455) | (1,343) | (578) | (599) | (1,015) | - | - | - | - | - | - | - | - | - | - | - | (1,614) |
| Payroll / PR Taxes | (878) | (2,454) | (1,627) | (2,562) | (1,033) | (2,433) | (1,033) | (2,453) | (867) | (2,382) | (985) | (2,408) | (1,271) | (2,005) | (995) | (2,254) | (23,080) |
| Benefits (HWP) | (1,779) | (60) | (250) | (682) | (1,682) | (68) | (250) | (60) | (1,438) | (68) | (250) | (60) | (389) | (1,068) | (250) | (60) | (5,703) |
| Severance | - | - | - | (341) | - | - | - | - | (166) | (48) | (48) | (48) | (48) | (38) | (38) | (38) | (814) |
| Third Party Interest/fees paid | - | - | - | - | - | - | - | - | (777) | - | - | - | - | - | - | - | (777) |
| Restructuring costs (excl severance) | - | - | - | (30) | (3) | (127) | (127) | (127) | (127) | (91) | (91) | (91) | (91) | (90) | (90) | (90) | (1,177) |
| CAPEX | (81) | (20) | (76) | (54) | (65) | (200) | (77) | (77) | (77) | (541) | (77) | (77) | (77) | (77) | (77) | (77) | (1,552) |
| Insurance/claims | - | - | - | (340) | (50) | (350) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (1,240) |
| Taxes | (1) | (1) | (11) | (100) | (1) | (10) | (260) | 1,392 | (1) | (10) | (6) | (1) | (60) | (10) | (2) | (1) | 930 |
| Other | (3) | 145 | 35 | - | - | (376) | - | - | - | - | - | - | - | - | - | - | (376) |
| **Total Third Party Disbursements** | (11,978) | (9,289) | (11,146) | (12,782) | (5,567) | (12,346) | (10,172) | (7,345) | (9,066) | (8,347) | (6,560) | (7,684) | (6,830) | (8,478) | (6,138) | (7,508) | (108,822) |
| **Cash Flow from Operations** | (3,006) | 2,675 | 1,209 | (586) | 5,306 | (6,954) | (2,372) | 4,757 | 1,305 | 858 | 4,733 | 3,572 | 3,930 | 1,493 | 3,889 | 4,246 | 24,176 |
| **Foreign Subsidiary Payments** | (215) | (2,293) | (1,746) | (1,149) | (606) | (2,275) | (3,540) | (1,739) | (125) | (1,598) | (4,649) | (2,945) | (1,199) | (1,169) | (2,363) | (2,900) | (26,257) |
| **Cash Flow from Operations w Foreign Sub Payments** | (3,221) | 382 | (537) | (1,735) | 4,700 | (9,229) | (5,912) | 3,018 | 1,180 | (740) | 84 | 627 | 2,731 | 324 | 1,526 | 1,346 | (2,081) |
| **Chapter 11 Costs** | | | | | | | | | | | | | | | | | |
| Reorganization Fees | - | - | - | - | - | (50) | (50) | (50) | (500) | (50) | (50) | (250) | (3,400) | (500) | (50) | (50) | (5,000) |
| Pre-petition bankruptcy related payments | - | - | - | - | - | (4,875) | (4,875) | (4,875) | (4,875) | (3,591) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (1,250) | (30,591) |
| Utility Deposit | - | - | - | - | - | (300) | - | - | - | - | - | - | - | - | - | - | (300) |
| DIP Financing Interest and Fees | - | - | - | - | - | - | - | - | - | (1,065) | - | - | - | - | - | - | (1,065) |
| **Total Chapter 11 Costs** | - | - | - | - | - | (5,225) | (4,925) | (4,925) | (5,375) | (4,706) | (1,300) | (1,500) | (4,650) | (1,750) | (1,300) | (1,300) | (36,956) |
| **Net Cash Flow** | (3,221) | 382 | (537) | (1,735) | 4,700 | (14,454) | (10,837) | (1,907) | (4,195) | (5,446) | (1,216) | (873) | (1,919) | (1,426) | 226 | 46 | (39,037) |
