**Exhibit 1**

**Engagement Letter**

MOELIS & COMPANY

2/3/2016

CONFIDENTIAL

**UCI Holding Limited**
**1900 West Field Court**
**Lake Forest, IL 60045**

Attention: Joseph E. Doyle, General Counsel

Ladies & Gentlemen:

We are pleased to confirm that since **December 18 2015**, UCI Holding Limited (together with its subsidiaries, the "Company" or "you") has engaged Moelis & Company LLC ("Moelis" or "we") to act as its exclusive financial advisor and investment banker in connection with the Company's proposed Restructuring, and potential Sale Transaction or Capital Transaction (each, as defined below, a "Transaction").

"Sale Transaction" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company or any of its subsidiaries (each, a "Subsidiary") to one or more third parties (including creditors) (an "Acquirer"), (b) the merger or combination of the Company or any Subsidiary with an Acquirer or (c) an Acquirer's acquisition of all or a significant portion of the assets, properties or business of the Company or any Subsidiary, or (d) an Acquirer's acquisition of any business unit, division or specified discrete assets that Moelis may be asked to sell. A series of related transactions consisting of one or more of the foregoing with respect to the same Subsidiary will constitute a single Sale Transaction. If a Transaction is both a Sale Transaction and a Restructuring, it shall be treated as a Restructuring. If a Transaction is both a Sale Transaction and a Capital Transaction, it shall be treated as a Capital Transaction.

"Capital Transaction" means a transaction in which the Company (or any of its subsidiaries or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

"Restructuring" means any restructuring, reorganization, rescheduling or recapitalization of all or any material portion of the liabilities of the Company (or its subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "Plan") confirmed and consummated in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments. A series of related transactions consisting of one or more of the foregoing will constitute a single Restructuring.

-1-

MOELIS COMPANY

1. As part of our engagement, we will if appropriate and requested:

(a) assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b) assist the Company in reviewing and analyzing a potential Restructuring, Sale Transaction or Capital Transaction (or any combination thereof);

(c) assist the Company in negotiating a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) including, without limitation, with creditor groups, equity holders or other parties in interest (in each case who are institutional parties or represented by an advisor);

(d) assist the Company in valuing the Company's business

(e) advise the Company on the terms of securities it offers in any potential Capital Transaction;

(f) advise the Company on its preparation of information memorandum for, a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(g) assist the Company in contacting potential Acquirers or purchasers that we and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements;

(h) be available to meet with the Company's management and the Company's board of directors as directed by the Company to discuss any Restructuring, Sale Transaction or Capital Transaction;

(i) participate in hearings before the Bankruptcy Court and provide testimony regarding the services provided hereunder; and

(j) provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services will be made on a reasonable best efforts basis.

2. (a) As compensation for our services hereunder, the Company agrees to pay us the following nonrefundable cash fees:

MOELIS & COMPANY

Monthly Fee

(ii) During the term of this agreement, a fee of $150,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement. Whether or not a Restructuring or Sale Transaction occurs, we shall earn and be paid the Monthly Fee every month during the term of this agreement. After the first six months, 50% of the Monthly Fee shall be creditable against the Restructuring Fee (as defined below), the Capital Transaction Fee (as defined below) or the Sale Transaction Fee (as defined below), as applicable.

Restructuring Fee

(iii) At the closing of the Restructuring, a one-time fee (the "Restructuring Fee") of $3,000,000. In the event the Restructuring is a pre-packaged or pre-arranged Plan, the Company will pay Moelis an additional $500,000 and in the event of a fully out-of-court Restructuring, the Company will pay Moelis an additional fee of $1,000,000, in each case at the closing of the Restructuring.

Notwithstanding the foregoing, if the Company pursues a Restructuring pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended, in lieu of the Restructuring Fee, we will earn and the Company will pay a fee of $3,000,000 (the "Section 3(a)(9) Fee") on the date that definitive offer documents for the exchange offer(s) under Section 3(a)(9) are first distributed to creditors whose claims would be affected thereby. The Section 3(a)(9) Fee is not dependent on the results of the offer or any other contingency.

Sale Transaction Fee

(iv) In the event that the Company pursues a Sale Transaction, a transaction fee (a "Sale Transaction Fee") consistent with market based fees that will be mutually agreed upon (in a separate agreement containing customary terms) by the Company and Moelis in good faith and payable upon Closing of such Transaction.

The Company will pay a separate Sale Transaction Fee for each Sale Transaction.

