**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, et al.[1] | Case No. 16-11354 (MFW) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: December 6, 2016 at 2:00 p.m. (ET) |
| | Objection Deadline: November 28, 2016 at 4:00 p.m. (ET) |

**MOTION OF THE DEBTORS FOR
ENTRY OF AN ORDER (A) AUTHORIZING THE
DEBTORS TO ASSUME CERTAIN EXECUTORY CONTRACTS;
(B) ESTABLISHING CURE AMOUNTS; AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors") hereby move this Court (the "Motion") pursuant to sections 105 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for entry of an order (the "Proposed Order") (a) authorizing the debtors to assume certain executory contracts; (b) establishing cure amounts with respect to such assumed executory contracts; and (c) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857). The mailing address for each Debtor is 2201 Waukegan Road, Suite 140, Bannockburn, Illinois 60015.

**STATUS OF THE CASE AND JURISDICTION**

1.      On June 2, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 3, 2016, the Court entered an order [D.I. 49] authorizing the joint administration and procedural consolidation of these cases pursuant to Bankruptcy Rule 1015(b).

2.      On June 10, 2016, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 103].  No party has requested the appointment of a trustee or examiner in these cases.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are sections 105 and 365 of the Bankruptcy Code, Bankruptcy Rule 6006 and Local Rule 9018-1(b).

## BACKGROUND OF THE DEBTORS

6.  A detailed description of the Debtors' businesses and the events preceding the Petition Date can be found in the Declaration *of Brian Whittman in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 4] (the "First Day Declaration").

## BACKGROUND TO THE MOTION

7.  Since the Petition Date, the Debtors have been assessing and analyzing the potential assumption of executory contracts as part of their ongoing restructuring efforts. Although this process continues, the Debtors have determined, in their business judgment, that it is in the best interests of the Debtors, the estates, and creditors to assume certain agreements that are important to the business of Debtor Champion Laboratories, Inc. ("Champion") at this time.

8.  As described further in the First Day Declaration, Champion is engaged in the business, among other things, of designing manufacturing, and selling automotive filtration products and filters.  In the ordinary course of business, Champion purchases filters and filtration products from certain key vendors, while also utilizing certain trademarks and other intellectual property in connection with the sale of such vendors' filters and filtration products. In order to continue ensure the continuity and stability of these important business relationships, the Debtors seek to assume certain agreements in connection with the purchase and branding of filters and filtration products from Hengst of North America, Inc. ("Hengst").

**A. Hengst Filter Agreements**

9.  As part of its business operations, Hengst manufactures, markets and sells filters and filtration products for automotive and commercial use. Champion, in the ordinary course of business, purchases certain filters and filtration products from Hengst for resale to certain of its filtration customers. As described in the First Day Declaration, prior to the Petition Date, the Debtors' vehicle filtration business shared certain manufacturing and distribution facilities with certain direct and indirect subsidiaries of non-Debtor Affiliate Autoparts Holding (collectively, "AH"). AH, like Champion, purchases certain filters and filtration products from Hengst. In furtherance of these relationships, Hengst, Champion, and FRAM Group Operations, LLC ("FRAM") are parties to the following agreements (collectively, the "Executory Contracts"):[2]

    a. That certain Purchase and Rebate Agreement, dated as of February 14, 2014 (the "Purchase Agreement");

    b. That certain Limited Manufacturing License, dated as of February 14, 2014 (the "License Agreement"); and

    c. That certain Settlement Agreement, dated as of February 14, 2014 (the "Settlement Agreement").

10.  Pursuant to the Purchase Agreement, Champion and FRAM purchase filters and filtration products from Hengst in accordance with the purchasing terms under the Purchase Agreement, which sets forth unit pricing and annual volume expectations. The Purchase Agreement expires on February 14, 2019. In connection with the sale of the filters and filtration products, Hengst has granted FRAM and Champion a limited license pursuant to the License Agreement. The Settlement Agreement settles a prior patent infringement lawsuit between

---

[2] FRAM has reviewed a draft of this Motion and the Proposed Order and supports assumption of the Hengst Filter Agreements.

