# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| UCI INTERNATIONAL, LLC, <u>et al.</u>[1] | Case No. 16-11354 (MFW) |
| Debtors. | (Jointly Administered) |
|  | **Ref. Docket Nos. 728, 822, 971 & 975** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER CONFIRMING THE JOINT PLAN OF
REORGANIZATION FOR UCI INTERNATIONAL, LLC
AND ITS DEBTOR AFFILIATES PROPOSED BY THE DEBTORS,
THE AD HOC COMMITTEE OF SENIOR NOTEHOLDERS
<u>AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), having:[2]

a. commenced, on June 2, 2016 (the "<u>Petition Date</u>"), these chapter 11 cases (the "<u>Chapter 11 Cases</u>") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

b. continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. filed, on August 26, 2016, the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates [D.I. 467] (the "<u>Original Plan</u>") and the Disclosure Statement for the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates [D.I. 468] (the "<u>Original Disclosure Statement</u>"), which Original Plan, Original

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI Acquisition Holdings (No. 1) Corp (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857). The mailing address for each Debtor is 2201 Waukegan Road - Suite 140, Bannockburn, Illinois 60015.

[2] Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "<u>Confirmation Order</u>") shall have the meanings ascribed to them in the Plan (as defined herein). The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order.

01:21287936.1

Disclosure Statement, and related documents were subsequently revised or supplemented, as set forth herein;

d. filed, on September 30, 2016, the Revised Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders, and the Official Committee of Unsecured Creditors [D.I. 632] (the "Revised Plan") and the Revised Disclosure Statement for the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 633] (the "Revised Disclosure Statement"), which Revised Plan, Revised Disclosure Statement, and related documents were subsequently revised or supplemented, as set forth herein;

e. filed, on October 13, 2016, the Further Revised Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 718] (as modified by that Order Modifying Plan of Reorganization for Purposes of Solicitation [D.I. 787]) (the "Further Revised Plan"), and the Further Revised Disclosure Statement for the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 719] (the "Further Revised Disclosure Statement"), which Further Revised Plan, Further Revised Disclosure Statement, and related documents were subsequently revised or supplemented, as set forth herein;

f. obtained, on October 14, 2016, entry of the Order Approving (I) the Adequacy of the Disclosure Statement, (II) the Solicitation and Voting Procedures, (III) the Forms of Ballots and Notices in Connection Therewith, (IV) the Rights Offering Procedures and Related Forms, and (V) Scheduling Certain Dates With Respect Thereto [D.I. 728] (the "Disclosure Statement Order") that, among other things, (a) approved the Disclosure Statement as having adequate information, as required under section 1125(a) of the Bankruptcy Code, (b) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the Plan and created a schedule therefor, and (c) approved, among other things, the Debtors' supplemental disclosures and related notices, forms, and ballots to be submitted to parties in interest in connection with the modifications set forth in the Disclosure Statement (collectively, the "Solicitation Packages") and the Debtors' solicitation procedures (the "Solicitation Procedures");

g. caused, on October 14, 2016, and continuing thereafter (the "Solicitation Date"), solicitation materials and notice of the deadline for objecting to confirmation of the Plan to be distributed consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the Affidavit of Service of Solicitation Materials [D.I. 824] (the "Solicitation Affidavit") filed by Craig Johnson, Assistant Vice President of Garden City Group, LLC ("GCG");

h. filed, on October 17, 2016, notice of the Confirmation Hearing [D.I. 756] (the "Confirmation Hearing Notice") which was published in the *Wall Street Journal* and *USA Today*, as evidenced by, among other things, the Certificate of Publication of Craig E.

01:21287936.1

Johnson re: Notice of Confirmation Hearing [D.I. 931] (the "Publication Notice Affidavit") filed by GCG;

i.  filed, on November 1, 2016, the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 821] (the "Additionally Revised Plan"), which Additionally Revised Plan and related documents were subsequently revised or supplemented, as set forth herein;

j.  filed, on November 1, 2016, the Disclosure Statement for the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 822] (the "Disclosure Statement");

k.  filed, on November 18, 2016, the Notice of Filing of Plan Supplement [D.I. 921] (the "Plan Supplement"), as subsequently revised or supplemented, including but not limited to the December 2, 2016 filing of the Second Plan Supplement [D.I. 972], which includes, *inter alia,* Exhibit 5.10.2 ("Directors and Officers of Reorganized UCI"), Exhibit 5.10.3 ("Directors and Managers or Officers of Reorganized Debtors Other Than Reorganized UCI"), Exhibit 6.1.1 ("Rejected Executory Contract and Unexpired Lease List"), and Exhibit 6.1.2 ("Assumed Executory Contract and Unexpired Lease List");

l.  obtained, on November 30, 2016, the Order Granting Debtors' Motion to Approve (I) Global Settlement (the "Global Settlement") Among the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Group of Noteholders, and Rank Group and (II) the PBGC Settlement Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 [D.I. 950] (the "Global Settlement Order");

m.  filed, on December 2, 2016, the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 971] (as modified, amended, or supplemented from time to time, the "Plan"), a true and correct copy of which is attached hereto as **Exhibit A**;

n.  filed, on December 2, 2016, the Declaration of Craig E. Johnson of Garden City Group, LLC Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Joint Plan of Reorganization for UCI International, LLC and its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 970] (the "Voting Report");

o.  filed, on December 2, 2016, the Debtors' Memorandum of Law in Support of Confirmation of the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 973] (the "Confirmation Brief");

p.  filed, on December 2, 2016, the Declaration of Brian Whittman in Support of Confirmation of the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 974] (the "Whittman Declaration"); and

q. filed, on December 2, 2016, the *Findings of Fact, Conclusions of Law, and Order Confirming the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors* [D.I. 975]; and

r. filed, on December 4, 2016, the Declaration of Adam B. Keil in Support of Confirmation of the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [D.I. 976] (the "Keil Declaration").

And this Court having:

s. set December 6, 2016, at 2:00 p.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

t. reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Whittman Declaration, the Keil Declaration, the Voting Report, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

u. held the Confirmation Hearing;

v. heard the statements, arguments, and objections made by counsel and certain pro se parties in respect of Confirmation;

w. considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

x. overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

y. taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that the notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and

good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

  A. **Findings and Conclusions:** The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

  B. **Jurisdiction, Venue, and Core Proceeding:** This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Venue in this district and before this Court was proper as of the Petition Date and continues to be proper.

  C. **Eligibility for Relief:** The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

  D. **Commencement and Joint Administration of the Chapter 11 Cases:** On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. In accordance with the *Order Directing Joint Administration of Related Chapter 11 Cases* [D.I. 49], the Chapter 11 Cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

E.    **Judicial Notice, Objections:**  The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of the Chapter 11 Cases maintained by the clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to Plan, are overruled on the merits, with prejudice.

F.    **Burden of Proof – Confirmation of the Plan:**  The Plan Proponents have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

G.    **Disclosure Statement Order:**  On October 26, 2016, the Court entered the Disclosure Statement Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017;  (b) approved the Solicitation Procedures;  (c) approved the Solicitation Packages; (d) set November 28, 2016 at 4:00 p.m., prevailing Eastern Time, as the deadline for voting to accept or reject the Plan, as such deadline may have been extended by the

01:21287936.1

Debtors pursuant to the Disclosure Statement Order (the "Voting Deadline"), as well as the deadline for objecting to the Plan (the "Plan Objection Deadline"); and (e) set December 6, 2016, at 2:00 p.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing.  The solicitation of votes on the Plan complied with the Disclosure Statement Order and Solicitation Procedures, was appropriate and satisfactory in all respects based upon the circumstances of the Chapter 11 Cases, and was in compliance with the sections 1125 and 1126 of the Bankruptcy Code and any other applicable provisions of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and any other applicable Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

H.    **Notice:**  As is evidenced by the Solicitation Affidavit, the Publication Notice Affidavit, and the Voting Report, the transmittal and service of the Plan, the Disclosure Statement, and the Solicitation Packages were adequate and sufficient under the circumstances, and all parties required to be given the Confirmation Hearing Notice or other notice of the Confirmation Hearing (including the Objection Deadline), or the Plan Supplement have been given due, proper, timely, and adequate notice in accordance with the Solicitation Procedures and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, including as modified by the Solicitation Procedures, and any applicable non-bankruptcy law, rule, and regulation, and such parties have had an opportunity to appear and be heard with respect thereto. As specifically evidenced by the Publication Notice Affidavit, the publication notice was timely published in *The Wall Street Journal* and *USA Today* on October 25, 2016.  No other or further notice is required.

I.    **Voting Classes and Non-Voting Classes:**  Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to

tabulate the ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

As set forth in the Plan, holders of Claims in Classes A, B, C, and F and holders of Interests in Class J are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in Class G are either Unimpaired or Impaired, but per Section 4.4 of the Plan, as Holders of Intercompany Claims, are conclusively presumed to have accepted the Plan and, therefore, are not entitled to vote to accept or reject the Plan (those holders of Claims in Class G, along with those holders of Claims in Classes A, B, C, and F and holders of Interests in Class J, the "Non-Voting Classes").

In addition, holders of Claims in Class H and Interests in Class I (the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, are therefore deemed to have rejected the Plan, and therefore are also not entitled to vote to accept or reject the Plan. Holders of Claims in Classes D and E (the "Voting Classes," and, together with the Deemed Rejecting Classes, the "Impaired Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation Procedures.

**J.** **Solicitation:** The Plan Proponents solicited votes for acceptance and rejection of the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, and all other applicable rules, laws, and regulations. Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors were not required to solicit acceptances or rejections to the Plan from the Non-Voting Classes. Pursuant to section 1126(g) of the Bankruptcy Code, the Plan Proponents were not required to solicit acceptances or rejections to the Plan from the Deemed Rejecting Classes.

The Solicitation Packages were transmitted on or before October 26, 2016 (the "Solicitation Deadline") to those holders of Claims in the Voting Classes as of October 14, 2016 (the "Voting Record Date"). Votes to accept or reject the Plan were able to be cast by the holders of Claims in the Voting Classes by the Voting Deadline. The establishment and notice of the Voting Record Date and the Voting Deadline were reasonable and sufficient.

The time period during which the Plan Proponents solicited acceptances and rejections to the Plan was a reasonable and sufficient period of time for the Voting Classes to make informed decisions to vote to accept or reject the Plan.

K.    **Good Faith Solicitation:** Based on the record before the Court in the Chapter 11 Cases and evidence presented at the Confirmation Hearing, the Debtors and the Released Parties under the Plan have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, and regulation governing the adequacy of disclosure in connection with all or any of their respective activities relating to the solicitation of acceptances to the Plan and their participation, if any, in the activities described in section 1125 of the Bankruptcy Code, including in the offer and issuance of any securities under the Plan, and, therefore, are not, and on account of such offer, issuance, and solicitation, if any, will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 10.5 of the Plan.

01:21287936.1

9

    **L.    Disclosure Statement:**  On October 14, 2016, the Court entered the Disclosure Statement Order, which approved the Disclosure Statement and found it (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including, to the extent applicable, the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), and (b) contains "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.

    **M.    Voting Report:**  Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable nonbankruptcy law, rule, and regulation.

    As evidenced by the Voting Report, the two Voting Classes voted to accept the Plan for each Debtor in accordance with section 1126(c) of the Bankruptcy Code, with the exception of Class E (General Unsecured Claims) at Debtor Airtex Products, LP.[3]

    **N.    Plan Supplement:**  On November 18, 2016, the Debtors caused the Plan Supplement to be filed with the Court [D.I. 807] (the "<u>Plan Supplement</u>").  The Plan Supplement includes the following documents: (a) <u>Exhibit 1.24</u> – By-Laws of Reorganized UCI, (b) <u>Exhibit 1.26</u> – Certificate of Incorporation of Reorganization, (c) <u>Exhibit 1.61</u> – Terms of Intercreditor Agreement, (d) <u>Exhibit 1.78</u> – Terms of New First Lien Credit Agreement, (e) <u>Exhibit 1.81</u> – Terms of New Second Lien Credit Agreement, (f) <u>Exhibit 1.102</u> – Preserved Causes of Action, (g) <u>Exhibit 1.122</u> – Terms of Second Lien Rights Offering Facility Agreement, (h) <u>Exhibit 1.132</u>

---

[3] Despite Class E (General Unsecured Claims) at Debtor Airtex Products, LP far exceeding the requisite number of votes to accept the Plan with 75.86% voting to accept, the Class did not meet the requisite total dollar amount voted needed to accept the Plan pursuant to section 1126(c) with 63.89% voting to accept.

– Shareholders Agreement, (i) <u>Exhibit 5.6.2</u> – Rank Contribution Election Releases, (j) <u>Exhibit 5.10.2</u> – Directors and Officers of Reorganized UCI, (k) <u>Exhibit 5.10.3</u> – Directors and Managers or Officers of Reorganized Debtors Other Than Reorganized UCI, (l) <u>Exhibit 6.1.1</u> – Rejected Executory Contract and Unexpired Lease List, (m) <u>Exhibit 6.1.2</u> – Assumed Executory Contract and Unexpired Lease List, and (n) <u>Exhibit 6.5</u> – Terms of Management Equity Incentive Plan.  The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents is good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required.  The Plan Supplement was timely filed in accordance with the Solicitation Procedures. The Debtors properly served the Plan Supplement or a notice thereof on all known Holders of Claims and Interests, providing such parties with due, adequate and sufficient notice of – and ample time to review – the Plan Supplement prior to the Confirmation Hearing.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into, the Plan.  Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement or any of the documents attached to the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules.

**O.    New First Lien Credit Agreement:** On December 4, 2016, the Debtors filed the Keil Declaration which included, in the form substantially attached thereto as <u>Exhibit A</u>, that certain $120,000,000 Senior Secured Revolving Loan Facility Commitment Letter, together with any exhibits and schedules thereto, and the accompanying Fee Letter (collectively, the "<u>Commitment Letter</u>"), pursuant to which the Lenders (as defined in the Commitment Letter) have agreed to provide exit financing to the Reorganized Debtors, in the form of the New First

Lien Credit Agreement and on terms substantially similar to the terms set forth in the Commitment Letter.

      **P.**    **Backstop Agreement.** On September 30, 2016, the Debtors and the Backstop Parties entered into that certain Backstop Agreement (the "Backstop Agreement"). Pursuant to the Backstop Agreement, in order to facilitate the Rights Offering, certain Senior Noteholders (the "Backstop Parties") agreed to backstop the $30,000,000 of the Rights Offering. As set forth in the Backstop Agreement (approved by the Court on October 14, 2016 [D.I. 727] (the "Backstop Order")), in exchange for each Backstop Party's commitment to purchase its Backstop Commitment (as defined in the Backstop Agreement) and support the Plan, the Backstop Parties are entitled to receive an aggregate commitment fee of 4% of the New Common Stock (the "Backstop Fee") as well reimbursement of professional fees (the "Backstop Expenses").

      **Q.**    **Rights Offering:** On October 14, 2016, in the Disclosure Statement Order, the Court approved procedures for the Rights Offering (the "Rights Offering Procedures"). In accordance with the Rights Offering Procedures, the Plan Proponents elected to commence the Rights Offering on October 26, 2016. The Rights Offering has proceeded and will continue to proceed according to the Rights Offering Procedures. On November 18, 2016, the Debtors filed the *Notice of Extension of Rights Offering Expiration Date* [D.I. 916], notifying parties that the Rights Offering Expiration Date (as defined in the Rights Offering Procedures) was extended to 5:00 p.m., prevailing Eastern Time, on December 19, 2016. Pursuant to the terms of the Rights Offering Procedures, commencement and consummation of the Rights Offering is at the option of the Debtors and the Plan Sponsors.

**R.   Securities Act Exemption:** Notwithstanding anything to the contrary in this Confirmation Order or the Plan, to the maximum extent provided by section 1145 of the Bankruptcy Code, any applicable provisions of the Securities Act, and other applicable non-bankruptcy law, the offering, issuance, and distribution of the New Common Stock, as contemplated by Section 5.8 of the Plan, including all shares of New Common Stock issued (a) to Holders of Allowed Senior Note Claims and Holders of Allowed General Unsecured Claims on account of their Claims and (b) to any Backstop Parties as a backstop premium pursuant to the Backstop Agreement, shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery prior to the offering, issuance, distribution, or sale of Securities.  In addition, any Securities contemplated by the Plan, including the New Common Stock, and any and all agreements incorporated therein, shall be subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (b) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (c) the restrictions, if any, on the transferability of such Securities and instruments, including those set forth in the New Organizational Documents; and (d) applicable regulatory approval, if any.

**S.   Bankruptcy Rule 3016:** The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Disclosure Statement, which satisfies section 1125 of the Bankruptcy Code, was filed and distributed together with the Plan, thereby satisfying Bankruptcy Rule 3016(b).  Article X of the Plan and Article V.L. of the Disclosure

Statement describe in specific and conspicuous language all acts to be enjoined and identify the entities that will be subject to such injunctions, thereby satisfying Bankruptcy Rule 3016(c).

**T.    Bankruptcy Rule 3017:**  The Debtors provided proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d), as modified by the Solicitation Procedures Order.  The Solicitation Procedures pursuant to which the Plan and the Disclosure Statement were provided to the Voting Classes, and the Confirmation Hearing Notice, which was provided to all parties as required by the Solicitation Procedures, were adequate, satisfied Bankruptcy Rule 3017(e), and were in accordance with the Solicitation Procedures.

**U.    Bankruptcy Rule 3018:**  The solicitation of votes to accept or reject the Plan from the Voting Classes satisfies Bankruptcy Rule 3018(a).  The Plan was transmitted to all parties in interest entitled to vote thereon, sufficient time was prescribed for such entities to accept or reject the Plan, and the Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, thereby satisfying Bankruptcy Rule 3018(b).  The Cover Letter and Ballot (both as defined in the Disclosure Statement Order) provide for acceptances or rejections of the Plan to be in writing, identifies the Plan to be accepted or rejected, provides for the Ballots to be signed by the Holder of Claims in the Voting Classes, and generally conforms to the information required in the appropriate Official Form.  The Solicitation Packages and the form of Cover Letter and Ballots satisfy the requirements of Bankruptcy Rule 3018(c).

**V.    Section 1122(a) Requirement – Substantial Similarity in Classification of Claims and Interests:**  In addition to Administrative Expense Claims (Section 2.1 of the Plan) and Priority Tax Claims (Section 2.2 of the Plan), which need not be classified, Article III of the Plan classifies eight (8) Classes of Claims and two (2) Classes of Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case

may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  The Plan therefore satisfies section 1122(a) of the Bankruptcy Code.

      **W.**   **Section 1123 Requirements:**  The Plan satisfies all applicable requirements of section 1123 of the Bankruptcy Code.

            **a.**      *Classification of Claims and Interests (§ 1123(a)(1))*

      Article III of the Plan designates each Class of Claims and Interests.  Additionally, Administrative Expense Claims (Section 2.1 of the Plan) and Priority Tax Claims (Section 2.2 of the Plan) need not be classified pursuant to section 1123(a)(1) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(1) of the Bankruptcy Code.

            **b.**      *Specification of Unimpaired Claims and Interests (§ 1123(a)(2))*

      Article III of the Plan specifies which Classes of Claims and Interests are Unimpaired.  The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

            **c.**      *Specification of Treatment of Impaired Claims and Interests (§ 1123(a)(3))*

      Article III of the Plan specifies the treatment of the only Impaired Class of Claims.  The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

            **d.**      *No Discrimination; Equal Treatment (§ 1123(a)(4))*

      The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

            **e.**      *Adequate Means for Implementation (§ 1123(a)(5))*

Article V of the Plan provides adequate and proper means for the Plan's implementation, including, without limitation: (a) the non-substantive consolidation of the Debtors for purposes of voting and Confirmation of the Plan only; (b) the funding of distributions and satisfaction of applicable Allowed Claims under the Plan with Cash on hand, including Cash from operations, Cash provided pursuant to the New First Lien Credit Facility, the Rights Offering (unless the Debtors and the Plan Sponsors elect not to consummate the Rights Offering), the New Second Lien Exit Facility (if any), and/or the Rank Contribution Election; (c) the entry into the New First Lien Credit Agreement; (d) the commencement and conduct of the Rights Offering; (e) the provision of the Backstop Fee to each Backstop Party; (f) the entry into the New Second Lien Credit Agreement (subject to election by the Debtors and Plan Sponsors); (g) the procedures for and effect of making the Rank Contribution Election, pursuant to which the Debtors filed a notice on November 9, 2016 [D.I. 875] that Rank elected to make and is deemed to have made the Rank Contribution Election, which constitutes an Acceptable Settlement under the Plan; (h) the entry into the Restructuring Transactions; (i) issuance and distribution of new securities; (j) the appointment of the directors and officers listed on Exhibits 5.10.2 and 5.10.3 to the Plan; (k) the vesting of the Debtors' property in the Reorganized Debtors free and clear of all Liens and non-Reinstated Claims and Interests, except as specifically provided in the Plan or this Confirmation Order; (l) the cancellation of all Liens, charges, encumbrances and rights related to any Impaired Claim or Interest (except Liens securing a Secured Claim that is Reinstated pursuant to the Plan); (m) the payment in Cash of all reasonable Senior Unsecured Notes Indenture Trustee Fees that are required to be paid under the Plan pursuant to the Senior Unsecured Notes Indenture; (n) the retention of the Ordinary Litigation Claims and the Preserved Causes of Action; (o) the taking of actions as may be necessary or appropriate to Reinstate

01:21287936.1

16

Claims or Interests or render Claims or Interests not Impaired, as provided for under the Plan; (p) the waiver and release of all Avoidance Actions that may be asserted against any UCI Trade Creditor; and (q) the liquidation, dissolution, administration, restructuring or otherwise winding up of UCI Holdings. The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

### f.      *Voting Power of Equity Securities (§ 1123(a)(6))*

Pursuant to Section 5.9.1 of the Plan, on the Effective Date, the Debtors' respective certificates of incorporation (if applicable) are to be deemed amended to prohibit the issuance of non-voting equity securities. The Plan therefore satisfies section 1123(a)(6) of the Bankruptcy Code.

### g.      *Selection of Directors and Officers Consistent with Interests of Creditors and Equity Security Holders, and Consistent with Public Policy (§ 1123(a)(7))*

Pursuant to Section 5.9.2 of the Plan, the individuals identified on <u>Exhibits 5.10.2</u> and <u>5.10.3</u> to the Plan will be the initial directors and officers of the Reorganized Debtors. The manner of selection of such individuals, and their appointment as directors and officers of the Reorganized Debtors, are consistent with the interests of all Holders of Claims and Interests and with public policy. The Plan therefore satisfies section 1123(a)(7) of the Bankruptcy Code.

### h.      *Impairment and/or Unimpairment of Classes (§ 1123(b)(1))*

Article III of the Plan impairs or leaves unimpaired each Class of Claims and Interests as set forth in the chart below. The Plan therefore satisfies section 1123(b)(1) of the Bankruptcy Code.

| Class | Claim or Interest | Impaired or Unimpaired |
|---|---|---|
| Class A | Priority Non-Tax Claims | Unimpaired |
| Class B | Other Secured Claims | Unimpaired |
| Class C | Prepetition ABL Credit Facility Claims | Unimpaired |

| Class | Claim or Interest | Impaired or Unimpaired |
|---|---|---|
| Class D | Senior Notes Claims | Impaired |
| Class E | General Unsecured Claims | Impaired |
| Class F | Convenience Claims | Unimpaired |
| Class G | Intercompany Claims | Impaired |
| Class H | 510(b) Claims | Impaired |
| Class I | Interests in UCI and UCI Holdings | Impaired |
| Class J | Interests in Subsidiary Debtors | Impaired |

### i.    *Assumption of Executory Contracts and Unexpired Leases (§ 1123(b)(2))*

Article VI of the Plan governs the assumption or rejection of the Debtors' Executory Contracts and Unexpired Leases that (a) were not previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code or (b) are subject to a motion to reject such contract pursuant to section 365 of the Bankruptcy Code (i) pending as of the Confirmation Hearing or (ii) pursuant to which the requested effective date of such rejection is after the Effective Date.

On the Effective Date, except as otherwise provided in the Plan, entry of this Confirmation Order shall constitute an order of this Court approving the assumptions, or, assumptions and assignments of all Executory Contracts or Unexpired Leases of the Debtors, and all Executory Contracts or Unexpired Leases will be deemed assumed and assigned to the Reorganized Debtors as of the Effective Date, in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, regardless of whether such Executory Contract or Unexpired Lease is set forth on the Assumed Executory Contracts and Unexpired Lease List, attached to the Plan as Exhibit 6.1.2, unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected by the relevant Debtor(s) by a Final Order, including those that are subject to notice issued pursuant to the Contract Procedures

Order, (b) previously expired or terminated pursuant to its own terms, (c) is subject to a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (d) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; (e) is identified on the Rejected Executory Contract and Unexpired Lease List, attached to the Plan as Exhibit 6.1.1, in form and substance acceptable to the Debtors and the Plan Sponsors (which shall not be unreasonably withheld, conditioned or delayed); or (f) for which an objection to the assumption of such Executory Contract or Unexpired Lease has been sustained or otherwise resolved as stated on the record; provided, however, that, notwithstanding any such assumption, the A&R Letter Agreement and Letter Agreement Order shall each remain in full force and effect, and no party's rights under any agreement affected by either the A&R Letter Agreement or Letter Agreement Order shall be expanded or reduced by the Plan or this Confirmation Order. Each Executory Contract and Unexpired Lease assumed pursuant to Article VI of the Plan, which has not been assigned to a third party before the Effective Date, shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date. For the avoidance of doubt, the effective date for all assumptions or assumptions and assignments of Executory Contracts or Unexpired Leases hereunder shall be the Effective Date.

Except as otherwise provided in the Plan, on the Effective Date, entry of this Confirmation Order shall constitute an order of this Court approving the rejection of all Executory Contracts or Unexpired Leases of the Debtors identified on the Rejected Executory

Contract and Unexpired Lease List, attached to the Plan as <u>Exhibit 6.1.1</u>, in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, with the consent of the Plan Sponsors, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List at any time through and including forty-five (45) days after the Effective Date. For the avoidance of doubt, the effective date for all rejections of Executory Contracts or Unexpired Leases of the Debtors identified on the Rejected Executory Contract and Unexpired Lease List, attached to the Plan as <u>Exhibit 6.1.1</u>, shall be the Effective Date. The effective date of rejection for any additional Executory Contracts or Unexpired Leases added to the Rejected Executory Contract and Unexpired Lease List after the Effective Date shall be specified in such revised Rejected Executory Contract and Unexpired Lease List filed with the Court following the Effective Date.

> **j.**     ***Releases, Exculpation, Injunction, Non-Release of Reserved Claims (§ 1123(b)(3))***

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the settlements, compromises, releases, discharges, exculpations, and injunctions set forth in the Plan and herein and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their Estates, creditors and equity holders. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpations and injunctions provided for in Article X of the Plan and herein.

In consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to

be made on account of such Allowed Claim or Interest. The compromise and settlement of such

Claims and Interests embodied in the Plan, and the Reinstatement and Unimpairment of other

Classes identified in the Plan, are in the best interests of the Debtors, their Estates and all

Holders of Clams and Interests, and are fair, equitable and reasonable.

Section 10.3 of the Plan and Paragraph 36.b. of this Confirmation Order describe the

releases given by the Debtors and the Reorganized Debtors to the Released Parties (the "Debtors'

Releases"). The Debtors have satisfied the business judgment standard with respect to the

propriety of the Debtors' Releases. The Debtors' Releases are a necessary and integral element

of the Plan, are fair, reasonable, and in the best interests of the Debtors, the Estates and their

creditors. The Debtors' Releases are: (a) in exchange for good and valuable consideration

provided by the Released Parties; (b) a good faith settlement and compromise of the Claims,

causes of action (including, without limitation, Avoidance Actions), obligations, suits,

judgments, damages, debts, rights, remedies, causes of action, and liabilities released by Section

10.2 of the Plan; (c) given, and made, after due notice and opportunity for hearing; and (d) a bar

to any of the Debtors asserting any Claim, cause of action (including, without limitation,

Avoidance Actions), obligation, suit, judgment, damage, debt, right, remedy, cause of action, or

liability released pursuant to Section 10.3 of the Plan.

In addition, the Debtors' Releases are appropriate because: (i) there is an identity of

interest between the Debtors and each of the Released Parties as they share a common goal of

confirming the Plan and implementing the transactions contemplated thereby; (ii) each of the

Released Parties provided a substantial contribution to the Debtors' reorganization; (iii) the

Debtors' Releases are essential to the Plan because, without the Debtors' Releases, there is little

likelihood that the Plan would succeed; (iv) the Plan was overwhelmingly accepted by the

Voting Classes (with the exception of Class E (General Unsecured Claims) at Debtor Airtex Products, LP); and (v) the Plan provides for the Unimpairment of each of the Non-Voting Classes. As set forth in Exhibit 5.6.2 of the Plan, each member of the Rank Group and each of its respective Related Persons (including any former directors or officers of any of the Debtors that are or were Related Persons of the Rank Group) shall constitute "Released Parties" under the Plan.

The exculpation, described in Section 10.5 of the Plan (the "Exculpation") and in paragraph 36.e. of this Confirmation Order, is appropriate under applicable law because it was proposed in good faith, was formulated following good faith, arm's-length negotiations with key constituents, and is appropriately limited in scope because it only applies to acts or omissions in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing the Plan, the Plan Supplement, and/or the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or implementation of the Plan. Moreover, the Exculpation as it is applied to the Plan Sponsors and all of their Related Persons is appropriately limited by section 1125(e) of the Bankruptcy Code. Each of the parties that are entitled to receive the Exculpation participated in the Chapter 11 Cases in good faith and, to the fullest extent permitted by law, is appropriately exculpated as provided in Section 10.4 of the Plan. The Exculpation, including its carve-outs for (x) obligations under the Plan, and obligations under the contracts, instruments, releases, agreements, and documents delivered, Reinstated, or assumed under the Plan, and

(y) any claims or causes of action arising out of willful misconduct or gross negligence as determined by a Final Order, is entirely consistent with practice in this jurisdiction and others.

Each of the injunction provisions set forth in Article X of the Plan, including, without limitation, the injunctions provided in Section 10.6 of the Plan and in Paragraph 36.f. of this Confirmation Order, is necessary to implement, preserve and enforce the Debtors' discharge, the Debtors' Releases, and the Exculpation, and is narrowly tailored to achieve this purpose. Section 105(a) of the Bankruptcy Code permits issuance of the Plan's injunctions, approval of the Exculpation, and approval of the Debtors' Releases because, as has been established based upon the record in these Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (1) were integral to the agreement among the various parties in interest, as reflected in the Plan, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (2) confer substantial benefits on the Debtors' estates, (3) are fair and reasonable, and (4) are in the best interests of the Debtors, their Estates and other parties in interest.

The full termination of all Liens, charges, encumbrances, and rights pursuant to Section 5.12 of the Plan, but excluding any Lien securing an Other Secured Claim that is Reinstated pursuant to the Plan, is necessary to implement the Plan. The provisions of Section 5.12 of the Plan are appropriate, fair, equitable and reasonable and are in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.

The provisions regarding the preservation of Claims and Causes of Action in the Plan are appropriate and are in the best interests of the Debtors, their respective Estates, and Holders of Claims and Interests.

For the foregoing reasons, the Plan satisfies section 1123(b)(3) of the Bankruptcy Code.

### k.    *Modification or Unimpairment of Rights (§ 1123(b)(5))*

The Plan Impairs the Voting Classes, and leaves Unimpaired the Non-Voting Classes (other than the Holders of Claims in Class G that are Impaired, but deemed to accept the Plan). The Plan therefore satisfies section 1123(b)(5) of the Bankruptcy Code.

### l.    *Additional Discretionary Provisions (§ 1123(b)(6))*

The Plan does not include any provisions which are inconsistent with applicable provisions of the Bankruptcy Code.  The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.   The Plan therefore satisfies section 1123(b)(6) of the Bankruptcy Code.

### X.    Section 1129 Requirements:  The Plan satisfies all applicable requirements of section 1129 of the Bankruptcy Code.

### a.    *Plan Compliance with Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1))*

The Plan complies with and satisfies all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.

### b.    *Plan Proponents' Compliance with Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2))*

The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code.   Specifically: (a) each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code and the Plan Proponents are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code; (b) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and (c) the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable nonbankruptcy law, rule, and regulation, the Solicitation

Procedures, and all other applicable laws, in transmitting the Plan, the Plan Supplement, the Disclosure Statement, the Solicitation Packages, and related documents and notices and in soliciting and tabulating the votes on the Plan. The Plan therefore satisfies section 1129(a)(2) of the Bankruptcy Code.

### c.    *Plan Proposed in Good Faith (§ 1129(a)(3))*

The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law. The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases, the totality of the circumstances surrounding the commencement of the Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among representatives of the Debtors, the Plan Sponsors, and their respective professionals. Further, the Plan's classification, indemnification, Exculpation, releases (including, without limitation, the Debtors' Releases), and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123, 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization. The Plan therefore satisfies section 1129(a)(3) of the Bankruptcy Code.

### d.    *Payment for Services or Costs and Expenses (§ 1129(a)(4))*

The procedures set forth in the Plan (including, without limitation, Section 12.3 of the Plan) and the Backstop Order for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in

compliance with, section 1129(a)(4) of the Bankruptcy Code.  The Plan therefore satisfies section 1129(a)(4) of the Bankruptcy Code.

###### e.    *Directors, Officers and Insiders (§ 1129(a)(5))*

The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Plan have been fully disclosed in Exhibits 5.10.2 and 5.10.3 to the Plan.  The Plan therefore satisfies section 1129(a)(5)(A)(i) of the Bankruptcy Code.

The appointment to, or continuance in, such offices of such persons identified on Exhibits 5.10.2 and 5.10.3 to the Plan is consistent with the interests of Holders of Claims and Interests and with public policy.  The Plan therefore satisfies section 1129(a)(5)(A)(ii) of the Bankruptcy Code.

Certain individuals identified on Exhibits 5.10.2 and 5.10.3 to the Plan as the initial directors and officers of the Reorganized Debtors are individuals identified in Article II.I. of the Disclosure Statement as the current officers and directors of the Debtors.  The Plan, therefore, has identified any insider that will be employed or retained by the Reorganized Debtors.  Additionally, the Debtors have identified the nature of any compensation for such individuals identified on Exhibits 5.10.2 and 5.10.3 to the Plan.  The Plan therefore satisfies section 1129(a)(5)(B) of the Bankruptcy Code.

###### f.    *No Rate Changes (§ 1129(a)(6))*

The Plan does not provide for any change in rates subject to governmental regulation.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

###### g.    *Best Interests Test (§ 1129(a)(7))*

The liquidation analysis attached to the Disclosure Statement as Exhibit B, the Whittman Declaration, and other evidence proffered or adduced at the Confirmation Hearing:  (a) are

reasonable, persuasive, credible and accurate; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence or challenged; and (d) establish that each Holder of a Claim or Interest in every Class will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. The Plan therefore satisfies section 1129(a)(7) of the Bankruptcy Code.

### h. *Acceptance or Unimpairment by Each Class (§ 1129(a)(8))*

Classes A, B, C, and F, and Classes G and J to the extent Unimpaired under the Plan, are each Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

Because the Plan has not been accepted by Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP the Plan Proponents seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP), the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP) and thus satisfies section 1129(b) of the Bankruptcy Code with respect to each such Class as described further below.

### i. *Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code (§ 1129(a)(9))*

The Plan provides for the statutorily mandated treatment of Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and other Claims entitled to priority under sections 507(a)(2)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code. The Plan therefore satisfies section 1129(a)(9) of the Bankruptcy Code.

### j.      *Acceptance by an Impaired Class (§ 1129(a)(10))*

As set forth in the Voting Report, the only Impaired Classes of Claims or Interests under the Plan, Classes D and E (the Voting Classes), have voted to accept the Plan in requisite numbers and amounts without the need to include any acceptance of the Plan by any insider—the one exception to the preceding statement being rejection by Class E (General Unsecured Claims) at Debtor Airtex Products, LP.[4]   The Plan therefore satisfies section 1129(a)(10) of the Bankruptcy Code.

### k.      *Feasibility (§ 1129(a)(11))*

The information in the Disclosure Statement, the Whittman Declaration, and the evidence proffered or adduced at the Confirmation Hearing, including the proffer regarding environmental matters in Fairfield, Illinois, (a) is reasonable, persuasive, credible, and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence or challenged; and (d) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and operate their businesses in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization

---

[4]  Despite this rejection, the Plan nevertheless satisfies section 1129(a)(10) of the Bankruptcy Code as to Debtor Airtex Products, LP, as 98.55% of Claims in number and 99.51% of the total dollar amount of Claims voted in Class D (Senior Notes Claims) for Debtor Airtex Products, LP voted to accept the Plan.

of the Reorganized Debtors.  The Plan therefore satisfies section 1129(a)(11) of the Bankruptcy Code.

### l.    *Payment of Fees (§ 1129(a)(12))*

Section 12.7 of the Plan provides that all fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid as and when due or as otherwise agreed by the United States Department of Justice, Office of the United States Trustee.  The Plan therefore satisfies section 1129(a)(12) of the Bankruptcy Code.

### m.    *Continuation of Retiree Benefits (§ 1129(a)(13))*

Section 6.7 of the Plan provides for the Reorganized Debtors' continued performance of obligations under all employment and severance contracts assumed on or before the Effecitve Date and all Employee Benefit Plans applicable to employees, retirees and non-employee directors, that the Reorganized Debtors had the obligation to pay and were paying prior to the Petition Date.  The Pension Plans shall be treated as set forth in Sections 5.6 and 9.1.4 of the Plan, the Global Settlement, and the Global Settlement Order.  The Plan therefore satisfies section 1129(a)(13) of the Bankruptcy Code.

### n.    *Non-Applicability of Certain Sections (§§ 1129(a)(14)-(16))*

The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.  Therefore, sections 1129(a)(14)-(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

### o.    *Confirmation of Plan Over Non-Acceptance of Impaired Class (§ 1129(b))*

The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP have not

accepted the Plan, the Plan may be confirmed because:  (a) each other Voting Class voted to accept the Plan; (b) the Plan satisfies all requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8); and (c) the Plan does not discriminate unfairly and is fair and equitable with respect to Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP because there is no Class of equal priority receiving more favorable treatment than Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP and no Class that is junior to Class H (510(b) Claims), Class I (Interests in UCI and UCI Holdings), and Class E (General Unsecured Claims) at Debtor Airtex Products, LP is receiving or retaining any property on account of their Claims or Interests.  The Plan may therefore be confirmed even though not all Impaired Classes have voted to accept the Plan.

**p.**    ***Only One Plan (§ 1129(c))***

The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan (including previous versions thereof) is the only chapter 11 plan filed in these Chapter 11 Cases.

**q.**    ***Principal Purpose of the Plan (§ 1129(d))***

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  The Plan therefore satisfies section 1129(d) of the Bankruptcy Code.

**Y.    Disclosure of Agreements and Other Documents:**  The Debtors have disclosed all material facts, to the extent applicable, regarding:  (a) the implementation of the Restructuring Transactions; (b) the selection of directors and officers for Reorganized UCI and each other Reorganized Debtor; (c) the incurrence of the New First Lien Exit Facility, Second Lien Rights Offering Facility, if any, and New Second Lien Exit Facility, if any; (d) the issuance and distribution of the New Common Stock and Rights Offering Stock; (e) securities registration

01:21287936.1

exemptions; (f) the exemption under section 1146(a) of the Bankruptcy Code; (g) all other actions contemplated by the Plan; and (h) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**Z.**   **Satisfaction of Conditions Precedent to Effective Date:**  Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, has been satisfied or is reasonably likely to be satisfied or waived in accordance with Section 9.2 of the Plan.

**AA.**   **Implementation:**  All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documents and execution, be valid, binding and enforceable agreements and are not in conflict with any federal or state law.

**BB.**   **Retention of Jurisdiction:**   Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including, without limitation, the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code, to the fullest extent permitted by law.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.   **Findings of Fact and Conclusions of Law.**  The above referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

01:21287936.1

2.    **Securities Exemptions.**    Notwithstanding anything to the contrary in this Confirmation Order or the Plan, to the maximum extent provided by section 1145 of the Bankruptcy Code, applicable provisions of the Securities Act, and other applicable non-bankruptcy law, the offering, issuance, and distribution of the New Common Stock, as contemplated by Section 5.8 of the Plan, including all shares of New Common Stock issued (a) to Holders of Senior Note Claims and Holders of Allowed General Unsecured Claims on account of their Claims and (b) to any Backstop Parties as a backstop premium pursuant to the Backstop Agreement, shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery prior to the offering, issuance, distribution, or sale of Securities. In addition, any Securities contemplated by the Plan, including the New Common Stock, and any and all agreements incorporated therein, shall be subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (iii) the restrictions, if any, on the transferability of such Securities and instruments, including those set forth in the New Organizational Documents; and (iv) applicable regulatory approval, if any.

3.    **Confirmation of the Plan.**    The Plan, attached hereto as **<u>Exhibit A</u>**, is approved in its entirety and CONFIRMED under section 1129 of the Bankruptcy Code. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order. The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related

01:21287936.1

thereto (including all exhibits and attachments thereto), and the execution, delivery, and performance thereof, are authorized and approved as finalized, executed, and delivered. The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document or exhibit are approved and confirmed in their entirety. The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

4. **Authorization to Consummate.** The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver of the conditions set forth in section 9.1 to the Plan.

5. **Objections.** All objections to Confirmation of the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order. To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan (including the payment or amount of the cure amounts with respect to any Assumed Contract, or the assumption by the Debtors of any of the Assumed Contracts) have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections are overruled in their entirety on the merits.

6. **No Action Required.** Pursuant to the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, and the appropriate provisions of the California Corporations Code, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to

enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

7.     **Binding Effect.**  On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtors or the Reorganized Debtors in connection with the Plan, shall be binding upon the Debtors, the Reorganized Debtors, all Holders of Claims against and Interests in each of the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan, and all other parties that are affected in any manner by the Plan.  All agreements, instruments, and other documents filed in connection with the Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

8.     **Free and Clear Vesting of Assets in the Reorganized Debtors.**  Pursuant to section 1141(b) of the Bankruptcy Code, and except as otherwise provided in the Plan or in this Confirmation Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the Estates, free and clear of all Claims, Interests, Liens, charges, encumbrances, and other interests of Holders of Claims or Interests.  From and after the Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire, or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Court, or the Office of the United States Trustee (except for required quarterly operating reports,

if any, and fees associated therewith).    In addition, on and after the Effective Date, the Reorganized Debtors may (a) cause the transfer of assets or equity interests between or among the Reorganized Debtors and/or (b) engage in any other transaction in furtherance of the Plan.

  9. **Authorizations to Take Acts Necessary to Implement Plan.**  The Debtors and the Reorganized Debtors, as applicable, are authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take all such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.  On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors and members of their boards of directors are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the Plan, in the name of and on behalf of the Reorganized Debtors.

  10. **Effectiveness of all Actions.**  Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without the need for any further notice to, or action, order or approval of, the Court, or other act or action under applicable law, regulation, order, or rule except those expressly required pursuant to the Plan.

  11. **Approval of Use of Cash Consideration.**  On the Effective Date, the Reorganized Debtors are authorized to fund distributions and satisfy applicable Allowed Claims under the Plan with Cash on hand, including Cash from operations, Cash provided pursuant to the New First Lien Credit Facility, the Rights Offering (unless the Debtors and the Plan Sponsors elect not to consummate the Rights Offering), and the New Second Lien Exit Facility (if any).

12.    **Approval of Exit Financing.**

A.    New First Lien Exit Facility. Effective as of the date of the Commitment Letter, the Debtors are authorized to execute, deliver and perform under the Commitment Letter, the terms of which are hereby approved in their entirety. The Debtors are authorized to perform all obligations under the Commitment Letter on the terms and conditions set forth therein, without notice, hearing or further order of the Court as, and to the extent they become due under the Commitment Letter, including without limitation, (a) to pay to the New First Lien Agent the expense deposit in accordance with the terms of the Commitment Letter, which is approved and allowed as an administrative expense pursuant to sections 503(b) and 507(a) of the Bankruptcy Code, (b) to pay to the New First Lien Agent all fees and expenses incurred by the New First Lien Agent and each of the Lead Arrangers (as defined in the Commitment Letter) as and when they become due and payable in accordance with the terms of the Commitment Letter, which are approved and allowed as an administrative expense pursuant to sections 503(b) and 507(a) of the Bankruptcy Code, and (c) approve the Indemnification provisions contained in the Commitment Letter.

The Debtors and the Reorganized Debtors are authorized to execute, negotiate and deliver, or cause to be executed, negotiated and delivered, the New First Lien Credit Agreement, together with all related agreements, documents, instruments and certificates related to the New First Lien Exit Facility (the "New First Lien Exit Documents") and to perform their obligations thereunder, including the payment of all fees, indemnities and expenses provided for therein, the terms of which are hereby approved. Upon satisfaction of all applicable conditions, the New First Lien Exit Facility shall be in full force and effect and valid, binding, and enforceable in accordance with its terms without further order of the Court.

The loans and other extensions of credit contemplated by the New First Lien Credit Agreement and the New First Lien Exit Documents, and the granting of Liens to secure such loans, and other extensions of credit, are authorized and approved in all respects. The Reorganized Debtors are hereby authorized to (i) borrow under the New First Lien Credit Agreement and use the proceeds of such borrowings for any purpose permitted hereunder, and (ii) perform all of their obligations under the New First Lien Credit Agreement and the New First Lien Exit Documents, including the payment of all fees, expenses, losses, damages, indemnities and other amounts (including any applicable exit fees) provided under the New First Lien Credit Agreement and the New First Lien Exit Documents. As of the Effective Date, without any further action by the Court or the directors, officers, managers, members or stockholders of the Reorganized Debtors, the Liens and security interests granted pursuant to the New First Lien Credit Agreement and the New First Lien Exit Documents will constitute legal, valid, binding and enforceable Liens and security interests in the collateral specified in the New First Lien Credit Agreement and the New First Lien Exit Documents and such Liens and security interests will constitute legal, valid and binding obligations of the Reorganized Debtors. The guarantees, mortgages, pledges, liens, and other security interests granted pursuant to the New First Lien Credit Agreement and the New First Lien Exit Documents are granted in good faith as an inducement to the New First Lien Lenders to extend credit thereunder, will constitute valid, binding, perfected, and enforceable first-priority liens and security interests in the Collateral specified in the New First Lien Credit Agreement and the New First Lien Exit Documents. The New First Lien Agent is authorized to file or to cause to be filed, with the appropriate authorities, all agreements, financing statements, mortgages, instruments and other documents (the "New First Lien Exit Facility Perfection Documents"), to take possession of or control over, or to take

any other action in order to evidence, validate, and perfect such liens or security interest to the extent provided in the New First Lien Credit Agreement, the New First Lien Exit Documents, and the Plan. Subject in all cases to the terms and provisions of the New First Lien Credit Agreement and the New First Lien Exit Documents, the Debtors and the Reorganized Debtors are authorized to execute and deliver to the New First Lien Agent and the New First Lien Lenders any New First Lien Exit Facility Perfection Documents, or, to the extent provided in the New First Lien Credit Agreement and/or the New First Lien Exit Documents, obtain all governmental approvals and consents the New First Lien Agent may reasonably request or that are required to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign), including any that would be applicable in the absence of the Plan and this Confirmation Order, and are authorized to cooperate to make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties. Whether the New First Lien Exit Facility Perfection Documents are filed prior to, on or after the Effective Date (x) such New First Lien Exit Facility Perfection Documents will be valid, binding, enforceable and in full force and effect as of the Effective Date, and (y) the Liens and security interests granted under or in connection with the New Credit Facility First Lien Agreement and the New First Lien Exit Documents will become valid, binding, and enforceable obligations of the Reorganized Debtors (and their subsidiaries) as of the Effective Date, and the priorities of such mortgages, pledges, Liens, and other security interests shall be as set forth in the New First Lien Credit Agreement and the New First Lien Exit Documents and/or the Plan, as applicable. The granting of such liens and security interests, the making of such loans and other extensions of credit, the payment of fees contemplated

thereunder, and the execution and consummation of the New First Lien Credit Facility have been and are being undertaken in good faith, for legitimate business purposes, for reasonably equivalent value, and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not be otherwise subject to avoidance, recharacterization or subordination (including equitable subordination) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law.

Notwithstanding anything to the contrary in this Confirmation Order or the Plan, on and after the Effective Date, the Court's retention of jurisdiction shall not govern any disputes arising or asserted under or related to the New First Lien Credit Agreement or the other New First Lien Credit Documents or any liens, rights or remedies related thereto.

B.    Rights Offering.    On the Effective Date, if the Plan Proponents elect to consummate the Rights Offering (as set forth in Section 5.4 of the Plan), the Reorganized Debtors shall be authorized to enter into the Second Lien Rights Offering Facility, the form of the Second Lien Rights Offering Facility Agreement, and any intercreditor agreement in connection therewith ("Intercreditor Agreement") , shall be in a form and substance acceptable to the New First Lien Lenders, the New First Lien Agent, the Second Lien Rights Offering Facility Agent, and the Second Lien Rights Offering Lenders.    If the Plan Proponents elect to consummate the Rights Offering (as set forth in Section 5.4 of the Plan), the Second Lien Rights Offering Facility Lenders shall have valid, binding, and enforceable liens on the collateral specified in the Second Lien Rights Offering Facility Agreement, which shall be subject to the Intercreditor Agreement.    If consummated, the guarantees, mortgages, pledges, liens, and other security interests granted pursuant to the Second Lien Rights Offering Facility Agreement are granted in good faith as an inducement to the Second Lien Rights Offering Facility Lenders to

01:21287936.1

extend credit thereunder, and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such liens and security interests shall be as set forth in the Second Lien Rights Offering Facility Agreement. The proceeds of any Second Lien Rights Offering Facility shall be used for (a) payment of Allowed Claims and (b) general corporate purposes. If consummated, the Reorganized Debtors shall be authorized to issue the Rights Offering Stock in accordance with the terms of the Plan and the Rights Offering Procedures to (i) the Eligible Parties that properly exercise their Subscription Rights in accordance with the terms of the Plan and the Rights Offering Procedures and (ii) the Backstop Parties, subject to the terms of the Backstop Agreement.

On the Effective Date, if the Plan Proponents elect to consummate the Rights Offering (as set forth in Section 5.4 of the Plan), the Reorganized Debtors shall be authorized to enter into the New Second Lien Credit Agreement, the terms of which shall be in form and substance acceptable to the New First Lien Lenders, the New First Lien Agent, the Second Lien Rights Offering Facility Agent, and the Second Lien Rights Offering Lenders, should the Plan Proponents elect to consummate the Rights Offering (as set forth in Section 5.4 of the Plan). If consummated, the New Second Lien Exit Facility Lenders shall have valid, binding, and enforceable liens on the collateral specified in the New Second Lien Credit Agreement, which shall be subject to the Intercreditor Agreement. If consummated, the guarantees, mortgages, pledges, liens, and other security interests granted pursuant to the New Second Lien Credit Agreement are granted in good faith as an inducement to the New Second Lien Exit Facility Lenders to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities

of such liens and security interests shall be as set forth in the New Second Lien Credit Agreement.

      **13.**    **Approval of Rank Contribution Election.**  On or before the Effective Date, the Rank Contribution Election shall be effectuated, and pursuant to the terms of Global Settlement and the Global Settlement Order: (a) each member of the Rank Group and each of their Related Persons (including any former directors or officers of any of the Debtors that are or were Related Persons of the Rank Group) shall receive releases under the Plan to the extent permitted by applicable law, which releases shall be (i) in addition to any releases contained in any Acceptable Settlement and (ii) set forth in Exhibit 5.6.2; (b) the Debtors and each of their Related Persons shall be deemed to have received releases from each member of the Rank Group and each of their Related Persons to the extent permitted by applicable law, which releases shall be (i) in addition to any releases contained in any Acceptable Settlement and (ii) set forth in the Rank Contribution Election Releases, attached to the Plan as Exhibit 5.6.2; (c) each Debtor that is a sponsor of the Pension Plans shall resign as a sponsor of the Pension Plans, and the Debtors, Reorganized Debtors, and their respective subsidiaries shall be released from any liability on account of the Pension Plans as set forth in the Global Settlement, which release is deemed satisfactory to the Plan Proponents; and (d) approval of an Acceptable Settlement by a final, non-appealable order of the Court shall be a condition of the occurrence of the Effective Date (as such condition may be waived by the Plan Proponents and Rank, pursuant to Section 9.2 of the Plan).

      **14.**    **Approval of Restructuring Transactions.**  On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may enter into Restructuring Transactions that satisfy the requirements set forth in Section 5.7 of the Plan and may take such

actions as may be necessary or appropriate to effect such Restructuring Transactions, as may be determined by such Reorganized Debtors to be necessary or appropriate, including: (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms herein and that satisfy the applicable requirements of applicable law and such other terms to which the applicable entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms herein and having such other terms to which the applicable entities may agree; (c) the filing of appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable law; and (d) all other actions which the applicable entities may determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with such transactions.  The Restructuring Transactions may include one or more mergers, consolidations, restructurings, dispositions, liquidations, or dissolutions, as may be determined by the Reorganized Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of all or certain of the Reorganized Debtors vesting in one or more surviving, resulting, or acquiring corporations.  In each case in which the surviving, resulting or acquiring corporation in any such transaction is a successor to a Reorganized Debtor, such surviving, resulting, or acquiring corporation will perform the obligations of the applicable Reorganized Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Reorganized Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting, or acquiring corporation, which may provide that another Reorganized Debtor will perform such obligations.

**15.    Issuance and Distribution of New Securities.**    On the Effective Date, Reorganized UCI is authorized to issue for distribution in accordance with the terms of the Plan the New Common Stock.    Subject to the terms of the Shareholders Agreement, the New Common Stock shall not be transferable to Rank or any of its Related Persons.    The New Common Stock and the Rights Offering Stock shall be issued with any and all instruments, certificates, and other documents required to be issued pursuant to the Plan in order to effect such issuance and distribution without further act or action under applicable law, regulation, order, or rule.    The issuance and distribution of the New Common Stock and Rights Offering Stock, if any, under or in connection with the Plan shall be, and shall be deemed to be, exempt from registration under any applicable federal or state securities laws to the fullest extent permissible under applicable bankruptcy law and non-bankruptcy law, including, without limitation, section 1145(a) of the Bankruptcy Code.    Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements and instruments entered into on or as of the Effective Date contemplated by or in furtherance of the Plan shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.    Upon receipt of its portion of the New Common Stock issued pursuant to the Plan and/or the Rights Offering, if any, each recipient of New Common Stock shall be deemed to have executed, as of the Effective Date, the Shareholders Agreement.    On the Effective Date, the New Common Stock and Rights Offering Stock shall not be listed for public trading on any securities exchange, the Reorganized Debtors will not be reporting companies under the Securities Exchange Act of 1934, and the Reorganized Debtors shall not be required to file reports with the SEC or any other governmental entity.

01:21287936.1

The New Common Stock shall be distributed to the Holders of Allowed Senior Notes Claims, Allowed General Unsecured Claims, Eligible Parties that properly exercised their Subscription Rights in accordance with the terms of the Plan and the Rights Offering Procedures (unless the Debtors and the Plan Sponsors elect not to consummate the Rights Offering), and Backstop Parties, as provided in Section 3.2.4(c), Section 3.2.5(b), Section 5.4.6(i), and Section 5.4.6(ii) of the Plan, respectively; provided, however, that distribution of the Rights Offering Stock shall be subject to (a) the terms and conditions set forth in Section 5.4 of the Plan, including the Rights Offering Procedures, and (b) the terms of the Backstop Agreement, if the recipient is a party to the Backstop Agreement. Distribution of the New Common Stock may, at the election of the Debtors and Plan Sponsors, be made by means of book-entry exchange through the facilities of the DTC in accordance with the customary practices of the DTC, as and to the extent practicable. In connection with such book-entry exchange, the Disbursing Agent(s) shall deliver instructions to the DTC instructing the DTC to effect distributions of New Common Stock and Rights Offering Stock as provided under the Plan. In the period pending distribution of the New Common Stock to any Holder of Allowed Senior Notes Claims and Allowed General Unsecured Claims, such Holder shall be entitled to exercise any voting rights and receive any dividends or other distributions payable in respect of such Holder's New Common Stock and to exercise all other rights in respect of the New Common Stock (so that such Holder shall be deemed for tax and all other purposes to be the owner of the New Common Stock).

**16.    Continued Corporate Existence.**  On and after the Effective Date, after giving effect to each of the Restructuring Transactions contemplated under the Plan, each of the Reorganized Debtors shall continue to exist as separate entities in accordance with the applicable law in the respective jurisdiction in which they are formed and pursuant to their respective

01:21287936.1

44

certificates or articles of incorporation (or similar organizational documents) and by-laws in effect prior to the Effective Date, except to the extent such certificates or articles of incorporation (or similar organizational documents) and by-laws are to be amended and/or restated pursuant to the terms of the Plan.  Notwithstanding anything to the contrary in the Plan, the Reinstated Claims against and Interests in a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor following the Effective Date and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of the Plan, the Chapter 11 Cases, or otherwise.  Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided under the Plan (including as specifically contemplated by the Restructuring Transactions), all property of the respective Estate of each Debtor, including all claims, rights and causes of action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with the Plan, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the applicable Reorganized Debtor on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances, and Interests. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules.  As of the Effective Date, all property of each Reorganized Debtor shall be free and clear of all Liens and non-Reinstated Claims and Interests, except as specifically provided in the Plan or this Confirmation Order.

     **17.   Cancellation of Prepetition ABL Credit Facility Obligations and Senior Unsecured Notes.**  On the later of the Effective Date or the date on which each Holder of an Allowed Prepetition ABL Credit Facility Claim receives payment in full, in Cash, except as otherwise specifically provided for in the Plan, the obligations of any of the Debtors under the

(a) Prepetition ABL Credit Facility Documents, Senior Unsecured Notes, and any other instruments, documents, plans or agreements evidencing or creating any indebtedness or obligations of a Debtor related thereto shall be terminated and cancelled, and (b) the obligations of any of the Debtors under any Prepetition ABL Credit Facility Documents, Senior Unsecured Notes, or any other agreements evidencing or creating any indebtedness or obligations of a Debtor that relate to Claims or Interests related thereto shall be discharged pursuant to Section 10.2 of the Plan; provided, however, that the Senior Unsecured Notes Indenture shall continue in effect solely for purposes of (i) allowing Senior Noteholders to receive distributions under the Plan, (ii) preserving the Senior Unsecured Notes Indenture Trustee's right to compensation and indemnification under the Senior Unsecured Notes Indenture as against any money or property distributable to Senior Noteholders, including, without limitation, permitting the Senior Unsecured Notes Indenture Trustee to maintain, enforce, and exercise its charging lien against such distributions, and (iii) permitting the Senior Unsecured Notes Indenture Trustee to enforce any obligation owed to it under the Plan.  Notwithstanding the foregoing, pursuant to that certain letter agreement dated September 28, 2016 between Debtors UCI International, LLC, Airtex Products, LP, ASC Industries, Inc. and Champion Laboratories, Inc., on the one hand, and the Prepetition Administrative Agent, on the other hand (the "Letter Agreement"), the Existing Letters of Credit (as defined in the Letter Agreement) shall continue outstanding beyond the current expiration date of such Existing Letters of Credit.

     **18.    Cancellation of Liens.**  On the later of the Effective Date or the date on which each Holder of an Allowed Prepetition ABL Credit Facility Claim receives payment in full, in Cash, except as otherwise provided in the Plan, in consideration for the distributions to be made on the Effective Date pursuant to the Plan, all Liens, charges, encumbrances, and rights related to

any Claim or Interest, including, without limitation, those existing under the Prepetition ABL Credit Facility Documents, but excluding any Lien securing an Other Secured Claim that is Reinstated pursuant to the Plan, shall be terminated, null and void, and of no effect.  The Holders of Secured Claims (other than Other Secured Claims that are Reinstated pursuant to the Plan) shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of any Liens, including the execution, delivery, and filing or recording of such release documents as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).

19.   **Payment of Indenture Trustee Allowed Fees.**   On the Effective Date, the Debtors or Reorganized Debtors, as applicable, are authorized to pay in Cash all reasonable Senior Unsecured Notes Indenture Trustee Fees that are required to be paid under the Senior Unsecured Notes Indenture, without the need for the Senior Unsecured Notes Indenture Trustee to file a fee application with the Court. From and after the Effective Date, the Reorganized Debtors shall pay in Cash all Senior Unsecured Notes Indenture Trustee Fees, including, without limitation, all Senior Unsecured Notes Indenture Trustee Fees incurred in connection with distributions to the Senior Unsecured Notes Noteholders. Nothing in Section 5.13 of the Plan shall in any way affect or diminish the right of the Senior Unsecured Notes Indenture Trustee to exercise any charging lien against distributions to Holders of Senior Unsecured Notes Claims with respect to any unpaid Senior Unsecured Notes Indenture Trustee Fees, as applicable.

20.   **Plan Sponsors' Expense Claim.**   The Backstop Fees and Backstop Expenses are approved and allowed on a final basis as an administrative expense under section 503(b) of the Bankruptcy Code, and the Debtors are authorized and directed to pay the Backstop Expenses and

to pay each Backstop Party their *pro rata* share of the Backstop Fees in accordance with, and to the extent they become payable under, the terms of the Backstop Commitment Agreement and Paragraph 4 of this Order, without further application to or order of the Court. For the avoidance of doubt, (x) the Backstop Expenses incurred from June 1, 2016 to August 31, 2016 are authorized and approved as administrative expenses under section 503(b)(3) and (4) and 507 of the Bankruptcy Code, and (y) the Backstop Expenses incurred on and after September 1, 2016 are authorized and approved pursuant to section 1129(a)(4) and as administrative expenses under section 503(b)(1) and 507 of the Bankruptcy Code, to the extent such compensation is authorized in accordance with Paragraph 4 of the Backstop Order. The Backstop Fee and Backstop Expenses shall be non-refundable, and shall not be subject to any avoidance, disgorgement, reduction, setoff, recoupment, recharacterization, subordination, counterclaims, cross-claims, defenses, disallowance, impairment or any other challenges under any theory at law or in equity by any person or entity except as otherwise provided in the Backstop Commitment Agreement. For the avoidance of doubt, the Backstop Fee and Backstop Expenses shall survive any termination of the Backstop Commitment Agreement and constitute valid, binding, and enforceable obligations against the Debtors and their estates.

21. **Preservation of Rights of Action and Settlement of Ordinary Litigation Claims and Preserved Causes of Action.** Except as otherwise provided in the Plan, this Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with the Plan, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Debtors and their Estates shall retain the Ordinary Litigation Claims. The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Ordinary Litigation Claims,

or any other claims, rights of action, suits or proceedings that any Debtor or Estate may hold against any Person. The Preserved Causes of Action shall be deemed released as of the Effective Date.

**22.    Release of Certain Avoidance Actions.**  On the Effective Date, the Reorganized Debtors shall be deemed to waive and release all Avoidance Actions that may be asserted against any UCI Trade Creditor.

**23.    Comprehensive Settlement of Claims and Controversies.**  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest. The entry of this Confirmation Order will constitute the Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Court's finding that all such compromises or settlements are in the best interests (a) of the Debtors, the Reorganized Debtors, and their respective Estates and property, and (b) Claim and Interest Holders, and are fair, equitable and reasonable.

**24.    Dissolution of UCI Holdings.**  As soon as reasonably practicable following the Effective Date, UCI Holdings may be liquidated, dissolved, administered, restructured or otherwise wound up under applicable law and procedure, at the discretion of the Reorganized Debtors and the Plan Sponsors. In furtherance of the dissolution of UCI Holdings, and in accordance with Section 3.2.7 of the Plan, the Debtors, including UCI Holdings, are hereby

authorized to transfer, setoff, and/or contribute to capital any Intercompany Claims, or make any other arrangement for Intercompany Claims, at the option of the Debtors and the Plan Sponsors.

Following the Effective Date, pursuant to Section 5.19 of the Plan, UCI Holdings shall be removed from the New Zealand companies register in accordance with the provisions of the Companies Act 1993 (NZ).  For the avoidance of doubt, and notwithstanding anything to the contrary set forth in the Plan or this Confirmation Order, Interests in UCI Holdings shall not be cancelled, annulled, or extinguished until UCI Holdings has been removed from the New Zealand companies register in accordance with the provisions of the Companies Act 1993 (NZ).

25. **Environmental Obligations.**  On the Effective Date, Reorganized Airtex shall be responsible and liable, to the extent required by and in accordance with applicable law, for conducting, and agrees to conduct, in a timely manner, any and all environmental investigation and remediation in accordance with and to the extent required by all applicable Environmental Laws, arising out of, related to, or originating from or at (a) the property located at 407 West Main Street, Fairfield, Illinois, including both land and buildings, and with buildings comprising approximately 150,000 square feet, (b) the property located at 800 Leininger Road, Fairfield, Illinois, including both land and buildings and with land comprising approximately 40 acres, and (c) other real property that Airtex now owns or operates or formerly owned or operated in Fairfield, Illinois (the "Environmental Obligations").  A portion of the costs and expenses of the Environmental Obligations shall be paid through a segregated and restricted account with such funds to be held in trust for use as provided herein (the "Environmental Obligations Account").  On the Effective Date, the Environmental Obligations Account shall be funded in an initial amount equal to $250,000.00, by any or all of the following sources: (i) cash and revenues from the business operations of Airtex or Reorganized Airtex (as applicable); (ii) cash and revenues

01:21287936.1

from the business operations of Airtex affiliates or Reorganized Airtex affiliates (as applicable); (iii) the New First Lien Exit Facility; and (iv) any other sources available to Airtex or Reorganized Airtex (as applicable).  Nothing herein shall limit Reorganized Airtex's financial obligations in respect of the Environmental Obligations to the amount in the Environmental Obligations Account.  Reorganized Airtex shall provide to the USEPA, the IEPA and the City of Fairfield quarterly status reports on the status and scope of the Environmental Obligations and updated estimates of the amounts required to pay for the Environmental Obligations in the next calendar quarter and in total until completion thereof.  Reorganized Airtex shall provide such estimated additional funds to the Environmental Obligations Account on a quarterly basis in the amount of the costs of the Environmental Obligations estimated to be incurred in the next calendar quarter.  All such estimates shall be subject to the review and comment of USEPA, IEPA and the City of Fairfield, and all rights and disagreements, if any, with respect to the quarterly status reports and the cost estimates included therein are reserved by Airtex, USEPA, IEPA and the City of Fairfield.  Any excess funds in the Environmental Obligations Account remaining after performance of all of the Environmental Obligations shall be returned to Reorganized Airtex.  All of the revenues and profits derived from the sale of Reorganized Airtex fuel pumps and related products and services sold in the United States shall be recognized in the financial statements of Reorganized Airtex and its affiliates as Reorganized Airtex revenues and profits.  Nothing herein shall limit Reorganized Airtex's obligations to provide financial assurance under applicable Environmental Laws.

    **26.  Executory Contracts and Leases.**  Except as otherwise provided in the Plan, on the Effective Date, entry of this Confirmation Order shall constitute an order of this Court approving the assumptions, or, assumptions and assignments of all Executory Contracts or

Unexpired Leases of the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, regardless of whether such Executory Contract or Unexpired Lease is set forth on the Assumed Executory Contracts and Unexpired Lease List, attached to the Plan as Exhibit 6.1.2, unless such Executory Contract or Unexpired Lease (i) was previously assumed or rejected by the relevant Debtor(s), (ii) previously expired or terminated pursuant to its own terms, (iii) is subject to a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (iv) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (v) is identified on the Rejected Executory Contract and Unexpired Lease List, attached to the Plan as Exhibit 6.1.1, in form and substance acceptable to the Debtors and the Plan Sponsors (which shall not be unreasonably withheld, conditioned or delayed); provided, however, that, notwithstanding any such assumption, the A&R Letter Agreement and Letter Agreement Order shall each remain in full force and effect, and no party's rights under any agreement affected by either the A&R Letter Agreement or Letter Agreement Order shall be expanded or reduced by the Plan or this Confirmation Order.  Each Executory Contract and Unexpired Lease assumed pursuant to Article VI of the Plan, which has not been assigned to a third party before the Effective Date, shall revest in and be fully enforceable by the respective Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Court on or after the Effective Date.  For the avoidance of doubt, the effective date for all assumptions or

assumptions and assignments of Executory Contracts or Unexpired Leases hereunder shall be the Effective Date.

Except as otherwise provided in the Plan, on the Effective Date, entry of this Confirmation Order shall constitute a Court order approving the rejection of all Executory Contracts or Unexpired Leases of the Debtors identified on the Rejected Executory Contract and Unexpired Lease List, attached to the Plan as Exhibit 6.1.1, in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, with the consent of the Plan Sponsors, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List at any time through and including forty-five (45) days after the Effective Date. The claims procedures related to rejection of Executory Contracts or Unexpired Leases contained in Section 6.3 of the Plan are hereby approved. For the avoidance of doubt, the effective date for all rejections of Executory Contracts or Unexpired Leases of the Debtors identified on the Rejected Executory Contract and Unexpired Lease List, attached to the Plan as Exhibit 6.1.1, shall be the Effective Date, provided, however, that the effective date of rejection for any additional Executory Contracts or Unexpired Leases added to the Rejected Executory Contract and Unexpired Lease List after the Effective Date shall be specified in such amended Rejected Executory Contract and Unexpired Lease List.

27. **Assumption of Collective Bargaining Agreements.** All Collective Bargaining Agreements shall be deemed to have been assumed by the applicable Debtor(s) party thereto upon the occurrence of the Effective Date. Entry of this Confirmation Order shall constitute the Court's approval of the pertinent Reorganized Debtor's assumption of each Collective Bargaining Agreement to which it is a party for the remaining term of agreement of each such

Collective Bargaining Agreement as in effect on the Effective Date, except to the extent that such agreements have already been assumed prior to the Effective Date.

28.    **Insurance Policies and Agreements.**  Insurance policies issued to, or insurance agreements entered into by, the Debtors prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements are considered to be Executory Contracts, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Court that each such assumption is in the best interest of each Debtor and its Estate.  Unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy.

29.    **Management Equity Incentive Plan.**  On or after the Effective Date, the new board of directors of Reorganized UCI shall adopt and implement the Management Equity Incentive Plan, the principal terms of which are set forth on Exhibit 6.5 to the Plan.  The Management Equity Incentive Plan shall provide for grants of options and/or restricted units/equity reserved for management, directors and employees in an amount of New Common Stock representing 5% of the New Common Stock.

30.    **Employee Compensation and Benefit Plans.**  From and after the Effective Date, each of the Reorganized Debtors shall continue to perform its obligations (whether statutory or contractual) under all employment and severance contracts assumed on or before the Effective

Date and all Employee Benefit Plans applicable to its employees, retirees and non-employee directors, including, without limitation, the payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, that such Reorganized Debtor had the obligation to pay and was paying prior to the Petition Date, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code at any time prior to the Confirmation Date, for the duration of the period (if any) that the applicable Reorganized Debtor(s) are obligated to provide such benefits. For the avoidance of doubt, the Pension Plans shall be treated as set forth in Section 5.6 of the Plan, the Global Settlement, and the Global Settlement Order.

     **31.    Postpetition Contracts and Leases.**  All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by the Debtors to the Reorganized Debtors on the Effective Date.

     **32.    Plan Classification Controlling.**  The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the ballots tendered to or returned by the holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

     **33.    Subordination.**  Except as otherwise expressly provided in any of the Plan, this Confirmation Order, or any other order of this Court, (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination

rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the Holders of Allowed Claims will not be subject to payment of a beneficiary of such subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

      **34.   Distributions.**  The distribution provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Claims, Noticing, and Solicitation Agent or the Reorganized Debtors, as applicable, shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

      **35.   Disputed Claims.**  The procedures for resolving Disputed Claims of Article VII shall be, and hereby are, approved in their entirety.  The Reorganized Debtors shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without notice to or action, order or approval of the Court. The Reorganized Debtors may resolve any Disputed Claim outside of the Court under applicable governing law.

      **36.   Discharges, Releases, Exculpation, and Injunctions.**  Each and every release, discharge, exculpation and injunction provision set forth in the Plan, including, without limitation, the Debtors' Releases and the Exculpation, are approved in all respects, are

incorporated herein in their entirety, are so ordered, and shall be immediately effective on the Effective Date without further action or notice by the Court, any of the parties to such release, discharge, exculpation and/or injunction, or any other party.  Without limiting any of the foregoing, it is hereby ordered, adjudged and decreed, and determined that:

a. <u>Discharge of Claims and Termination of Interests</u>.  Except as otherwise provided in the Plan or in this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests (other than Unimpaired Claims that are Allowed and Unimpaired Interests) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests.  On the Effective Date, the Debtors shall be deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Unimpaired Claims that are Allowed and Unimpaired Interests), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, Prepetition ABL Credit Facility Claims, Senior Notes Claims, General Unsecured Claims, and Interests in UCI and UCI Holdings; *provided* that no such discharge or release of Prepetition ABL Credit Facility Claims shall occur or be deemed to have occurred until the date on which each Holder of an Allowed Prepetition ABL Credit Facility Claim receives payment in full, in Cash, in accordance with the Plan. Concurrently with the payment in full, in Cash, to each Holder of an Allowed Prepetition ABL Credit Facility Claim, the Prepetition ABL Agent will deliver or execute and deliver documents, including without limitation a termination agreement or payoff letter, in form and substance reasonably acceptable to the New First Lien Agent, and take any other action, as the Debtors may from time to time reasonably request to effectuate, or reflect of public record, the release of all Liens under the Prepetition ABL Credit Facility Documents. All of the foregoing shall be at the sole expense of the Debtors, with no liability to the Prepetition ABL Agent and with no representation or warranty of any kind, express or implied, by or recourse to the Prepetition ABL Agent.

b. <u>Discharge Injunction</u>.  As of the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors and their respective assets, property and Estates, any other or further Claims (other than those Reinstated under the Plan), or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to any of the Debtors or Reorganized Debtors or any of their respective assets, property and Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as expressly provided in the Plan or this Confirmation Order, this Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all non-Reinstated Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant

to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability.

c. **Releases by the Debtors. Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and Reorganized Debtors on its own behalf and as a representative of its respective Estate, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims and causes of action (including, without limitation, Avoidance Actions), any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors, their respective assets, property and Estates, the Chapter 11 Cases, the Plan, the Plan Supplement or the Disclosure Statement that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors or their respective Estates against any of the Released Parties; provided, however, that nothing in Section 10.3 of the Plan shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order. On account of the Rank Contribution Election, the Rank Group and its Related Persons shall be Released Parties.**

d. **Releases by Certain Holders of Claims. Except as otherwise expressly provided in the Plan or this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Holder of a Claim or an Interest that (i) votes to accept or is deemed to accept the Plan or (ii) is entitled to vote to accept or reject the Plan and returns a Ballot by the Voting Deadline, but does not expressly opt out of the release by marking the Ballot indicating his/her/its refusal to grant such release, shall be deemed to have completely and forever released, waived, and discharged unconditionally each of the Released Parties and their respective Related Persons of and from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors or their respective assets, property and Estates, the Chapter 11 Cases, the Plan, the Plan Supplement, and/or or the**

**Disclosure Statement; provided, however, that (i) each Holder of a Claim that has submitted a Ballot may elect, by checking the appropriate box on its Ballot, not to grant the releases set forth in Section 10.4 of the Plan and (ii) nothing in Section 10.4 of the Plan shall be construed to release any party from willful misconduct or gross negligence as determined by a Final Order. On account of the Rank Contribution Election, the Rank Group and its Related Persons shall receive the release under Section 10.4 of the Plan.**

e. <u>Exculpation</u>. From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing the Plan, the Plan Supplement, and/or the Disclosure Statement, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Cases or implementation of the Plan; <u>provided</u>, <u>however</u>, that Section 10.5 of the Plan shall not apply to release (x) obligations under the Plan, and obligations under the contracts, instruments, releases, agreements, and documents delivered, Reinstated or assumed under the Plan, and (y) any claims or causes of action arising out of willful misconduct or gross negligence as determined by a Final Order. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan. Notwithstanding the foregoing, solely to the extent provided by section 1125(e) of the Bankruptcy Code, the Plan Sponsors and all of their Related Persons, shall neither have, nor incur any liability to any Entity for any Exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan. On account of the Rank Contribution Election, the Rank Group and its Related Persons shall be Released Parties.

f. <u>Injunction Related to Exculpation</u>. Except as expressly provided in the Plan or this Confirmation Order, as of the Effective Date, all Persons and Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, cause of action or liability of any nature whatsoever, of the types described in <u>Section 10.5</u> of the Plan and relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and/or Estates, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit,

action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under <u>Section 10.1</u> of the Plan; and/or (v) commencing or continuing in any manner any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order. On account of the Rank Contribution Election, the Rank Group and its Related Persons shall be considered Released Parties and receive the benefit of any injunction under Section 10.6 of the Plan.

**37.    Survival of Indemnification Obligations.**    The obligations of the Debtors to indemnify any past and present directors, officers, agents, employees and representatives who provided services to the Debtors on or after the Petition Date, pursuant to certificates or articles of incorporation, by-laws, contracts and/or applicable statutes, in respect of all actions, suits and proceedings against any of such officers, directors, agents, employees and representatives, based upon any act or omission related to service with, for or on behalf of the Debtors, shall not be discharged or impaired by Confirmation or consummation of the Plan and shall be assumed by the Reorganized Debtors.  For the avoidance of doubt, Section 10.7 of the Plan affects only the obligations of the Debtors and Reorganized Debtors with respect to any indemnity owed to or for the benefit of past and present directors, officers, agents, employees and representatives of the Debtors, and shall have no effect on nor in any way discharge or reduce, in whole or in part, any obligation of any other Person, including any provider of director and officer insurance, owed to or for the benefit of such past and present directors, officers, agents, employees and representatives of the Debtors.

**38.    Term of Bankruptcy Injunction or Stays.**    All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise,

01:21287936.1

and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**39.   PBGC Retained Claims.**  Subject to the PBGC Settlement [D.I. 876, Ex. B], no provision of the Plan or this Confirmation Order shall in any way be construed to discharge, release, limit, or relieve the Debtors or any other party, in any capacity, from any liability to the Pension Plans or the Pension Benefit Guaranty Corporation ("PBGC") with respect to the Pension Plans, and PBGC and the Pension Plans shall not be enjoined or precluded from enforcing such liability.  Moreover, nothing in the Plan, this Confirmation Order, or the PBGC Settlement releases any person or entity from any liability for fiduciary breach under Title I of ERISA, and PBGC expressly retains any and all claims with respect to any such liability.

**40.   Liability to Governmental Units.**  Nothing in this Confirmation Order or the Plan discharges, releases, resolves, precludes, exculpates, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) (a "Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit to the extent of such entity's  liability under non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors.  For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and Equity Interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the first sentence of this Paragraph; provided, however, that the Court retains jurisdiction, to determine whether or

not any such asserted liability described in the first sentence of this Paragraph is a Claim. Nothing in this Confirmation Order or the Plan authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law. Nothing in this Confirmation Order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit.

     **41.**    **Retention of Jurisdiction.**  Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, the Court retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, the matters set forth in Article XI of the Plan, section 1142 of the Bankruptcy Code, and, for the avoidance of doubt, matters relating to UCI Holdings until such dissolution as discussed in Paragraph 24 of this Confirmation Order.

     **42.**    **Surrender of Instruments.**  As a condition to participation in distributions under the Plan, each Senior Noteholder and the Holder(s) of any evidence of indebtedness of the Debtors relating to a non-Reinstated Claim that desires to receive the property to be distributed on account of an Allowed non-Reinstated Claim based on such Senior Unsecured Note or evidence of indebtedness shall surrender such Senior Unsecured Note or evidence of indebtedness to the Debtors, or their designee, and shall execute and deliver such other documents as are necessary to effectuate the Plan; provided, however, that if a claimant is a Holder of a Senior Unsecured Note or other evidence of indebtedness for which no physical certificate was issued to the Holder but which instead is held in book-entry form pursuant to a global security held by DTC or other securities depositary or custodian thereof, then the

Reorganized Debtors or the Senior Unsecured Notes Indenture Trustee may waive the requirement of surrender. Except as otherwise provided in Section 13.1 of the Plan, if no surrender of a Senior Unsecured Note or evidence of indebtedness relating to a non-Reinstated Claim occurs and a claimant does not provide an affidavit and indemnification agreement, in form and substance satisfactory to the Debtors, that such Senior Unsecured Note or evidence of indebtedness was lost, then no distribution may be made to any claimant whose Claim is based on such security, note, debenture or evidence of indebtedness thereof. The Debtors shall make subsequent distributions only to the persons who surrender Senior Unsecured Notes or evidence of indebtedness, as applicable, for exchange (or their assignees) and the record holders of such Senior Unsecured Notes or other indebtedness shall be those holders of record as of December 19, 2016 (the "Distribution Record Date").

43. **Post-Confirmation Date Retention of Professionals.** On the Effective Date, any requirement that Professionals employed by the Reorganized Debtors comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors are authorized to employ and compensate professionals in the ordinary course of business and without the need for application to or approval by the Court.

44. **Bar Date for Certain Administrative Expense Claims.** All applications for final allowance of compensation or reimbursement of expenses incurred by any Professional, and all other requests for the payment of Administrative Expense Claims, including all requests for the allowance of any Administrative Expense Claim pursuant to section 503(b)(3)(D) of the Bankruptcy Code for substantial contributions made in the Chapter 11 Cases (but excluding (x) all requests for the payment of obligations incurred by the Debtors in the ordinary course of their

business operations after the Petition Date, and (y) Administrative Expense Claims authorized under the Backstop Order), must be filed with the Court and served on the Reorganized Debtors and their counsel at the addresses set forth in Section 12.3 of the Plan **not later than thirty (30) days after the Effective Date**, unless otherwise ordered by the Court. Any request for the payment of an Administrative Expense Claim that is not timely filed and served may be discharged and forever barred and the Holder of such Administrative Expense Claim may be enjoined from commencing or continuing any action, process, or act to collect, offset or recover such Claim. The Debtors and the Reorganized Debtors shall have sole responsibility for filing objections to and resolving all requests for the allowance of Administrative Expense Claims.

45. **Effectuating Documents and Further Transactions.** Each of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, certificates, notes, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the New Common Stock issued under or in connection with the Plan.

46. **Corporate Action.** Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or the Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states in which the Debtors or the Reorganized Debtors are incorporated or organized without any requirement of further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

47.    **Exemption from Transfer Taxes.**  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under the Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any stamp tax or other similar tax.

48.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid as and when due or as otherwise agreed by the United States Department of Justice, Office of the United States Trustee.  Quarterly statutory fees, if any, payable to the Office of the United States Trustee shall continue to accrue for each Debtor until such Debtor's Chapter 11 Case is closed, dismissed, or converted to a case under another chapter of the Bankruptcy Code.

49.    **Compliance with Tax Requirements.**  In connection with the Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized under the Plan to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any

01:21287936.1

governmental unit, including income, withholding and other tax obligations, on account of such distribution. No distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations.

The Reorganized Debtors are hereby authorized, on behalf of each of the Debtors, to request an expedited determination under section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**50. Creditors' Committee.** On the Effective Date, the Creditors' Committee shall dissolve without need for a further order of the Court; provided, however, that, following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) Claims and/or applications, and any relief related thereto, for compensation by Professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (ii) appeals of this Confirmation Order as to which the Creditors' Committee is a party. Upon dissolution of the Creditors' Committee, the members thereof and their respective officers, employees, counsel, advisors, and agents shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; provided, further, however, that obligations arising under confidentiality agreements, joint interest agreements and protective orders, if any, entered into during the Chapter 11 Cases shall remain in full force and effect according to their terms. The Debtors and the Reorganized Debtors shall have no obligation to pay or reimburse any fees of the Creditors' Committee incurred after the Effective Date except with regard to the limited purposes identified above or as otherwise provided herein.

01:21287936.1

51. **Factoring Agreements**. The entry of this Confirmation Order shall not impact the rights of Deutsche Bank AG New York Branch, Deutsche Bank Trust Company Americas, or any other related Deutsche Bank entity (collectively, "DB") as a factor, purchaser of accounts or financier, in the receivables purchased by DB (the "Receivables") pursuant to, or under, any of the following agreements: (i) a Master Purchase Agreement dated as of July 6, 2009 with Airtex Products, LP (as may be amended, supplemented or otherwise modified from time to time, the "Airtex MPA"); (ii) a db-eBills Agreement and db-eBills db-Supplier Finance—Special Terms and Conditions, each dated as of December 14, 2010 with Airtex Products, LP (as may be amended, supplemented or otherwise modified from time to time, the "Airtex eBills Agreement"); (iii) a Master Purchase Agreement dated as of July 6, 2009 with ASC Industries, Inc. (as may be amended, supplemented or otherwise modified from time to time, the "ASC MPA"); (iv) a Master Purchase Agreement dated May 16, 2013 with Champion Laboratories, Inc. (as may be amended, supplemented or otherwise modified from time to time, the "Champion MPA"; and, (v) any other factoring or accounts receivable purchase agreement (however titled) that is currently in place between DB and one or more of the Debtors (the "DB Factoring Agreements"). For the avoidance of doubt, the Receivables shall remain subject to all security interests granted to DB pursuant to the terms of the applicable DB Factoring Agreement and said Receivables shall not be collateral for any lien granted under the terms of this Confirmation Order or any related Orders with respect to post-emergence financing.

By entry of this Confirmation Order, the Debtors are each assuming the DB Factoring Agreement (as that term is defined in this Paragraph 51 of this Confirmation Order) to which it is a party, and such Reorganized Debtor shall continue to be bound in all respects by the terms of its applicable DB Factoring Agreement, including all representations and warranties contained

therein and all indemnification obligations included therein. DB's claims against each respective Debtor under the applicable DB Factoring Agreement for any breach by such Debtor of the DB Factoring Agreement (including any contingent, unliquidated claims encompassed in Proofs of Claim number 827, 828, 829, and 830) are specifically preserved and are not discharged, expunged, reduced or limited as a result of listing the cure amount under such DB Factoring Agreement as zero (or any other amount asserted by the applicable Debtor that may be less than the amount asserted by DB against the applicable Debtor) or the applicable *Notice of Reserve Amount with Respect to Disputed Unsecured Claims Reserve* pursuant to Section 8.5.2 of the Plan listing the reserve for DB's claims at $1.00 (or any other amount asserted by the applicable Debtor that may be less than the amount asserted by DB against the applicable Debtor). For the avoidance of doubt, DB may assert any claims that arise under a DB Factoring Agreement against the applicable Reorganized Debtor (including any contingent, unliquidated claim encompassed in Proof of Claim numbers 827, 828, 829, and 830) regardless of whether a claim relates to a breach by the Debtor that occurred prior to the commencement of these cases or prior to the entry of this Confirmation Order and such claim shall not be discharged, expunged, reduced or limited in any way by the Plan or this Confirmation Order.

52. **Post-Confirmation Amendments or Modifications.** Without need for further order or authorization of the Court, subject to the terms of the Plan, the Debtors or the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other documents that are necessary to effectuate the Plan, that do not materially modify the terms of such documents and are consistent with the Plan, including without limitation Section 12.9 of the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and

Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, to alter, amend, or modify materially the Plan and the Plan Supplement with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.  Entry of this Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

53.  **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the Plan and this Confirmation Order.

54.  **Nonseverability of Plan Provisions.**  Each provision of the Plan is: (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

55.  **Successors and Assigns.**  This Confirmation Order and the Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.  The rights, benefits and obligations of

01:21287936.1

any entity named or referred to in this Confirmation Order or the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

56. **Governing Law.** Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with the Plan, and subject further to Section 11.1 of the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with (i) the Bankruptcy Code, the Bankruptcy Rules or other federal law to the extent applicable and (ii) if none of such law is applicable, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction, subject to applicable nonbankruptcy law.

57. **Applicable Nonbankruptcy Law.** Subject to Paragraph 40 of this Confirmation Order, the provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, apply and are enforceable notwithstanding any otherwise applicable nonbankruptcy law.

58. **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the United States Trustee is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

59. **Government Approvals Not Required.** Subject to Paragraph 40 of this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Disclosure Statement,

01:21287936.1

any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

60.    **Notice of Effective Date.**  The Reorganized Debtors shall file and serve notice of the occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Effective Date Notice"), in accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days after the Effective Date in satisfaction of Section 9.4 of the Plan.  The Effective Date Notice shall be served on all known Holders of Claims and Interests.

The Reorganized Debtors shall publish the Effective Date Notice (or a version of the Effective Date Notice which has been modified for publication purposes), in *The Wall Street Journal* and *USA Today*, in accordance with Bankruptcy Rule 2002(i), as soon as is reasonably practicable after the date of the Effective Date Notice.  The above-referenced notices and service thereof are adequate under the particular circumstances of the Chapter 11 Cases and no other or further notice is necessary.  The above-referenced notices and service thereof are adequate notice to all holders of Claims or Interests, both known and unknown, and to all potential holders of Claims or Interests.

61.    **Filing of Additional Documents.**  On or before substantial consummation of the Plan, the Reorganized Debtors and the Debtors shall, as applicable, file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of the Plan.  The Plan and the Plan Supplement, including all Exhibits, supplements, appendices and schedules thereto, and any modifications to any of the foregoing, all shall be in form and substance acceptable to the Plan Sponsors.

62.    **References to and Omissions of Plan Provisions.**  References to articles, Sections and provisions of the Plan are inserted for convenience of reference only and are not

intended to be a part of or to affect the interpretation of the Plan. The failure to specifically include or to refer to any particular article, Section or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, Section or provision, it being the intent of the Court that the Plan be confirmed in its entirety and incorporated herein by this reference.

63. **Headings.** Headings utilized in this Confirmation Order are for convenience of reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

64. **Conflicts.** This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order. If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

65. **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127 of the Bankruptcy Code.

66. **Waiver of Stay.** For good cause shown, the fourteen (14) day stay under Bankruptcy Rule 3020(e), and any stay under any other Bankruptcy Rule or Local Rule, are hereby waived with respect to this Confirmation Order and the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon its entry.

01:21287936.1

67. **Final Order.**  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry of this Confirmation Order.  All interim orders entered by the Court in the Chapter 11 Cases that are in effect are deemed Final Orders by operation of this Confirmation Order.


Dated:  December __6__, 2016
          Wilmington, Delaware

_____
MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE