**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>UCI INTERNATIONAL, LLC, et al.[1]<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 16-11354 (MFW)<br><br>Jointly Administered<br><br>Hearing Date: November 21, 2017 at 10:30 a.m. (ET)<br>Response Deadline: November 3, 2017 at 4:00 p.m. (ET) |

**REORGANIZED DEBTORS' FIFTEENTH OMNIBUS (SUBSTANTIVE)
OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY
CODE, BANKRUPTCY RULES 3001, 3003, AND 3007, AND LOCAL RULE 3007-1**

**("NO LIABILITY CLAIMS")**

> **Claimants receiving this Objection should locate their name(s) and claim number(s) on Exhibit A to the Proposed Order attached to this Objection to learn the grounds for the objection pertaining to their claim(s) and the relief being sought by the Reorganized Debtors.**

> **The relief sought herein is without prejudice to the Reorganized Debtors' rights to pursue further substantive or non-substantive objections against the Claims listed on Exhibit A to the Proposed Order attached to this Objection.**

---

[1] The Reorganized Debtors in these chapter 11 cases, together with the last four digits of each Reorganized Debtor's federal tax identification number, are as follows: UCI International, LLC (0186); Airtex Industries, LLC (0830); Airtex Products, LP (0933); ASC Holdco, Inc. (9758); ASC Industries, Inc. (7793); Champion Laboratories, Inc. (5645); UCI International Holdings, Inc. (5732); UCI Acquisition Holdings (No. 3) Corp (8277); UCI Acquisition Holdings (No. 4) LLC (8447); UCI-Airtex Holdings, Inc. (5425); UCI Holdings Limited (N/A); UCI Pennsylvania, Inc. (1527); and United Components, LLC (9857). The mailing address for each Reorganized Debtor is 2201 Waukegan Road, Suite 140, Bannockburn, Illinois 60015.

01:22475652.1

The reorganized debtors in the above-captioned chapter 11 cases (each a "Reorganized Debtor" and collectively, the "Reorganized Debtors"), by and through their undersigned counsel, hereby submit this fifteenth omnibus objection (the "Objection") to the No Liability Pension Claim and the Protective No Liability Claims (each as defined herein and together, the "No Liability Claims") identified on Exhibit A attached to the proposed order (the "Proposed Order") attached hereto as Exhibit 2, respectfully requesting the entry of the Proposed Order disallowing the No Liability Claims as indicated in further detail below and in the exhibits attached to the Proposed Order. This Objection is made pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

By this Objection, the Reorganized Debtors request the entry of an order disallowing the No Liability Claims as indicated in further detail below. In support of this Objection, the Reorganized Debtors rely on the declaration of Nathan R. Iles, Vice President and Chief Financial Officer of the Debtors and the Reorganized Debtors (the "Iles Declaration"), attached hereto as Exhibit 1. In further support of this Objection, the Reorganized Debtors respectfully state as follows:

**STATUS OF THE CASE AND JURISDICTION**

1. On June 2, 2016 (the "Petition Date"), UCI International LLC and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continued to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 3, 2016, the Court entered an order [D.I. 49] authorizing the joint administration and procedural consolidation of these cases pursuant to Bankruptcy Rule 1015(b).

2.  On December 6, 2016, the Court entered the *Findings of Fact, Conclusions of Law, and Order* [D.I. 992] (the "Confirmation Order") *Confirming the Joint Plan of Reorganization for UCI International, LLC and Its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors* (the "Plan").[2]

3.  The Effective Date of the Plan occurred on December 30, 2016.

4.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Reorganized Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order or judgment by the Court in connection with this Objection if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought herein are sections 502(b) and 558 of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

01:22475652.1

**FACTUAL BACKGROUND TO THE REORGANIZED DEBTORS' CLAIMS PROCESS**

6. On August 1, 2016, the Debtors filed their schedules of assets and liabilities and statements of financial affairs [D.I. 356-381] (the "Schedules").

7. On August 15, 2016, the Court entered an order (the "Bar Date Order") [D.I. 427] (i) establishing September 30, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim (the "Proofs of Claim") in these chapter 11 cases and (ii) approving the form and manner of notice of the Bar Date.

8. Written notice of the Bar Date was mailed to, among others, all known creditors listed on the Schedules and the Bar Date Order was served on all parties who had filed requests for notices under Bankruptcy Rule 2002 as of the date of the Bar Date Order. In addition to mailing such actual notice, the Debtors also published notice of the Bar Date in the National Editions of the *Wall Street Journal* and *USA TODAY* on September 7, 2016 [D.I. 676].

9. As of the filing of this Objection, approximately 1,000 Proofs of Claim were filed in these chapter 11 cases. The Proofs of Claim are recorded on the official claims register (the "Claims Register") maintained by Garden City Group, LLC, the agent retained by the Debtors to assist with claims processing in these chapter 11 cases (the "Claims Agent").

**FACTUAL BACKGROUND CONCERNING THE NO LIABILITY PENSION CLAIM**

10. Prior to the Petition Date, the Debtors[3] maintained three defined benefit pension plans covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301–1461: the Pension for Employees of Airtex Products LP, the

---

[3] Debtor United Components, LLC ("United Components") is the sponsor of the Pension Plans, but the "Debtors" may be referred to in this Objection for ease of reference.

01:22475652.1

4

Champion Laboratories Pension Plan, and the Neapco Inc. Employees Pension Plan (collectively, the "Pension Plans"). See D.I. 4 ¶¶ 158–161.

11. The Pension Benefit Guaranty Corporation ("PBGC") is the federal agency that administers the pension insurance program under Title IV of ERISA. When an underfunded pension plan terminates with insufficient assets to pay benefits, PBGC generally becomes statutory trustee of the plan and pays benefits to the plan's participants up to statutory limits. Pursuant to ERISA, an underfunded defined benefit plan may be terminated by PBGC in an involuntary termination or by the plan sponsor through a distress termination. See 29 U.S.C. § 1342; 29 U.S.C. § 1341(b). The Debtors' Pension Plans were severely underfunded as of the Petition Date. Prior to the Bar Date, the PBGC filed Proofs of Claim Nos. 725–733 in these chapter 11 cases asserting that the unfunded benefit liabilities of the Pension Plans on a termination basis as of June 30, 2016 were approximately $123 million.

12. The Debtors' Plan contemplated an increased recovery for general unsecured creditors through the Rank Contribution Election (as defined in the Plan), whereby members of the Rank Group Limited and its respective affiliates (other than UCI Holdings Limited and its subsidiaries) (the "Rank Group") could elect to assume the Pension Plans in exchange for, among other things, releases under the Plan. On November 9, 2016, the Plan Proponents announced that the Rank Group had elected to make the Rank Contribution Election.[4] Concurrently therewith, the Debtors filed the *Debtors' Motion to Approve (I) Global Settlement Among the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Group of Noteholders, and Rank Group and (II) the PBGC Settlement Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019* [D.I. 876] (the "Global Settlement Motion"),

---

[4] See D.I. 875.

seeking approval of a global settlement (the "Global Settlement"), which was implemented pursuant to (x) that certain Settlement Agreement dated as of November 8, 2016, among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), certain holders of the 8.625% senior unsecured notes due 2019 (the "Notes") holding approximately 62.1% of the aggregate principal amount of Notes, and the Rank Group, and (y) that certain Settlement Agreement dated as of November 8, 2016 (the "PBGC Settlement Agreement"), among United Components, Pactiv, and the PBGC. On November 30, 2016, the Court entered an order [D.I. 950] (the "Global Settlement Order"), approving the Global Settlement Motion and the terms of the Global Settlement.

13.   The PBGC Settlement Agreement documents the terms of the Transfer of Plans (as defined in the PBGC Settlement Agreement) from United Components to Pactiv. See Global Settlement Motion, Ex. B. Under the terms of the Transfer of Plans, Rank NA Investment Committee became the plan administrator and Pactiv became the plan sponsor of the Pension Plans pursuant to the PBGC Settlement Agreement. See Global Settlement Motion, Ex. B, § 3.01–.02. Moreover, the PBGC Settlement Agreement expressly provided for an acknowledgement by the PBGC that, upon the Transfer of Plans, none of the UCI Parties (as defined in the PBGC Settlement Agreement) or any of their successors shall be liable with respect to the Pension Plans after the UCI Parties exit the Controlled Group (as defined in the PBGC Settlement Agreement) as a result of the chapter 11 cases and the Transfer of Plans.[5]

14.   In addition, pursuant to the Global Settlement Order, PBGC's Proofs of Claim numbers 725–733, asserted on behalf of the beneficiaries of the Pension Plans, were deemed

---

[5] For the avoidance of doubt, notwithstanding anything in the PBGC Agreement to the contrary, nothing in the PBGC Agreement releases any person or entity from any liability for fiduciary breach under Title I of ERISA, and PBGC expressly retains any and all claims with respect to any such liability.

01:22475652.1

withdrawn on the Effective Date.  See Global Settlement Order ¶ 8.  The Global Settlement Order also provided that on the Effective Date and upon consummation of the Transfer of Plans (as defined in the PBGC Settlement Agreement), none of the UCI Parties[6]—including United Components—or any of their successors shall be liable with respect to the Pension Plans, subject to certain limitations.  See Global Settlement Order ¶ 14.  The Transfer of Plans was completed on December 30, 2016.

15.     The Rank Group Election and the assumption of the Pension Plans by Pactiv are discussed in greater detail in the Global Settlement Motion [D.I. 876], filed on November 9, 2016.

16.     Exhibit A to the Proposed Order identifies claim number 527 (the "No Liability Pension Claim") filed against the Debtors.  The No Liability Pension Claim was filed in an undetermined amount and contained no statement identifying the basis of the claim and did not provide any supporting documentation.  Through conversations with the claimant, the Debtors have determined that the claimant filed the No Liability Pension Claim as a protective claim related to her pension.

17.     The Debtors previously sought, and this Court granted, the disallowance of claims filed on account of pensions for which the Reorganized Debtors have no liability by virtue of the Global Settlement and the Transfer of Plans discussed above, as well as current ERISA law.  See D.I. 1177.  The No Liability Pension Claim is a similarly situated claim and the Debtors seek its disallowance on the same grounds.

---

[6] The "UCI Parties" are UCI Holdings Limited and each of its direct and indirect subsidiaries.

01:22475652.1

## **RELIEF REQUESTED**

18. By this Objection, the Reorganized Debtors seek entry of the Proposed Order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1, (a) disallowing in full the No Liability Claims identified on Exhibit A to the Proposed Order on the basis that, after reconciling each of the No Liability Claims and supporting materials (if any) against their books and records, the Debtors have determined that they are not liable with respect to the No Liability Claims for the reasons specified on Exhibit A for each respective claim, and (b) authorizing the Claims Agent to modify each of the No Liability Claims on the Claims Register in accordance with the Proposed Order.

19. This Objection complies in all respects with Local Rule 3007-1.

## **BASIS FOR OBJECTION**

20. Section 502(b) of the Bankruptcy Code provides in pertinent part:

> [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

11 U.S.C. § 502(b)(1).

21. When asserting a proof of claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. In re Allegheny Int'l Inc., 954 F.2d 167,173 (3d Cir. 1992); Svenska Taendsticks Fabrik Aktiebolaget v. Irving Tr. Co. (In re Int'l Match Corp.), 69 F.2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.

Allegheny, 954 F.2d at 173. A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity. Id. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. Id. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. Id. The burden of persuasion is always on the claimant. Id.

### A. No Liability Pension Claim

#### 1. ERISA Governs All Claims Asserted by Pension Plan Participants for Benefits Due Under the Pension Plans, Including the No Liability Pension Claim

22. The civil enforcement provisions of ERISA § 502(a) set forth the remedies available to plan participants and beneficiaries as against an ERISA-covered pension plan. See ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (providing that a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"); ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (providing for certain equitable remedies to redress "any act or practice which violates any provision of this subchapter or the terms of the plan" or "to enforce any provisions of this subchapter or the terms of the plan").

#### 2. The Pension Plans as Assigned to Pactiv, Not Any of the Debtors, Are the Proper Party in Interest

23. ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity" and that any resulting money judgment "shall be enforceable *only against the plan*." See ERISA § 502(d)(1)-(2); U.S.C. § 1132(d)(1)-(2) (emphasis added). See also Helfrich v. Carle Clinic Ass'n, P.C., 328 F.3d 915, 916 (7th Cir. 2003) (under ERISA, a plan is a separate trust, a legal entity distinct from the employer-sponsor). Accordingly, there

can be no dispute that if the respective claimant filing the No Liability Pension Claim seeks to obtain benefits from the Pension Plans, he or she may commence an action only against the Pension Plans, not against any of the Debtors.

24. ERISA-governed plans, and not the sponsors thereof, are the proper parties to be pursued in seeking pension benefits. Specifically, it is well established that a person who does not have the power to provide plan benefits in administration of an ERISA plan is not a proper defendant in a claim seeking such benefits. See May v. Roadway Express, Inc., 813 F. Supp. 1280, 1286 (E.D. Mich. 1993) (dismissing claims against an employer where it was not shown that the employer was a plan administrator and holding "any judgment against a plan is enforceable against only the plan as an entity"); Garratt v. Knowles, 245 F.3d 941, 945 (7th Cir. 2001) (upholding district court's dismissal of a state law tortious interference lawsuit brought against the employer's Board of Directors, which had amended Plaintiffs' SERP, finding the claims were pre-empted by ERISA and brought against the wrong defendants).

25. Here, Rank NA Investment Committee became the plan administrator and Pactiv became the plan sponsor of the Pension Plans pursuant to the PBGC Settlement Agreement. See Global Settlement Motion, Ex. B, § 3.01–.02. The Rank NA Investment Committee, as administrator of the Pension Plans, makes all decisions concerning the benefits provided under the Pension Plans independent of control or influence of United Components or any of the other Debtors in these chapter 11 cases. The Pension Plans are not Debtors in these chapter 11 cases, and the benefits paid to participants and beneficiaries by the Pension Plan are paid through a tax-qualified trust that is not under the Debtors' control and whose assets are not assets of the Debtors' estates. See 11 U.S.C. § 541(b)(7) (contributions to ERISA-governed employee benefit plans excluded from property of the estate). Thus, eligible claims for pension benefits based on

an employment relationship with the Debtors are paid by the Pension Plans as assumed by Pactiv, not by United Components or any of the other Debtors. Accordingly, any claim that the claimant asserting the No Liability Pension Claim listed on <u>Exhibit A</u> may have for pension benefits attributable to their relationship with the Debtors may only be asserted against the Pension Plans pursuant to ERISA.

### 3. The Pension Plans Have Been Transferred Pursuant to the Global Settlement and Pactiv Has Assumed Sole Sponsorship of the Plans

26. As described above, pursuant to the PBGC Settlement Agreement, Pactiv adopted each of the Pension Plans, assumed sole sponsorship of and became the "plan sponsor" of each of the Pension Plans within the meaning of Section 3(16)(B) of ERISA, and became a party to any trusts established under the Pension Plans. PBGC Settlement Agreement, § 3.01. Moreover, as part of the PBGC Settlement Agreement, and in exchange for United Components' and Pactiv's commitments under the PBGC Settlement Agreement, the PBGC agreed to forbear from terminating, or initiating any proceedings to terminate, any of the Pension Plans under Section 4042(a)(4) of ERISA solely as a result of the chapter 11 cases or the Transfer of Plans. <u>Id</u>. § 5.01. As a result, the Reorganized Debtors are unaware of any injury suffered by any Pension Plan beneficiaries as a result of the chapter 11 cases, including the No Liability Pension Claim, that would result in a claim against the estates of the Reorganized Debtors. Accordingly, the No Liability Pension Claim should be disallowed in full.

27. For these reasons, the Reorganized Debtors object to the allowance of the No Liability Pension Claim and request that such claim be disallowed in its entirety.

### B. Protective No Liability Claims

28. After reviewing the Proofs of Claim filed against the Debtors in these chapter 11 cases, the Reorganized Debtors have identified claims numbers 930 and 931, each filed in an

undetermined amount, for which the Reorganized Debtors have diligently reviewed their books and records and determined that such claims are not reflected as liabilities of the Debtors (the "Protective No Liability Claims"). The Reorganized Debtors have undertaken a reasonable investigation of the Protective No Liability Claims based on the information provided in the applicable proofs of claim, and their books and records, and have concluded that the Debtors do not have any liability for each of the claims. See Iles Decl. ¶ 6. Moreover, the claimants have asserted such claims in contingent or unliquidated amounts and have not filed amended claims or otherwise sought to assert an actual claim in a specified amount.

29. The Protective No Liability Claims appear to have been filed on a protective basis on account of alleged environmental remediation and monitoring obligations related to the Benicia Industrial Park located at 4186 Park Road, Benicia, CA (the "Site"). The Debtors are familiar with the Site and the attendant remediation and obligations. On November 14, 2002, Debtor Champion Laboratories, Inc. entered into a joint defense and cost sharing agreement for the Site, which was subsequently modified on April 14, 2004 (together, the "Cost Sharing Agreement"). Counter-parties to the Cost Sharing Agreement are Maxion Wheels U.S.A. LLC and EOP-Industrial Portfolio, L.K.C./Blackhawk Parent LLC (collectively with Champion Laboratories, Inc., the "Benicia Parties"). The Reorganized Debtors assumed the Cost Sharing Agreement under the Plan, as set forth in the Amended Assumed Executory Contract and Unexpired Lease List attached as Exhibit 6.1.2 to the Second Plan Supplement, filed on December 2, 2016. See D.I. 972.

30. Although the claimants of the Protective No Liability Claims are not direct parties to the Cost Sharing Agreement, the Debtors believe that the obligations undertaken by the Benicia Parties in that agreement are being performed to address claimants' concerns regarding

the Site. As the remediation and monitoring obligations in the Cost Sharing Agreement were assumed pursuant to the confirmed Plan, the Reorganized Debtors remain obligated to perform their duties under the Cost Sharing Agreement.

31. Accordingly, the Reorganized Debtors object to the allowance of the Protective No Liability Claims set forth on Exhibit A and request that the Court enter the Proposed Order disallowing the Protective No Liability Claims in their entirety.

**RESERVATION OF RIGHTS**

32. The Reorganized Debtors hereby reserve their right to object in the future to any of the Proofs of Claim listed on Exhibit A to the Proposed Order on any ground, and to amend, modify, and/or supplement this Objection, including, without limitation, to object to amended or newly-filed claims. Separate notice and hearing will be provided and scheduled, respectively, for any such objection. The Reorganized Debtors reserve the right to adjourn the hearing on any No Liability Claim, and in the event that the Reorganized Debtors do so, the Reorganized Debtors will state the same in the agenda for the hearing on that No Liability Claim, which agenda will be served on the claimant.

33. Notwithstanding anything contained in this Objection or on Exhibit A attached to the Proposed Order, nothing herein shall be construed as a waiver of any rights that the Reorganized Debtors may have: (i) to bring avoidance actions under the applicable sections of the Bankruptcy Code against the holders of claims subject to the Objection; or (ii) to exercise their rights of setoff against the holders of claims subject to this Objection.

**NOTICE**

34. Notice of this Objection will be provided to: (i) the Office of the U.S. Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States

Attorney for the District of Delaware; (iv) the Internal Revenue Service; (v) counsel to the Committee; (vi) counsel to Credit Suisse AG, Cayman Islands Branch, the administrative agent, collateral agent and issuing lender for the Debtors' prepetition credit facility; (vii) counsel to Wilmington Trust; (viii) counsel to certain holders of the Debtors' prepetition unsecured notes; (ix) the claimants listed on <u>Exhibit A</u> to the Proposed Order; and (x) all parties that have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Reorganized Debtors submit that no other or further notice is necessary.

## **NO PRIOR REQUEST**

The Reorganized Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, for the reasons set forth herein, the Reorganized Debtors respectfully request that the Court enter the Proposed Order, pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001 and 3007, and Local Rule 3007-1, (i) disallowing in full each of the No Liability Claims set forth on <u>Exhibit A</u>; (ii) authorizing the Claims Agent to amend the Claims Register to comport with entry of the Proposed Order; and (iii) granting such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  October 20, 2017<br>Wilmington, Delaware | SIDLEY AUSTIN LLP<br>Larry J. Nyhan<br>Jessica C.K. Boelter<br>Michael T. Gustafson<br>Blair M. Warner<br>One South Dearborn Street, Chicago, Illinois 60603<br>Telephone:  (312) 853-7000<br>Facsimile:  (312) 853-7036<br><br>         -and-<br><br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Ashley E. Jacobs*<br>Robert S. Brady (No. 2847)<br>Edmon L. Morton (No. 3856)<br>Ashley E. Jacobs (No. 5635)<br>Elizabeth S. Justison (No. 5911)<br>Rodney Square<br>1000 North King Street, Wilmington, Delaware 19801<br>Telephone:  (302) 571-6600<br><br>ATTORNEYS FOR THE REORGANIZED DEBTORS |