**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UCI INTERNATIONAL, LLC, et al., | ) | Case No. 16-11354 (MFW) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Hearing Date: November 25, 2019 at 10:30 a.m.** |
| | ) | **Objection Deadline: November 7, 2019 at 4:00 p.m.** |

**MOTION OF REORGANIZED DEBTORS FOR THE ENTRY OF**
**AN ORDER (I) ENFORCING THE PLAN AND CONFIRMATION**
**ORDER, INCLUDING THE DISCHARGE AND INJUNCTION**
**PROVISIONS, AND (II) GRANTING RELATED RELIEF**

UCI International, LLC ("UCI") and Champion Laboratories, Inc. ("Champion," and together with UCI, the "Reorganized Debtors") hereby submit this motion (the "Motion") for entry of an order pursuant to sections 105(a), 524, 1129 and 1141 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), (i) enforcing the Reorganized Debtors' Plan and Confirmation Order, including the Discharge and Injunction Provisions (each as defined below), against the San Francisco Bay Regional Water Quality Board (the "SF Board") and State Water Resources Control Board – OCC (the "State Board" and together with the SF Board, the "California Boards"), and (ii) granting to the Reorganized Debtors other related relief, and in support of this Motion, the Reorganized Debtors respectfully represent and set forth as follows:

**Preliminary Statement**

Prior to filing its bankruptcy petition, Champion was subject to certain directives (but no cleanup orders) by the State Board for investigation at the Benecia Industrial Park, which arose as a result of Champion's previous purchase of a company that formerly leased and operated a business at a portion of the Benecia Industrial Park.

On June 2, 2016, the Debtors each filed for bankruptcy under Chapter 11, and the California Boards each filed proofs of claim in the Chapter 11 cases. On November 1, 2016, the Debtors filed a plan of reorganization that, among other things, included discharge and injunctive provisions, subject only to certain limitations contained in the plan, none of which apply to the California Boards' claims. On December 6, 2016, the Court entered the Confirmation Order confirming the Debtors' Plan. Among other things, the Confirmation Order contained discharge and injunctive provisions, subject only to certain limitations contained therein.

Notwithstanding the discharge and injunctive provisions, the California Boards are asserting that the Reorganized Debtors remain responsible to investigate, assess, monitor, remediate, and cleanup the site, which necessarily requires that the Reorganized Debtors incur significant costs and remit payments on account of such activity. The State Board has scheduled a hearing for October 9, 2019, at which time, it will likely seek entry of an order that will purport to impose further responsibilities and liabilities upon the Reorganized Debtors. This proposed order has prompted the Motion, by and through which the Reorganized Debtors are seeking to enforce the discharge and injunction provisions in the Plan and Confirmation Order.

The Plan and Confirmation Order unambiguously provide for the discharge of all claims against the Reorganized Debtors and for an injunction from bringing actions based upon such claims arising prior to the Effective Date, subject only to the exceptions set forth in the Plan and Section 1141(d)(3) of the Bankruptcy Code, neither of which are applicable. Among other things, the California Boards are asserting a right to payment that constitute claims, as defined by Section 101(5) of the Bankruptcy Code, and under applicable Third Circuit law, such claims arose prior to the Debtors' bankruptcy.

11260266/3

Further, the Confirmation Order makes specific exception for claims in connection with certain real property located in Illinois, where those claims are similar to the claims asserted by the California Boards. The inclusion of an exception for the Illinois-related claims evidences the intent of the Debtors not to agree to future liability in connection with the Benecia Industrial Park.

Accordingly, the Court should enter an Order enforcing the Reorganized Debtors' Plan and Confirmation Order, including the Discharge and Injunction Provisions, against the California Boards.

## **Background**

1.       Prior to 1964, the United States Army operated the Benecia Arsenal in Solano County, California. A portion of that facility was converted to private commercial and industrial use after the arsenal was closed. The Debtors purchased a company that formerly leased and operated a business at a portion of the Benecia Industrial Park located at 4186 Park Road, Benecia, CA (the "Benecia Industrial Park"), which was located on a portion of the former arsenal site.

2.       On or about November 14, 2002, Champion, one of the Debtors, entered into a joint defense and cost sharing agreement (as subsequently modified, the "Cost Sharing Agreement")[1] with Hayes Lemmerz International Inc. ("Hayes Lemmerz"), and EOP-Industrial Portforlios, L.L.C. and Equity Office Properties Trust, as successor-in-interest to Spieker Properties, Inc. ("EOP"). As set forth in the Cost Sharing Agreement, EOP is the current owner of certain property at the Benecia Industrial Park. E-T Industries leased space at Benecia

---

[1]      The Cost Sharing Agreement was assumed as set forth in the Amended Assumed Executory Contract and Unexpired Lease List attached as Exhibit 6.1.2 to the second supplement to the Plan.

Industrial Park, where it conducted certain manufacturing operations, and EOP alleged that Champion was a corporate successor to E-T Industries. Further, Hayes Lemmerz was the corporate successor to the entity that purchased certain of the assets of Champion, and it continued operations at the property. By the Cost Sharing Agreement, as subsequently modified on or about July 2, 2014, the parties agreed with each other to, among other things, share certain past and future costs related to environmental obligations at the property located within the Benecia Industrial Park.

3.      On June 2, 2016 (the "Petition Date"), the Reorganized Debtors and other affiliated entities (collectively, the "Debtors") each filed voluntary Chapter 11 bankruptcy petitions thereby commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases") in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

### A.      The California Board Claims

4.      On November 28, 2016, the State Board and the SF Board each separately filed proof of claims on behalf of the California Regional Water Quality Control Board, San Francisco Bay Region and the State Water Resources Control Board [Proof of Claim Nos. 930 and 931, respectively] (the "California Board Claims"). Copies of the California Board Claims are attached hereto as **Exhibit A.** Aside from the claimant names on the first page, the California Board Claims are virtually identical.

5.      By the California Board Claims, the California Boards stated that the claims arise from the Debtors, as owners, operators and/or persons responsible for the investigation, assessment, monitoring, remediation, cleanup, and oversight costs for the Benecia Industrial Park. By the California Board Claims, the California Boards asserted "any and all 'claims' as defined in 11 U.S.C. § 101(5) arising from the Debtors' activities, as a protective measure related

to the obligations of the Debtors is also intended to disclose other obligations, including injunctive obligations that are not 'claims' as defined in the Bankruptcy Code and the potential for administrative expenses." <u>See</u> California Board Claims, Supplemental Statement p. 4. Further, California Boards asserted that the claim was being filed for "any regulatory oversight costs that have or may be incurred by the Regional Water Board/and or State Board in assuring that the Debtors, individually or collectively satisfy their environmental obligations pursuant to, among other sections, California Water Code §§ 13304, 13267, and 13365." <u>Id.</u>

6.      Further, in the California Board Claims, the California Boards asserted that "[t]he full extent of the Debtors' environmental obligations are unknown at this time. The [California Boards], however make an express reservation to amend their Proofs of Claim and Supplemental Statements to include any additional monetary or injunctive obligations, including contractual, administrative, or regulatory obligations based upon further investigation. The Debtors' obligations arise from four primary areas: (1) obligations under environmental laws implemented by the [California Boards]; (2) previous and ongoing requirements to investigate, assess, and remediate the site(s); (3) the Regional Water Board's costs of oversight pursuant to exiting agreements; and (4) fees and existing agreements with the State Board. Under these four primary areas, the facts known at this time related to the Debtors' obligations include, but are not limited to, regulation of the site pursuant to California Water Code §§ 13267 directives as part of the Site Cleanup Program." California Board Claims, p. 6.

7.      The California Boards further stated that they "are informed and believe that the Debtors are liable for investigation, assessment, monitoring, oversight costs, and remediation of pollution at the site. The [California Boards] reserve the right to identify additional sites and additional cost information and amend these Proofs of Claim accordingly." Id. at 7.

11260266/3

8.      Finally, in the California Board Claims, the California Boards asserted that "these protective claims are asserted for all obligations including injunctive relief obligations, that are not "claims", as well as obligations giving rise to monetary payments by the Debtors, as of the petition date or thereafter, in connection with the site and any other sites in California, and for obligations pursuant to any orders or other applicable federal and state law to the extent such obligations are considered claims under 11 U.S.C. § 101(5) arising from the Debtors' activities in the State of California.  The [California Boards] reserve the right to contend that all or any such obligations are not claims and are mandatory injunctive obligations of the Debtors for which proofs of claims are not required under the Bankruptcy Code." Id. at p. 8.

**B.      The Debtors' Plan and Confirmation Order**

9.      On November 1, 2016, the Debtors filed the Joint Plan of Reorganization for UCI International, LLC and its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [Docket No. 821], and on December 2, 2016, Notice of Filing of Further Revised Joint Plan of Reorganization for UCI International, LLC and its Debtor Affiliates Proposed by the Debtors, the Ad Hoc Committee of Senior Noteholders and the Official Committee of Unsecured Creditors [Docket No. 971] (the "Plan").[2]

10.      Among other things, the Plan provides as follows:

5.10. Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.  On and after the Effective Date, after giving effect to each of the Restructuring Transactions contemplated under this Plan,  each of the Reorganized Debtors shall continue to exist as separate entities in accordance with the applicable law in the respective jurisdiction in which they are formed and pursuant to their respective certificates or articles of incorporation (or similar organizational documents) and by-laws in effect prior to the Effective Date, except to the extent such certificates or articles of incorporation (or similar

---

[2]      Because of the length of the Plan, it is not being attached as an exhibit hereto; however the Plan and the Confirmation Order and the terms contained therein are incorporated as if set forth herein.

organizational documents) and by-laws are to be amended and/or restated pursuant to the terms of this Plan. Notwithstanding anything to the contrary in this Plan, the Reinstated Claims against and Interests in a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor following the Effective Date and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of this Plan, the Chapter 11 Cases, or otherwise. Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided under this Plan (including as specifically contemplated by the Restructuring Transactions), all property of the respective Estate of each Debtor, including all claims, rights and causes of action and any property acquired by the Debtors or the Reorganized Debtors under or in connection with this Plan, together with any property of each Debtor that is not property of its Estate and that is not specifically disposed of pursuant to this Plan, shall revest in the applicable Reorganized Debtor on the Effective Date free and clear of all Claims, Liens, charges, other encumbrances and Interests. Thereafter, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code and the Bankruptcy Rules. As of the Effective Date, all property of each Reorganized Debtor shall be free and clear of all Liens and non-Reinstated Claims and Interests, except as specifically provided in this Plan or the Confirmation Order.

10.1. Binding Effect. On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of this Plan, including all agreements, instruments and other documents filed in connection with this Plan and executed by the Debtors or the Reorganized Debtors in connection with this Plan, shall be binding upon the Debtors, the Reorganized Debtors, all Holders of Claims against and Interests in each of the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan, and all other parties that are affected in any manner by this Plan. All agreements, instruments and other documents filed in connection with this Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

10.2. Discharge.

10.2.1 Discharge of Claims and Termination of Interests. Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests (other than Unimpaired Claims that are Allowed and Unimpaired Interests) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests. On the Effective

Date, the Debtors shall be deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Unimpaired Claims that are Allowed and Unimpaired Interests), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, Prepetition ABL Credit Facility Claims, Senior Notes Claims, General Unsecured Claims, and Interests in UCI and UCI Holdings.

10.2.2 <u>Discharge Injunction</u>.  As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors and their respective assets, property and Estates, any other or further Claims (other than those Reinstated under this Plan), or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, relating to any of the Debtors or Reorganized Debtors or any of their respective assets, property and Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as expressly provided in this Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all non-Reinstated Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability.

10.9.  <u>Environmental Law</u>.  Nothing in the Confirmation Order or the Plan discharges, releases, resolves, precludes, exculpates, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) (a "Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date ; (iii) any police or regulatory liability to a Governmental Unit to the extent of such entity's liability under non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date ; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors.  For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and Equity Interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code.  Nor shall anything in the Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence; provided, however, that the Bankruptcy Court retains jurisdiction, to determine whether or not any such asserted liability described in the preceding sentence is a Claim.  Nothing in the Confirmation Order or the Plan authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d)

8

authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law. Nothing in the Confirmation Order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit.

11.1. Retention of Jurisdiction.   Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to

\* \* \* \* \* \* \* \* \* \*

(e) enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order, and issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(f) resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

\* \* \* \* \* \* \* \* \* \*

(m) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases . . . . .

11.    On December 6, 2016, the Court entered its Findings of Fact, Conclusions of Law, and Order Confirming the Plan [Docket No. 992] (the "Confirmation Order").  Among other things, the Confirmation Order approved the Plan in its entirety and confirmed the Plan pursuant to 11 U.S.C. § 1129.  Confirmation Order, ¶ 1.  The Confirmation Order further provided:

7.    **Binding Effect**.  On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtors or the Reorganized Debtors in connection with the

9

Plan, shall be binding upon the Debtors, the Reorganized Debtors, all Holders of Claims against and Interests in each of the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan, and all other parties that are affected in any manner by the Plan. All agreements, instruments, and other documents filed in connection with the Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

8.    **Free and Clear Vesting of Assets in the Reorganized Debtors**.  pursuant to section 1141(b) of the Bankruptcy Code, and except as otherwise provided in the Plan or in this Confirmation Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the Estates, free and clear of all Claims, Interest liens, charges, encumbrances and other interests of Holders of Claims or Interests. . . .

25.    **Environmental Obligations**.  On the Effective Date, Reorganized Airtex shall be responsible and liable, to the extent required by and in accordance with applicable law, for conducting and agrees to conduct, in a timely manner, any and all environmental investigation and remediation in accordance with and to the extent required by all applicable Environmental Laws arising out of, related to, or originating from or at (a) [property located at 407 Main Street, Fairfield, Illinois], (b) [property located at 800 Leininger Road, Fairfield, Illinois], and (c) other real property that Airtex now owns or operates or formerly owned or operated in Fairfield, Illinois]. . . . .Nothing herein shall limit Reorganized Airtex's obligations to provide financial assurance under applicable Environmental Laws.

(the "Confirmation Order Environmental Obligations Provision").

36.    **Discharges, Releases, Exculpation, and Injunctions**.  Each and every release, discharge, exculpation and injunction provision set forth in the Plan, including without limitation, the Debtors' Releases and the Exculpation, are approved in all respects, are incorporated herein in their entirety, and are so ordered, and shall be immediately effective on the Effective Date without further action or notice by the Court, any of the parties to such release, discharge exculpation and/or injunction, or any other party.  Without limiting any of the foregoing, it is hereby ordered, adjudged and decreed and determined that

a.    Discharge of Claims and Termination of Interests.    Except as otherwise provided in the Plan or in this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims[3] and Interests (other than Unimpaired Claims that are Allowed and Unimpaired

---

[3]    Section 1.31 of the Plan defines a Claim as a "claim" as defined by Section 101(5) of the Bankruptcy Code.

11260266/3

Interests) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests. On the Effective Date, the Debtors shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Unimpaired Claims that are Allowed and Unimpaired Interests), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 503(h), 502(h), or 502(i) of the Bankruptcy Code. . . . .

b.     Discharge Injunction.   As of the Effective Date, except as otherwise expressly provided in the Plan or this Confirmation Order, all Entities shall be precluded from asserting against the Debtors or the Reorganized Debtors and tehir respective assets, property and Estates, any or further Claims (other than those Reinstated under the Plan) or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action, or liabilties of any nature whatsoever, related to any of the Debtors or Reorganized Debtors or any of their respective assets, property and Estates, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance wth the foregoing, except as expressly provided in the Plan or this Confirmation Order, this Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all non-Reinstated Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall be void and extinguish any judgments, damages, debts, rights, remedies, causes of actio or liabilities, pursuant to sectionsa 524 and 1141 of the Bankruptcu Code and such discharge shall void and extinguish any judgment obtained against the Debtors, the Reorganized Debtors, or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt, or liability . . . .

(the "Confirmation Order Discharge and Injunction Provisions").

**40.     Liability to Governmental Units**. Nothing in this Confirmation Order or the Plan discharges, releases, resolves, precludes, exculpates, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) (a "Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory liability to a Governmental Unit to the extent of such entity's liability under non-bankruptcy law on account of its status as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors. For the avoidance of debt, the foregoing shall not limit the

scope of discharge of all Claims and Equity Interests arising priority to the Effective Date under sections 524 and 1141 of the Bankruptcy Code. Nor shall anything in this Confirmation order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the first sentence of this Paragraph; provided, however, that the Court retains jurisdiction to determine whether or not any such asserted liability described in the first sentence of this Paragraph is a Claim. Nothing in this Confirmation Order or the Plan authorize the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or € approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law. Nothing in this Confirmation order or the Plan shall affect any setoff or recoupment rights of any Governmental Unit.

(the "Confirmation Order Exception for Governmental Discharge and Releases").

12.    The Effective Date of the Plan occurred on December 30, 2016 (the "Effective Date"). [See Docket No. 1068].

### C.    Prior Objection to the Claims

13.    On October 20, 2017, the Reorganized Debtors filed the Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1 [Docket No. 1369] (the "Omnibus Objection"). By the Omnibus Objection, the Reorganized Debtors objected to each of the California Board Claims based upon the fact that each was "contingent and unliquidated and appears to have been filed on a protective basis on account of alleged environmental remediation and monitoring obligations at the [Benicia Industrial Park]." See Omnibus Objection, Exhibit A to Proposed Order. Copies of the Omnibus Objection were served upon the SF Board and the State Board. See Affidavit/Declaration of Service of Omnibus Objection [Docket No. 1377].

14.    On November 7, 2017, the Reorganized Debtors filed a certificate of no objection to the Omnibus Objection [Docket No. 1382], and on November 14, 2017, the Court entered an Order Sustaining the Omnibus Objection to Claims [Docket No. 1384].

11260266/3

### D.    Need for Entry of an Order Enforcing the Discharge and Plan Injunction

15.    Notwithstanding the discharge of the obligations to the California Boards, the California Boards continue to pursue their right to payment on account of environmental obligations that precede the Petition Date.  Since the Effective Date, the State Board has issued multiple directives for investigation and cleanup work at the Benecia Industrial Park, however, at no time prior to the filing of this Motion was the Benecia Industrial Park subject to a site cleanup order.  As an economic matter, since the Effective Date, the Debtors made a business decision to remit certain payments to the State Board, rather than challenging whether their obligations related to the Benecia Industrial Park were discharged in accordance with the terms of the Plan.

16.    A hearing before the State Board is scheduled for October 9, 2019, and the Debtors understand that, at the conclusion of the hearing, the Board will seek entry of a clean up order (the "Clean Up Order") against certain parties that include Champion.  A copy of the Clean Up Order is attached hereto as **Exhibit B**.  Among other things, the Clean Up Order provides as follows:

> 14.    **Cost Recovery**: Pursuant to California Water Code Section 13304, the discharger is hereby notified that the **Regional Water Board is entitled to, and may seek reimbursement for, all reasonable costs** actually incurred by the Regional Water Board to investigate unauthorized discharges of waste and to oversee cleanup of such waste, abatement of the effects thereof, or other remedial action, required by this order.

> 3.    **Cost Recovery**: **The discharger shall be liable**, pursuant to Water Code section 13304, to the Regional Water Board **for all reasonable costs** actually incurred by the Regional Water Board to investigate unauthorized discharges of waste and to oversee cleanup of such waste, abatement of the effects thereof, or other remedial action, required by this Order. If the Site addressed by this Order is enrolled in a State Water Board-managed reimbursement program, reimbursement shall be made pursuant to this Order and according to the procedures established in that program. Any disputes raised by the discharger over reimbursement amounts or methods used in that program shall be consistent with the dispute resolution procedures for that program.

Clean Up Order (emphasis added).[4] The Reorganized Debtors anticipate that, if the Clean Up Order were entered and enforced, Champion would likely be responsible for payment of significant monetary liabilities going forward. The Reorganized Debtors anticipate that, if the Clean Up Order were approved, they would bear a significant financial burden based upon the prospective responsibilities and obligations that would be required. Accordingly, the Reorganized Debtors are no longer willing to remit unnecessary payments, particularly where those obligations are – and would be - contrary to Sections 11.1 and 11.2 of the Plan, and the Confirmation Order Discharge and Injunction Provisions, as well the fresh start principal of the bankruptcy process.

## JURISDICTION, VENUE AND STATUTORY BASIS

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Further, pursuant to Article 11.1 of the Plan and Paragraph 41 of the Confirmation Order, this Court retained jurisdiction over the matters that are the subject of this Motion.

18.     This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

19.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

20.     The statutory predicates for the relief requested herein are sections 105(a), 1129, and 1141 of the Bankruptcy Code, and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

21.     The Reorganized Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order or judgment by the Court in connection with this Motion if it is

---

[4]     The pages of the Clean Up Order are not numbered, and where they are numbered in the upper right-hand corner, they are misnumbered to include an additional "2" at the end of each page number. For example, Paragraph 14 cited herein is on page "82 of 22" and page "92 of 22" and Paragraph 3 is on "152 of 22."

11260266/3

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## RELIEF REQUESTED

22.    By this Motion, the Reorganized Debtors seek entry of an Order (i) enforcing the Plan and Confirmation Order, including the plan injunction and the discharge provisions with respect to the California Board Claims; and (ii) granting such other relief as is just and proper.

## BASIS FOR RELIEF

23.    Section 1141 of the Bankruptcy Code, titled "Effect of Confirmation" provides, in relevant part, as follows:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
>
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
>
> (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
>
> * * * * * * * * * *
>
> (d)    (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>> (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
>>> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>>> (ii) such claim is allowed under section 502 of this title; or
>>> (iii) the holder of such claim has accepted the plan; and
>> (B) terminates all rights and interests of equity security holders and general partners provided for by the plan.
>
> * * * * * * * * *

11260266/3

(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

11 U.S.C. § 1141.

24.    Section 105 of the Bankruptcy Code provides, in relevant part, as follows:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

**A.    The Plan and Confirmation Order Unambiguously Provide for the Discharge of All Claims Against the Reorganized Debtors and an Injunction from Bringing Actions Because Such Claims Arose Prior to the Effective Date.**

25.    The terms of the Plan are clear:  on the Effective Date, the Debtors were deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims (other than Unimpaired Claims that are Allowed and Unimpaired Interests), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.  Further, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtors or the Reorganized Debtors in connection with the Plan, were binding upon the Debtors, the Reorganized Debtors, all Holders of Claims against and Interests in each of the Debtors and such Holder's respective successors and assigns.  Further, all entities were to be precluded from asserting against the Debtors or the Reorganized Debtors and their respective

16

assets, property and estates, any other or further Claims.  See Sections 10.1 and 10.2 of the Plan

and the Confirmation Order Discharge and Injunction Provisions.

26.     There are therefore only two exceptions to the discharge and injunction

provisions: (i) claims which are not subject to discharge pursuant to Section 1141(d)(3) of the

Bankruptcy Code; and (ii) express exceptions to the discharge and injunction set forth in the Plan

or Confirmation Order.  Neither applies to any rights or claims of the California Boards

27.     First and foremost, none of the three exceptions set forth in Section 1141(d)(3) of

the Bankruptcy Code apply here.  The Plan was a plan of reorganization that did not provide for

the liquidation of the Debtors' assets.  Among other things, Section 5.10 of the Plan, titled

"Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors" specifically

provided that the Debtors' assets would revest in the applicable Reorganized Debtor on the

Effective Date.  Further, the Debtor continues to operate its businesses after consummation of the

Plan, although none of those operations relate to the Benecia Industrial Park.  And finally, none

of the provisions of Section 727(a) of the Bankruptcy Code are applicable to the Debtors'

obligations.

28.     Nor are any of the provisions of Section 10.9 of the Plan or the Confirmation

Order Exception for Governmental Discharge and Releases applicable.  Specifically, those two

provisions provide for four exceptions to the discharge as they relate to Governmental Entities:

(i) any liabilities that are not a "claim" as defined in 11 U.S.C. § 101(5); (ii) any Claim of a

Governmental Unit arising on or after the Confirmation Date; (iii) any police or regulatory

liability to a Governmental Unit to the extent of such entity's liability under non-bankruptcy law

on account of its status as the owner or operator of property after the Confirmation Date; or (iv)

11260266/3

any liability to a Governmental Unit on the part of any Person other than the Debtors or Reorganized Debtors.

29.    Taking them out of order, numbers (ii) and (iii) relate to claims that arise on or after the Petition Date, and number (iv) relates to liabilities on behalf of third parties for those parties' liability to Governmental Units.  None of those apply here.  There is no question that any all of the Debtors' conduct in connection with and related to the Benecia Industrial Park arose prior to the Petition Date.  See, e.g., Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.), 607 F.3d 114 (3d Cir. 2010) (en banc) (rejecting the test of Frenville for when a claim arises and ruling, in the context of whether an asbestos claim had been discharged, that a "'claim' arises when a claimant is exposed prepetition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code,")).[5]  See also Wright v. Owens Corning, 679 F.3d 101 (3d Cir. 2012) (applying the Grossman's test for a claim arising where the claimant is exposed to the Debtor's product or conduct which gave rise to the injury which is the basis for a right to payment, the Court held that, even where the claimant's injuries had not yet manifested and therefore the claimant had no right to assert a right to file a proof of claim, the claim was discharged by the debtors' bankruptcy because the conduct that gave rise to the claim occurred prior to confirmation).  Based upon the case law from the Third Circuit Court of Appeals, there cannot be any question that, to the extent that the Reorganized Debtors took any

---

[5]    As noted by the Grossman's Court, the issue before the Court addressed asbestos claims, and they "were not deciding when a 'claim' arises in the context of environmental cleanup cases involving conflicting statutory frameworks." 607 F.3d at 125 n. 11.  While the Court of Appeals limited its holding to the facts before the court, the Reorganized Debtors respectfully submit that there is no meaningful distinction in the legal analysis for when future claims arise, regardless of whether they are product liability cases (such as asbestos) or claims involving environmental remediation.

action with respect to the Benecia Industrial Park, such conduct by the Debtors occured prepetition.

30.    Nor are there are any issues with respect to third parties; the issue immediately before the Court are the claims of California Boards, which are Governmental Units, as that term is defined in the Plan and Confirmation Order.  That leaves only (i), whether the liabilities are a "claim," as defined in section 101(5) of the Bankruptcy Code.

31.    Section 101(5) of the Bankruptcy Code defines a claim as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

32.    Here, the California Boards are seeking a claim, as that term is defined in 11 U.S.C. § 101(5), premised on account of the Debtors' prepetition interest in the Benecia Industrial Park.  Notwithstanding the reservation of rights in the California Board Claims, the California Boards expressly stated that they were asserting "any and all 'claims' as defined in 11 U.S.C. § 101(5) arising from the Debtors' activities. . . . "  Further, the California Boards asserted that the claims were being filed for "any regulatory oversight costs that have or may be incurred by the Regional Water Board/and or State Board in assuring that the Debtors, individually or collectively satisfy their environmental obligations."

33.    As a prefatory matter, it is not clear in the first instance that any of alleged damage constitutes a continuing environmental hazard, and even if it was, that such waste is the fault of the Debtors.  Of equal importance, the Debtors could not – and cannot - conduct the

cleanup because they do not own (and have never owned, or even operated at) Benecia Industrial

Park, and therefore do not have access to the site. Accordingly, all of the relief that was or could

be sought by the California Boards would be to require that the Debtors spend money to comply

with the state injunction. The claims asserted by California Boards are, therefore, governed by

Ohio v. Kovacs, 469 U.S. 274 (1985), where the Supreme Court, in considering whether an

obligation to claim up a hazardous waste disposal site was dischargeable, found that, where the

debtor no longer had possession of the site nor control over the cleanup, the state had a "right to

payment" and thus possessed a "claim," as defined by Section 101 of the Bankruptcy Code, and

accordingly, the Supreme Court determined that the debtor had an obligation to pay money to the

state, which the Court held was dischargeable in the debtor's bankruptcy.

34.     The claims of the California Boards against the Debtors are just that: claims, as

defined by the Bankruptcy Code. As set forth in the Clean Up Order, the State Board is not only

seeking costs (i.e., a right to payment) but also an equitable remedy in the event that the

Reorganized Debtors breach their obligations of performance. Specifically, the State Board is

seeking cost recovery from the Reorganized Debtors for the reimbursement of the State Board's

costs incurred, and the Reorganized Debtors anticipate that, in the event that the Reorganized

Debtors cannot perform the services required by the Clean Up Order, that the State Board may

seek an equitable remedy as against the Reorganized Debtors, potentially including

reimbursement of costs for any services to be provided with respect to monitoring or cleanup

activities.

35.     The Reorganized Debtors have no right of possession to the Benecia Industrial

Park, nor do they have any control over the investigation, assessment, monitoring, remediation,

cleanup, or oversight costs of the Benecia Industrial Park. Instead, all the Debtors can do is

11260266/3

simply remit payment to the California Boards so that the California Boards (or a third party) can

conduct such actions.  Such claims and rights by the California Boards are expressly barred by

the Plan and Confirmation Order.

**B.**      **The Terms of the Plan and Confirmation Order Should Be Interpreted to Discharge and Enjoin the California Boards from Entering a Cleanup Order against the Reorganized Debtors.**

36.      Bankruptcy plans are contracts and state principles of contract law apply.[6] See,

e.g., In re Harvey, 213 F.3d 318, 320 (7th Cir. 2000) ("[B]ankruptcy plans are to be treated as

contracts and interpreted under state law . . . ."); see Hillis Motors, Inc. v. Hawaii Auto. Dealers'

Ass'n, 997 F.2d 581, 588 (9th Cir. 1993). Expressio unius est exclusio alterius is a fundamental

canon of statutory and contractual interpretation.  Here, the Confirmation Order Environmental

Obligations Provision expressly provides that Reorganized Airtex shall be responsible and liable

for any and all environmental investigation and remediation in accordance with real property in

Fairfield, Illinois.  Notably, there is no such provision for the Claims of the California Boards.

Accordingly, the breadth of the exclusions for the Plan Release and Injunction Provisions do not

apply to any liability for the Debtors related to the Benecia Industrial Park.[7]

37.      Further, in analyzing contracts, courts should avoid an interpretation which would

result in a redundancy. See, e.g., U.S. West, Inc. v. Time Warner Inc., 1996 WL 307445, at *15

(Del. Ch. June 6, 1996) ("While redundancy is sought to be avoided in interpreting contracts, this

principle of construction does not go so far as to counsel the creation of contract meaning for

which there is little or no support in order to avoid redundancy.") See also Pasternak v. Glazer,

---

[6]      Here, the applicable governing law are the laws of the State of Delaware. See Plan, Section 12.14.

[7]      Relatedly, had there been any issue with the discharge of the obligation related to the Benecia Industrial Park, the California Boards could have objected to confirmation of the Plan. They did not.

1996 WL 54996, at *3 (Del. Ch. Sept 24, 1996) ("An interpretation of a contract that renders one or more terms redundant is not preferred over a construction that gives effect to each of the agreement's terms").    Again, the Confirmation Order Environmental Obligations Provision provides that Reorganized Airtex shall be responsible and liable for any and all environmental investigation and remediation.  The Confirmation Order Environmental Obligations Provision would be wholly unnecessary were this Court to determine that the claims contemplated in the Confirmation Order Environmental Obligations Provision are not claims arising under Section 101(5) of the Bankruptcy Code.  Accordingly, the Court should determine that the rights to payment sought by the California Boards claims are claims, as defined by Section 101(5) of the Bankruptcy Code, and therefore were discharged by the Plan and Confirmation Order.

## RESERVATION OF RIGHTS

38.    The Reorganized Debtors reserve the right, in accordance with applicable law, to further supplement this Motion or to commence an adversary proceeding to the extent necessary.

## NOTICE

39.    Notice of this Motion has been provided to: (a) the U.S. Trustee, and (b) San Francisco Bay Regional Water Quality Board and State Water Resources Control Board – OCC. The Reorganized Debtor respectfully submits that further notice of this Motion is neither required nor necessary.

WHEREFORE, the Reorganized Debtors request entry of an Order, a form of which is attached hereto as **Exhibit C**: (i) enforcing the Reorganized Debtor's Plan and Confirmation Order, including the Discharge and Injunction Provisions thereof, against the San Francisco Bay Regional Water Quality Board and State Water Resources Control Board – OCC, and (ii)

22

granting to the Reorganized Debtors such other, and further relief as appropriate and just.

Dated: October 8, 2019

**MORRIS JAMES LLP**

/s/ Jeffrey R. Waxman
Jeffrey R. Waxman (Bar No. 4159)
Brya M. Keilson (Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 888-6800
Facsimile:  (302) 571-1750
E-mail:  jwaxman@morrisjames.com
            bkeilson@morrisjames.com

Counsel for the Reorganized Debtors

11260266/3