| Beginning Cash (book) | 33,834 | 30,614 | 30,996 | 30,459 | 28,724 | 33,423 | 18,969 | 8,132 | 6,225 | 2,030 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,226 | 30,459 |
| Net Cash Flow | (3,221) | 382 | (537) | (1,735) | 4,700 | (14,454) | (10,837) | (1,907) | (4,195) | (5,446) | (1,216) | (873) | (1,919) | (1,426) | 226 | 46 | (39,037) |
| **Ending Cash Balance (book)** | 30,614 | 30,996 | 30,459 | 28,724 | 33,423 | 18,969 | 8,132 | 6,225 | 2,030 | (3,416) | 3,784 | 4,127 | 3,081 | 3,574 | 5,226 | 5,272 | |
| DIP Borrowings | | | | | | | | | | 8,416 | 1,216 | 873 | 1,919 | 1,426 | | | 13,851 |
| **Ending Cash after Borrowings** | 30,614 | 30,996 | 30,459 | 28,724 | 33,423 | 18,969 | 8,132 | 6,225 | 2,030 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,226 | 5,272 | 5,272 |
| **Prepetition ABL Borrowing Base Forecast** | | | | | | | | | | | | | | | | | |
| BB Month | 5/31/16 | 5/31/16 | 5/31/16 | 4/30/16 | 4/30/16 | 4/30/16 | 4/30/16 | 5/31/16 | 5/31/16 | 5/31/16 | 5/31/16 | 6/30/16 | 6/30/16 | 6/30/16 | 6/30/16 | 6/30/16 | |
| Projected Base Borrowing Base | 94,020 | 94,020 | 94,020 | 94,669 | 94,669 | 94,669 | 94,669 | 93,411 | 93,411 | 93,411 | 93,411 | 101,367 | 101,367 | 101,367 | 101,367 | 101,367 | |
| **Total Availability (Capped at $100M)** | 94,020 | 94,020 | 94,020 | 94,669 | 94,669 | 94,669 | 94,669 | 93,411 | 93,411 | 93,411 | 93,411 | 100,000 | 100,000 | 100,000 | 100,000 | 100,000 | |
| Less Outstanding LC's | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | (5,804) | |
| Less Outstanding Revolver | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | (69,444) | |
| **Remaining Availability** | 18,773 | 18,773 | 18,773 | 19,422 | 19,422 | 19,422 | 19,422 | 18,164 | 18,164 | 18,164 | 18,164 | 24,753 | 24,753 | 24,753 | 24,753 | 24,753 | |
| **ABL Borrowing inc. LC's** | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | 75,248 | |
| **DIP Borrowing** | | | | | | | | | | 8,416 | 9,632 | 10,505 | 12,425 | 13,851 | 13,851 | | |

**Note:**

| | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Cash Receipts | 8,972 | 11,964 | 12,355 | 12,196 | 10,873 | 5,392 | 7,800 | 12,102 | 10,370 | 9,205 | 11,293 | 11,255 | 10,760 | 9,971 | 10,027 | 11,754 | 132,998 |
| Total Third Party Disbursements Excluding Chapter 11 P | (12,195) | (11,582) | (12,892) | (13,931) | (6,173) | (19,796) | (18,587) | (13,959) | (14,066) | (14,601) | (12,429) | (11,879) | (9,279) | (10,897) | (9,751) | (11,658) | (167,036) |
| Net Cash Flow Before DIP Borrowings and Excluding Ch | (3,221) | 382 | (537) | (1,735) | 4,700 | (14,404) | (10,787) | (1,857) | (3,695) | (5,396) | (1,166) | (623) | 1,481 | (926) | 276 | 96 | (34,037) |
| Ending Cash after Borrowings | 30,614 | 30,996 | 30,459 | 28,724 | 33,423 | 18,969 | 8,132 | 6,225 | 2,030 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,226 | 5,272 | 5,272 |

**Notes:**
[1] Includes direct receipts from customers that factored receivables pre-petition