Capital Transaction Fee

(v) In the event that the Company pursues a Capital Transaction, a transaction fee (a "Capital Transaction Fee") consistent with market based fees (based on the amount of capital Raised (as defined below) in any such Capital Transaction) that will be mutually agreed upon (in a separate agreement containing customary terms) by the Company and Moelis in good faith and payable upon Closing of such Transaction.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations. If a Transaction involves both a Restructuring and a Capital Transaction, both a Restructuring Fee and a Capital

MOELIS COMPANY

Transaction Fee shall be payable. If a Transaction involves both a Sale Transaction and a Capital Transaction, both a Sale Transaction Fee and a Capital Transaction Fee shall be payable. In connection with a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) intended to be consummated in connection with a pre-packaged or pre-arranged Plan, (i) we will have earned 100% of the Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee prior to the commencement of the Bankruptcy Case, and (ii) the Company will pay, (a) 50% of the Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee prior to the commencement of the Bankruptcy Case; provided that if the Plan contemplating such Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) does not become effective, then Moelis shall credit such portion of the Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee against any Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee that becomes due and payable upon the closing of another Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) and (b) the remaining 50% of the Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee at the subsequent closing of the Restructuring, Sale Transaction or Capital Transaction (or any combination thereof). For purposes of this agreement, a "pre-arranged" Plan means any Plan with respect to which holders of at least one class of claims representing at least 50% in dollar amount of the claims in such class have provided binding written evidence (through a "lock-up agreement" or otherwise) of their intent to vote in favor of such Plan.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) or enters into an agreement or a Plan is filed regarding a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) and a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) is subsequently consummated, then the Company (or its bankruptcy estates) shall pay us the appropriate fee specified in Section 2(a) above immediately upon the closing of each such transaction. The "Tail Period" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) consummated out-of-court, 12 months following the expiration or termination of this agreement or (ii) otherwise 18 months following the expiration or termination of this agreement. The Company agrees not to object to our request to the Bankruptcy Court and any appellate court to allow such fees.

Notwithstanding anything contained herein to the contrary, the aggregate of all fees that Moelis shall be entitled to hereunder (including all Monthly Fees, Restructuring Fee, Sale Transaction Fee and Capital Transaction Fee) shall not exceed $6,000,000.

(b) Whether or not the Company consummates a Restructuring, Sale Transaction or Capital Transaction, the Company will reimburse us for all of our actual, reasonable and documented out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of our legal counsel. In connection therewith, the Company shall pay Moelis upon execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this agreement. We agree to provide the Company with reasonable support for our expenses at the Company's request or at the Bankruptcy Court's direction. Prior to commencing a Bankruptcy Case, the Company will reimburse all of our reasonable out-of-pocket expenses that we incurred up to such commencement.

(c) The Company's obligation to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim.

MOELIS & COMPANY

(d) Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3. If a Bankruptcy Case is commenced:

(a) The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case. The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all amounts then earned and payable pursuant to this agreement.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code. If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the second to last paragraph of Section 2(a).

(c) Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

(e) Moelis acknowledges that after filing of a Bankruptcy Case, the amounts payable hereunder will be subject to allowance by the Bankruptcy Court.

MOELIS COMPANY

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4. The Company will furnish us with all information concerning the Company and, to the extent available to the Company, the Acquirer as we reasonably deem appropriate (collectively, the "Information") to execute this engagement and will provide us with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise us promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, the Acquirer that occurs during the term of this agreement. In performing our services hereunder, we will be entitled to use and rely upon the Information as well as publicly available information without independent verification. We are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. We will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Company authorizes us to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

We will keep Information concerning the Company provided to us in connection with this agreement confidential pursuant to the Confidentiality Agreement between the Company and Moelis, dated December 18, 2015, for the term thereof; provided we may provide such Information to prospective Transaction parties as contemplated by this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

5. The Company will not disclose, summarize or refer to any of our advice publicly or to any third party without our prior written consent or as required by (i) subpoena, (ii) court order or (iii) applicable law; *provided* that, with respect to clause (iii), the Company will not explicitly attribute such advice to Moelis and, at Moelis's request, will take commercially reasonable measures to redact Moelis-identifying information from Moelis-prepared work product. In the event disclosure is required by subpoena or court order, the Company will (to the extent permissible by applicable law) provide us reasonable advance notice and permit us to comment on the form and content of the disclosure. We may, at our option and expense after announcement of any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive financial advisor and capital markets advisor to the Company in connection with any Restructuring, Sale Transaction or Capital Transaction (or

MOELIS & COMPANY

any combination thereof). If we request, the Company shall include a mutually acceptable reference to us in any public announcement of a Restructuring, Sale Transaction and Capital Transaction.

6. We are an independent contractor with the contractual obligations described herein owing solely to the Company. We expressly disclaim any fiduciary duty. Since we will be acting on the Company's behalf, the Company and we agree to the indemnity and other provisions set forth in the attached *Annex A*. The Company's obligations set forth therein are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The Company hereby agrees to the acknowledgements and disclosures set forth in *Annex B*. The obligations hereunder of the entities comprising the Company shall be joint and several.

7. This engagement will continue until the earliest of (i) the effective date of a chapter 11 plan of reorganization or liquidation confirmed in the Bankruptcy Cases, (ii) the conversion of the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, (iii) dismissal of the Bankruptcy Cases, and (iv) the consummation of the Restructuring Transaction or Sale Transaction. Notwithstanding the foregoing, (i) the Company may terminate our engagement earlier, with or without cause, upon 15 days' prior written notice thereof to us and (ii) we may terminate our engagement earlier, with or without cause, upon 15 days' prior written notice thereof to the Company. In the event of any termination or expiration, (i) we will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) Annex A, the second to last paragraph of Section 2(a) and Sections 3 and 9 shall remain in full force and effect after the completion, termination or expiration of this agreement; provided, however, that if we terminate our engagement then we shall not be entitled to the rights set forth in the second to last paragraph of Section 2.

8. We have conducted a conflicts clearance process in accordance with our internal policies and procedures and based on that process, as of the date of this letter, we believe we do not have any direct conflict that would prevent us from providing advice to the Company in connection with the Restructuring. We shall make disclosure to the Bankruptcy Court regarding conflicts in accordance with the Bankruptcy Code and Bankruptcy Rules.

9. We are a securities firm engaged in a number of merchant banking, asset management and investment banking activities. We have no duty to disclose to the Company or use for the Company's benefit any nonpublic information acquired in the course of providing services to any other person, engaging in any transaction (on our own account or otherwise) or carrying on our other businesses. Our affiliates, employees, officers and partners may at any time own the Company's securities or those of a prospective Acquirer or other entity involved in a transaction contemplated hereby. We recognize our obligations under applicable securities laws in connection with the purchase and sale of such securities.

10. This agreement shall be governed by and construed in accordance with the internal laws of the State of New York, embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and us. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above. This agreement may be executed in two or more counterparts, each of which

MOELIS COMPANY

shall be deemed an original, but all of which shall constitute one and the same agreement. This agreement shall be binding upon the Company and us and its and our respective successors and permitted assigns. WE AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS COMPANY

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with the Company. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
Name:
Title:  William Derrough
        Managing Director

Agreed to as of the date first written above:

UCI Holdings Limited

By: _____
Name: Joshua E Doyle
Title: General Counsel

MOELIS & COMPANY

## ANNEX A

In the event that Moelis & Company LLC or our affiliates or any of our or our affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling us or any of our affiliates) (collectively, "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein, the Company will reimburse such Indemnified Person for the actual, reasonable and documented out-of-pocket costs and expenses (including actual, reasonable and documented counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages or liabilities (collectively, "Losses") (A) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents (including the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the engagement) or (B) otherwise arising out of, related to or in connection with this agreement or our performance thereof, except that this clause (B) shall not apply to Losses that are finally judicially determined to have resulted primarily from the bad faith, gross negligence or willful misconduct of such Indemnified Person (such Losses under this exception to Clause (B), "Excluded Losses").

If such indemnification or limitation on liability is for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by us, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable and with respect to Excluded Losses, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company on the one hand and of us on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons (other than with respect to Excluded Losses) be responsible for amounts that exceed the fees actually received by us from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and us, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by us in connection with this agreement.

The Company will not without our prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding

A-1

MOELIS COMPANY

securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify us in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and us.

A-2

MOELIS COMPANY

MOELIS COMPANY

## ANNEX B

**FINRA Suitability.** Pursuant to FINRA Rule 2111, the Company acknowledges that (i) the Company is capable of evaluating investment risks independently, both in general and with regard to transactions and investment strategies involving a security or securities and will exercise independent judgment in evaluating recommendations (if any) of Moelis and its associated persons, and the Company is an Institutional Account as defined in FINRA Rule 4512(c).

**USA Patriot Act.** Moelis is required to obtain, verify, and record information that identifies the Company in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.

**Business Continuity.** Moelis maintains a business continuity plan that is reviewed annually and is updated as necessary. Our disclosure statement is available on our website at www.moelis.com and a copy can be requested by contacting us at compliance@moelis.com.

MOELIS COMPANY