01:19514214.1

4

Hengst, FRAM and Champion.[3] In order to continue their business relationship going forward, the Debtors have determined it is necessary to assume the Hengst Filter Agreements. Moreover, Hengst has reviewed a draft Motion and Proposed Order and has agreed to consent to an assumption of the License Agreement, provided that Champion assumes each of the Hengst Filter Agreements in their entirety.

### B. The Filters and Filtration Products Provided by Hengst are Critical to the Debtors' Operations

11. The filters and filtration products provided by Hengst are critical to the Debtors' ongoing operations and cannot be timely replaced in the open market by third parties. The revenue recognized by Champion from the Executory Contracts is in excess of a combined $2 million per year. Champion also anticipates opportunities in the future to expand its relationship with Hengst. Communications with Hengst have resulted in an understanding by the Debtors that any future relationship, new or a continuation of the existing relationship beyond the current terms of the Executory Contracts, could be negatively affected without assumption of the Executory Contracts to allow the Parties to add permanence and certainty to their relationship during the bankruptcy and beyond.

12. The Debtors have confirmed that Hengst has a prepetition claim in the amount of $812,950.50 (the "Cure Amount") related to the Hengst Filter Agreements.[4] No defaults, other than the Cure Amount, currently exist under the Executory Contracts.

---

[3] The Settlement Agreement settled the lawsuit captioned *Hengst* v. *Champion and FRAM*, Civil Action No. 3:13-cv-02300-MBS, filed in the United States District Court for the District of South Carolina, alleging that certain FRAM Filtration products infringe U.S. Reissue Patent No. 38,917.

[4] Based on a review of the Debtors' books and records, approximately $103,575.23 of this amount is for goods sold by Hengst and received by Champion within 20 days before the Petition Date. As a result, the Debtors believe that Hengst is entitled to administrative priority under 11 U.S.C. § 503(b)(9).

01:19514214.1

13. In order to continue the relationships with Hengst according to previously-negotiated terms between the parties, Champion has determined it is beneficial to assume the Executory Contracts at this time. Hengst has reviewed this Motion and has consented to assumption of the Executory Contracts and the Cure Amount set forth in the Proposed Order.

## RELIEF REQUESTED

14. By this Motion, the Debtors respectfully request the entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, which would, without the need for any further approval from this Court, (a) authorize the Debtors to assume the Executory Contracts; (b) declare the consequences of such assumptions, including with respect to the Cure Amount; and (c) grant related relief. The Executory Contracts will be assumed as of the date of entry of the Order (the "Assumption Effective Date"). A full list of the Executory Contracts is set forth on Schedule 1 to Exhibit A.

## BASIS FOR RELIEF

15. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).[5] Delaware bankruptcy courts have found that intellectual property licensing agreements are executory contracts. *See In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 121 (Bankr. D. Del. 2015) (finding trademark license to be an executory contract); *In re Valley Media, Inc.*, 279 B.R. 105, 135 (Bankr. D. Del. 2002) (finding copyright license to be an

---

[5] The Bankruptcy Code does not define "executory contract," but the Third Circuit Court of Appeals did so in *Enterprise Energy Corp. v. United States (In re Columbia Gas Sys.)*, 50 F.3d 233, 239 (3d Cir. 1994): "[An executory contract is] a contract under which the obligation[s] of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Thus, unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under section 365. Furthermore, "[t]he time for testing whether there are material unperformed obligations on both sides is when the bankruptcy petition is filed." *Id.* at 240. As demonstrated by the list of on-going and therefore unperformed obligations in paragraphs 9-11 of the Motion, the Filter Agreements are executory contracts within the meaning of section 365 of the Bankruptcy Code.

01:19514214.1

executory contract); *In re Golden Books Entm't, Inc.*, 269 B.R. 311, 314 (Bankr. D. Del. 2001) (same); *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 42-45 (Bankr. D. Del. 1999) (finding patent license to be an executory contract). Section 365(c) of the Bankruptcy Code can complicate assumption of licensing agreements where, under 11 U.S.C. § 365(c)(1)(B) [the licensor] "does not consent to such assumption or assignment." However, such issues are moot when the licensor's consent is freely given, as is the instant case. *See In re Golden Books Family Entm't*, 269 B.R. at 308 (*citing* Lawrence P. King et al., 3 Collier on Bankruptcy P 365.06[1] (15th ed. 1997)).

16. The decision to assume or reject an executory contract is a matter within the business judgment of the debtor. *See In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *see also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003). The business judgment standard is satisfied if assumption would benefit the estate. *See In re Farmland Indus., Inc.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) (finding that the debtor must show merely that "the action to be taken will benefit the estate"). Indeed, when applying the "business judgment" standard in connection with a decision under section 365 of the Bankruptcy Code, courts show great deference to a debtor's business decisions. *See e.g., In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or lease is appropriate under section 365(a)."); *In re Troll Commc'ns*, LLC, 385 B.R. 110, 118 (Bankr. D. Del. 2008).

17. Upon finding that the debtor has exercised its sound business judgment in determining that the assumption or rejection of an executory contract is in the best interests of the debtor, its creditors, and all parties in interest, a court should approve such assumption or

rejection under section 365(a) of the Bankruptcy Code. *See Federal Mogul Global*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or gross abuse of discretion."); *Armstrong World Indus.*, 348 B.R. at 162 (same). Indeed, there is a well-settled presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (noting that under the business judgment test, "the debtor's business judgment … must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion").

18.     Pursuant to Section 365(b)(1) of the Bankruptcy Code, a debtor in possession may not assume an executory contract or unexpired lease unless, at the time of assumption, the debtor-in-possession—

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)(A)-(C).

19. In the sound exercise of their business judgment, the Debtors have determined that it is in their best interests to assume the Executory Contracts. As described above, the Executory Contracts annually bring significant value to the estates and preservation of this business relationship is essential to any meaningful reorganization. The Debtors must operate decisively to demonstrate the importance of the Hengst relationship to the Debtors' business, particularly to ensure that Champion will be in position to be competitive for new business with Hengst in the future. Assumption of the Executory Contracts will create a needed stability to ensure that Hengst continue to do business with the Debtors following emergence from these chapter 11 cases.

20. Section 365(b)(1) of the Bankruptcy Code provides that the debtor-in-possession may only assume an executory contract after demonstrating that the estate is able to meet the debtor's obligations—here by promptly curing any existing defaults and providing adequate assurance of future performance under such contract. *See, e.g.*, *Metropolitan Airports Comm'n v. Northwest Airlines, Inc. (In re Midway Airlines)*, 6 F.3d 492, 496 (7th Cir. 1993). No defaults, other than the Cure Amount, exist currently. As noted above, the Cure Amount agreed upon between the parties is $812.950.50. $732,950.50 of this amount will be paid by Champion, and the remaining $80,000 will be paid by FRAM pursuant to an agreement among Champion, FRAM, and Hengst. Champion submits that it is able to pay its portion of the Cure Amount in full and that the value to the estates of the Executory Contracts far outweigh any burden associated with their assumption.

21. In light of the foregoing, the Debtors respectfully submit that assuming the Executory Contracts is supported by sound business judgment and is in the best interests of their estates and creditors.

01:19514214.1

Segments:

## NOTICE

22. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to Credit Suisse AG, Cayman Islands Branch, the administrative agent, collateral agent and issuing lender for the Debtors' prepetition credit facility; (iv) counsel to Wilmington Trust, N.A., the indenture trustee for the Debtors' prepetition unsecured notes; (v) counsel to certain holders of the Debtors' prepetition unsecured notes; (vi) counsel to Hengst; and (vii) all parties that, as of the filing of this Motion, have requested notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

23. No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

| | |
|---|---|
| Dated:  November 10, 2016<br>Wilmington, Delaware | SIDLEY AUSTIN LLP<br>Larry J. Nyhan<br>Jessica C.K. Boelter<br>Kerriann S. Mills<br>Geoffrey M. King<br>Michael T. Gustafson<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Facsimile:  (312) 853-7036<br><br>-and-<br><br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Ashley E. Jacobs*<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Ashley E. Jacobs (No. 5635)<br>Elizabeth S. Justison (No. 5911)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 571-6600<br>Facsimile:  (302) 571-1253<br><br>ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION |