# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UCI INTERNATIONAL, LLC, et al.<br><br>Debtors | Chapter 11<br><br>Case No. 16-11354 (MFW)<br>(Jointly Administered)<br><br>Re: Dkt. No. 1465<br><br>Petition Filed: June 2, 2016<br>Motion Filed: October 8, 2019 |

### CALIFORNIA STATE WATER RESOURCES CONTROL BOARD AND CALIFORNIA REGIONAL WATER QUALITY CONTROL BOARD, SAN FRANCISCO BAY REGION'S OBJECTION TO REORGANIZED DEBTORS' MOTION FOR ORDER (I) ENFORCING THE PLAN AND CONFIRMATION ORDER, INCLUDING THE DISCHARGE AND INJUNCTION PROVISIONS, AND (II) GRANTING INJUNCTIVE RELIEF

The California State Water Resources Control Board and California Regional Water Quality Control Board, San Francisco Bay Region, object to the Reorganized Debtors Motion, brought under 11 U.S.C. §§ 105(a), 524, 1129 and 1141. The Water Boards do not consent to entry of a final order or judgment by the Bankruptcy Court on any claim that otherwise requires adjudication by a state or Article III court.

XAVIER BECERRA
Attorney General of California
ANNADEL A. ALMENDRAS
Supervising Deputy Attorney General
MICHAEL S. DORSI
Deputy Attorney General

*/s/ Michael S. Dorsi*
Michael S. Dorsi
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-3802
Fax: (415) 703-5480
Email: Michael.Dorsi@doj.ca.gov
*Attorneys for California State Water Resources Control Board and California Regional Water Quality Control Board, San Francisco Bay Region*

1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................5

II. SUMMARY OF ARGUMENT ............................................................................................5

III. STATEMENT OF FACTS ..................................................................................................8

    A. Champion is Responsible for the Continuing Pollution at the Park Road Site .............8

    B. The Regional Water Board Took Prudent Actions to Require Remediation ..............10

    C. Champion Gave the Water Boards Every Reason to Believe It Would
        Participate in Remediation Before, During, and After Its Reorganization .........11

IV. ARGUMENT......................................................................................................................13

    A. Legal Standards and Procedure ....................................................................................13

    B. The Settled Law of This Circuit in *In re Torwico* Precludes Discharge of
        Champion's Cleanup Obligations at the Park Road Site ....................................14

    C. Champion Assumed the Obligation to Contribute to Oversight Costs by
        Assuming the Cost Sharing Agreement ..............................................................16

V. CONCLUSION.....................................................................................................................17

# TABLE OF AUTHORITIES

**CASES**

*In re Ben Franklin Hotel Assocs.*
  186 F.3d 301 (3d Cir. 1999) ............................................................................... 13, 14

*In re Chateaugay*
  944 F.2d 997 (2d Cir. 1991) ..................................................................................... 14

*In re CMC Heartland Partners*
  966 F.2d 1143 (7th Cir. 1992) ................................................................................... 14

*In re Kaiser Aluminum Corp.*
  386 F. App'x 201 (3d Cir. 2010) ............................................................................... 14

*In re Multech Corp.*
  47 B.R. 747 (Bankr. N.D. Iowa 1985) ...................................................................... 16

*In re Torwico Elecs., Inc.*
  8 F.3d 146 (3d Cir. 1993) ......................................................................... 5, 7, 14, 15

*Ohio v. Kovacs*
  469 U.S. 274 (1985) .............................................................................................. 7, 15

*San Diego Gas & Elec. Co. v. San Diego Reg'l Water Quality Control Bd.*
  36 Cal. App. 5th 427 (2019) ..................................................................................... 16

*Stern v. Marshall*
  564 U.S. 462 (2011) ................................................................................................. 13

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prod. N.V.*
  310 F.3d 118 (3d Cir. 2002) ..................................................................................... 13

**STATUTES**

11 U.S.C.
  § 101(5) ..................................................................................................................... 14
  § 105(a) ..................................................................................................................... 13
  § 365(g)(2) ................................................................................................................ 16

28 U.S.C.
  § 157(b) ..................................................................................................................... 13
  § 2201(a) ................................................................................................................... 13

California Code of Civil Procedure
    § 1218(a) ............................................................................................................... 15
    § 1219 ................................................................................................................... 15

California Water Code
    § 13267 ................................................................................................................. 10
    § 13304 ..................................................................................................... 8, 10, 16
    § 13304(a) ............................................................................................................ 15
    § 13304(c)(1) ....................................................................................................... 16

**RULES**

Federal Rules of Bankruptcy Procedure
    7012(b) ................................................................................................................. 13
    7056 ..................................................................................................................... 13
    9014(d) ................................................................................................................. 13
    9017 ..................................................................................................................... 13

Federal Rules of Civil Procedure
    12(b)(6) ................................................................................................................ 13
    12(c) ..................................................................................................................... 13
    12(d) .................................................................................................................... 13
    43 ......................................................................................................................... 13
    56 ......................................................................................................................... 13

## I. INTRODUCTION

Injunctions to protect the environment, including the remediation of dangerous conditions, are not "claims" that may be discharged in bankruptcy. *See In re Torwico Elecs., Inc.*, 8 F.3d 146, 151 (3d Cir. 1993). Champion Laboratories, Inc., is responsible for soil and groundwater contamination at and emanating from 4186 Park Road, Benicia, California. Champion understood this during its reorganization. Years before filing this Motion, Champion had entered into a cost-sharing agreement with two other parties responsible for the cleanup of hazardous substances at and emanating from 4186 Park Road. During its reorganization, Champion assumed the cost-sharing agreement as an executory contract and attested that it would continue cleanup efforts.

Now Champion seeks an order immunizing it from a proposed cleanup order. Champion is wrong on the law—its obligations to stop ongoing pollution *run with the waste* and are not dischargeable claims. And Champion's Motion, even if granted, would be pointless. Under California law, the remaining waste dischargers would be responsible for 100% of the cleanup. Champion agreed to share their costs and assumed that contract. Even if this Court or the Regional Water Board excludes Champion from the cleanup order, the other responsible parties will be obligated to remediate, and Champion will be obligated to share in their costs.

In addition to the cleanup obligation, the State Water Board sends a quarterly bill for oversight costs to the waste dischargers' consultant. Champion agreed to contribute to these costs as part of the cost-sharing agreement. If Champion believes it can escape its contract to share these costs, its remedy is with the other dischargers, not the Water Boards.

## II. SUMMARY OF ARGUMENT

1. Champion Laboratories, Inc. ("Champion"), acquired Filter Dynamics, Inc., which had earlier acquired E-T Industries. As a result, Champion Laboratories, Inc., one of the debtors in *In re UCI International, et al.*, is the corporate successor to E-T Industries and Filter Dynamics.

2. The California State Water Resources Control Board ("State Water Board") and California Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board") (collectively "Water Boards") are the state agencies delegated primary responsibility for water quality in California.

5

3. The Regional Water Board staff found that E-T and Filter Dynamics discharged waste to soil and groundwater at 4186 Park Road, Benicia, California (the "Site"). Accordingly, the Regional Water Board, as the agency with primary responsibility for water quality within the San Francisco Bay region, has been requiring Champion to clean up the waste at and from the Site since the early 2000s through a series of investigative orders.

4. The soil and groundwater contamination contains the toxin trichloroethene ("TCE"). The TCE contamination extends under nearby parcels and into a nearby wetland adjacent to San Francisco Bay.

5. The Regional Water Board staff assessed the risks from the TCE contamination and rightly determined that remediation was necessary.

6. Along with EOP-Industrial Portfolios, LLC, and Equity Office Properties Trust ("EOP") and Hayes Lemmerz International, Inc., Champion agreed to a Joint Defense and Cost Sharing Agreement ("Cost Sharing Agreement") concerning the Site. Hayes Lemmerz is now part of Maxion Wheels, a division of Iochpe Maxion ("Maxion"). Champion, Maxion, EOP, and Cranbrook Realty Investment Fund, LP[1] ("Cranbrook") (collectively the "Discharger Group"), have worked in concert to address the contamination at and from the Site.

7. The Discharger Group, through its consultant Environmental Resources Management, has (a) engaged in cleanup and (b) paid invoices for oversight costs sent by the State Water Board.

8. The Reorganized Debtors, including Champion, brought this Motion. The Motion seeks to restrain the Water Boards to refrain from issuing orders that would require (1) Champion to participate in cleanup, and (2) Champion to fund the payment of oversight costs.

9. Champion's Motion rests largely on three arguments:

---

[1] Cranbrook now owns the Site instead of EOP. The Regional Water Board's draft cleanup order names Cranbrook as a discharger responsible for cleanup.

6

a. Champion claims that its obligations concerning the Site are essentially claims for money, equivalent to the claims in *Ohio v. Kovacs*, 469 U.S. 274 (1985), and therefore are discharged. (Motion (Dkt. No. 1465), ¶33.)

b. Champion asserts that it is not the landowner or otherwise in possession of the Site, and therefore is not responsible and cannot remediate the Site. *Id.* at ¶35.

c. Champion claims that the terms of the Reorganization Plan, approved by this Court, exempt environmental obligations in Illinois from discharge, and by the principle of *expressio unius est exclusio alterius*, the Water Boards' claims are discharged. *Id.* at ¶36.

10. Champion is in error. Its cleanup obligations are not dischargeable claims.

a. Government agencies can enforce environmental obligations against reorganized companies as part of their police and regulatory powers.

b. This case is analogous to *In re Torwico Elecs., Inc.*, 8 F.3d 146, 148 (3d Cir. 1993). *Torwico* holds that an obligation to remediate a continuing environmental hazard is not a claim and therefore not discharged in bankruptcy. Contrary to Champion's Motion, there is a continuing hazard at and emanating from the Site.

c. *Torwico* explains that the debtor not being the landowner is irrelevant. *Id.* at 151.

d. Champion's agents have and continue to access the Site as part of the Discharger Group's operations.

e. There is no requirement to include environmental obligations that are not claims in a bankruptcy plan. And even if there were, it would not matter because a bankruptcy plan cannot transform a non-claim obligation into a discharged claim.

f. Champion's reorganization plan explicitly approves of the continued participation by Champion in the Discharger Group and the remediation at the Site. Champion assumed the Joint Defense and Cost Sharing Agreement when it assumed executory contracts. (*See* Dkt. No. 972, p. 28 (Amended Assumed Executory Contract and Unexpired Lease List[2]).) The Court's

---

[2] The Water Boards attached selected pages from the previously filed documents cited in this Objection, except Champion's moving papers, in their Appendix of Previously Filed Documents.

Order Sustaining Reorganized Debtors' Fifteenth Omnibus (Substantive) Objection, which addressed the Water Boards' protective Proofs of Claims, confirms that "the Reorganized Debtors remain obligated to perform their duties under the Cost Sharing Agreement . . . ." (Dkt. No. 1381-1, p. 2.)

11. Champion is obligated to contribute a share of oversight costs not because of an order by the Water Boards, but because it assumed the Cost Sharing Agreement.

    a. The State Water Board sends the invoices for oversight costs to Environmental Resources Management, the consultant hired by the Discharger Group. The Regional Water Board, in its proposed cleanup order, includes a notice to the waste dischargers concerning their obligations under state law. The notice states:

> The discharger shall be liable, to the extent allowed by law, pursuant to Water Code section 13304, to the Regional Water Board for all reasonable costs actually incurred by the Regional Water Board to investigate unauthorized discharges of waste and to oversee cleanup of such waste, abatement of the effects thereof, or other remedial action, required by this Order.

(Declaration of Yuri Won ("Won Dec."), Exhibit 1.)

    b. The Water Boards do not dictate how the waste dischargers share costs.

    c. Champion's assumption of the Joint Defense and Cost Sharing Agreement gives administrative expense priority to those costs.

    d. Champion's share of oversight costs is a matter of contract between the waste dischargers. If Champion seeks relief from its Cost Sharing Agreement, it must obtain that relief against the other responsible parties.

### III. STATEMENT OF FACTS

**A. CHAMPION IS RESPONSIBLE FOR THE CONTINUING POLLUTION AT THE PARK ROAD SITE.**

12. Between 1970 and 1980, E-T Industries and its acquiror Filter Dynamics, Inc., produced aftermarket automobile *mag* wheels at 4186 Park Road, Benicia, California. During this period, E-T and Filter Dynamics operated a large vapor degreaser using trichloroethylene ("TCE") as a

degreaser solvent.  Investigations revealed that poor environmental practices by E-T and Filter Dynamics caused TCE contamination at the Site.  Although Champion did not operate the site using TCE, it acquired Filter Dynamics, becoming its corporate successor, which Champion has admitted.  (Won Dec., ¶¶15–16, Ex. 1.)

13. TCE is a toxin that can lead to serious health risks.  It is a known carcinogen and harms the immune system and kidneys.  Even low doses of TCE vapor can cause fetal heart damage in the first trimester of a pregnancy.  (*See* Declaration of Bill A. Cook, III ("Cook Dec."), ¶10.)

14. Testing at and around the Site reveals a wide area of groundwater contamination, known as a plume.  The plume extends under other developed parcels and into an adjacent wetland and is about 2,000 feet long.  Both pose risks.  TCE vapor migrates upward through soil.  When it does so beneath a building, this results in human exposure to TCE vapors in indoor air.  The TCE plume reaches the adjacent wetland, where it threatens aquatic life.  *Id*. at ¶¶7–9; *see also* Won Dec., Ex. 1, pp. 4–5, Figure 2.



15. The amounts of TCE at the Site and in the plume far exceed the Regional Water Board's Environmental Screening Levels—levels intended to expedite the identification and evaluation of environmental concerns at contaminated sites to protect human health and the environment. The concentrations are highest beneath and near the Site, though they are still significant over 1,500 feet away. In 2019, the onsite TCE groundwater concentrations was as high as 13,000 μg/l, and the maximum TCE groundwater concentration in wetlands near the edge of the plume was 4,800 μg/l. For comparison, the drinking water standard for TCE is 5 μg/l and the aquatic habit screening level is 200 μg/l. (Cook Dec., ¶¶7–9, Won Dec., Ex. 1, p. 5.) The Regional Water Board staff determined that E-T and Filter Dynamics discharged waste to soil and groundwater at the Site and required their corporate successors, Champion and Maxion, as well as past and current Site owners EOP and Cranbrook,[3] respectively, to investigate and cleanup the site through a serious of investigatory orders since 2001. (Cook Dec., ¶¶5–6, 14.)

### B. THE REGIONAL WATER BOARD TOOK PRUDENT ACTIONS TO REQUIRE REMEDIATION.

16. Beginning in 2004, the Discharger Group began remediation of the Site. Their efforts removed over 7,000 pounds of pollutants. The Regional Water Board issued several directives for investigation and cleanup under California Water Code Section 13267 and approved plans for remediation. Before 2019, the Discharger Group performed most of the work sought by the Regional Water Board, and the Regional Water Board did not issue a cleanup order. (Cook Dec., ¶¶14–16.)

17. On April 10, 2019, in response to the substantial contamination still present at and emanating from the Site despite prior cleanup actions, the Regional Water Board issued a draft cleanup and abatement order (the "Draft Order"). *Id.* at ¶17. Champion acknowledged the need for additional remediation, but asserted that an order was unnecessary. Champion proposed a 90-day delay so that the waste dischargers and the Regional Water Board could resolve

---

[3] Under California law, landowners who have knowledge of ongoing pollution and the ability to prevent it are dischargers and are subject to cleanup orders. (California Water Code, § 13304.)

disagreements on the Draft Order. The Regional Water Board granted the request and continued the hearing to September 11, 2019. *Id.* at ¶18. Regional Water Board staff met with the waste dischargers twice and made changes to the Draft Order to satisfy the waste dischargers. The Regional Water Board issued its revised Draft Order on September 4, 2019. *Id.* at ¶19; *see also* Dkt. No. 1465-2 (revised Draft Order filed as Exhibit B to Champion's Motion). The first compliance deadline in the Draft Order is November 29, 2019—the deadline for the waste dischargers to submit a work plan concerning offsite vapor intrusion. (Dkt. No. 1465-2, p. 13.)

18. Two days later, Champion's attorney Todd Maiden called the Regional Water Board's attorney Yuri Won, asking for another continuance so that Champion's board of directors could meet and approve the expected cost of compliance with the Draft Order. (Won Dec., ¶10.) The Regional Water Board granted Champion's request and continued its consideration of the revised Draft Order, setting it on the Regional Water Board's October 9, 2019, Board meeting uncontested calendar. The Regional Water Board also made minor modifications to the revised Draft Order to accommodate the waste dischargers. Regional Water Board staff, Bill Cook, contacted Maiden to confirm that Champion would not contest the revised Draft Order. On October 7, 2019, Cook received an email from Maiden indicating that he had not received approval to allow the Regional Water Board to adopt the revised Draft Order uncontested. (Cook Dec., ¶22, Ex. 1.) On October 8, the Regional Water Board pulled the revised Draft Order from its agenda, notifying the waste dischargers that it would consider the revised Draft Order at its November 13, 2019 meeting.4 *Id.* at ¶23. That same day, Champion filed this Motion.

### C. CHAMPION GAVE THE WATER BOARDS EVERY REASON TO BELIEVE IT WOULD PARTICIPATE IN REMEDIATION BEFORE, DURING, AND AFTER ITS REORGANIZATION.

19. Until Champion filed this Motion, it gave no indication that it believed its cleanup or related obligations at and around the Site were discharged in bankruptcy. Rather, Champion

---

[4] The Regional Water Board released a new draft order on November 6, 2019. (Won Dec., Ex. 1.)

11

assured the Water Boards that the Reorganized Debtors would remain responsible for remediation under the Cost Sharing Agreement in its communications with the Regional Water Board's counsel, Champion's objection to the Water Boards' claims, and this Court's Order sustaining that objection.

20. On December 12, 2016, Champion proposed that it assume the Joint Defense and Cost Sharing Agreement as part of its Second Plan Supplement. (Dkt. No. 972, pp. 28 (list of assumed contracts), 44 (assumed contracts in redline, showing Cost Sharing Agreement added to Plan).) No party challenged this assumption, and this Court adopted it as part of the Plan. On October 20, 2017, Reorganized Debtors' attorney Blair Warner contacted the Regional Water Board's attorney Tamarin Austin concerning an objection to the Water Boards' protective proofs of claims. Warner's email states, "[T]he Debtors in these cases assumed this cost sharing agreement in its entirety and therefore the ongoing remediation and monitoring obligations at the site remain the ongoing responsibility of the Reorganized Debtors." (Declaration of Tamarin Austin, ¶3, Ex. 1.) The Reorganized Debtors' Objection, filed the same day, attests that although the Water Boards "are not direct parties to the Cost Sharing Agreement," the Reorganized Debtors remain obligated to remediate the site, addressing the Water Boards' concerns regarding the Site. (*See* Dkt. No. 1369, pp. 12–13.) This Court sustained the Reorganized Debtors' Objection, using the language proposed by the Reorganized Debtors to affirm that "the Reorganized Debtors remain obligated to perform their duties under the Cost Sharing Agreement . . . ." (Dkt. No. 1381-1, pp. 2–3.)

21. Champion participated in lengthy discussions with the Regional Water Board concerning the Draft Order. None of those discussions mentioned a bankruptcy discharge. This Motion, filed on October 8, 2019, surprised the Water Boards and the other waste dischargers. It was not until the Regional Water Board's attorney Yuri Won raised the issue on Wednesday, October 23, 2019, that Champion and the other dischargers discussed the bankruptcy and its impact on the revised Draft Order. (Won Dec., ¶14.)

## IV. ARGUMENT

### A. LEGAL STANDARDS AND PROCEDURE.

22. A bankruptcy court has jurisdiction to make orders giving force to an approved plan.  *See* 11 U.S.C. § 105(a), 28 U.S.C. § 2201(a).  The decision to make such orders is discretionary.  *See, e.g.*, *Stonington Partners, Inc. v. Lernout & Hauspie Speech Prod. N.V.*, 310 F.3d 118, 128–9 (3d Cir. 2002).  Because the Water Boards declined to consent to entry of a final order or judgment on any claim that otherwise requires adjudication by a state or Article III court, this Court lacks jurisdiction to decide the application of state laws and regulations.  28 U.S.C. § 157(b); *see also Stern v. Marshall*, 564 U.S. 462, 494 (2011).

23. Where pleadings in bankruptcy admit sufficient facts such that relief can be granted or denied, a court may decide the issue without reviewing evidence.  *See* Fed. R. Bankr. P. 7012(b), Fed. R. Civ. P. 12(b)(6), (c).  If resolution of a motion requires a court to consider matters outside of the pleadings, a court may treat the motion as one for summary judgment.  *See* Fed. R. Civ. P. 12(d); *see also* Fed. R. Bankr. P. 7056, Fed. R. Civ. P. 56.  If factual questions are in dispute, a court shall hold an evidentiary hearing to accept live testimony.  *See* Fed. R. Bankr. P. 9014(d), 9017, Fed. R. Civ. P. 43.

24. When a bankruptcy debtor alleges that multiple claims or obligations were discharged, courts evaluate each obligation separately.  *See In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 303, 309 (3d Cir. 1999) (affirming injunction against some causes of action but not others).  Although Champion does not clearly identify two obligations, its Motion challenges two actions by the Water Boards: (1) the Regional Water Board's order compelling Champion to clean up the Site, and (2) the State Water Board's invoicing oversight costs. (Motion, ¶16.)

25. At this time, the Water Boards are unable to ascertain whether an evidentiary hearing is required to resolve this Motion.  The Water Boards' objection relies on evidence beyond the Motion, but Champion may contest the material facts.  Counsel for Champion and the Water Boards conferred and expect to file a status update after Champion has an opportunity to review this objection, informing the Court whether an evidentiary hearing will be necessary.

**B. THE SETTLED LAW OF THIS CIRCUIT IN *IN RE TORWICO* PRECLUDES DISCHARGE OF CHAMPION'S CLEANUP OBLIGATIONS AT THE PARK ROAD SITE.**

26. The Reorganized Debtors' Plan explicitly excludes the discharge of obligations that are not claims under the Bankruptcy Code. (Dkt. No. 99-1, p. 55; *see also* Motion, ¶¶ 28, 32–35.) The Bankruptcy Code defines a claim as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). "The key here is whether the asserted claim is a 'right to payment.' If so, it is a 'claim' under the Bankruptcy Code and is barred by the Plan injunction; if not, it is not a 'claim' and is not so barred." *In re Kaiser Aluminum Corp.*, 386 F. App'x 201, 204 (3d Cir. 2010) (citing *Ben Franklin Hotel*, 186 F.3d at 303).

27. "[A] cleanup order that accomplishes the dual objectives of removing accumulated wastes and stopping or ameliorating ongoing pollution emanating from such wastes is not a dischargeable claim." *In re Torwico Elecs., Inc.*, 8 F.3d 146, 149 (3d Cir. 1993) (quoting *In re Chateaugay,* 944 F.2d 997 (2d Cir. 1991)). An order requiring a discharger to remediate "an ongoing and continuing threat," is not a right to payment. *Id.* at 150 (discussing *Chateaugay*, 944 F.2d at 1008, and *In re CMC Heartland Partners*, 966 F.2d 1143, 1146–47 (7th Cir. 1992)).

28. *Torwico* applies to environmental remediation orders when two conditions exist: (1) the government demands remediation, not payment, and (2) the environmental harm is ongoing. *Id.* at 150. Both are present in this case. The revised Draft Order imposes an injunction, not a duty to pay.[5] (*See* Won Dec., Ex. 1, p. 9). TCE contamination creates ongoing harm to the environment and risks to human health. (*See* Cook Dec., ¶¶3, 8–13.) That Champion may have to spend money to comply is irrelevant. *Torwico*, 8 F.3d at 150.

---

[5] A different analysis applies to the invoices for oversight costs. *See* Part VI.C, *infra*.

14

29. Champion's invocation of *Ohio v. Kovacs*, 469 U.S. 274 (1985), is misplaced. *Kovacs* concerned a remediation obligation *already* reduced to an amount of money owed. *Id*. at 284. *Torwico* follows *Kovacs*, but explains that unlike Kovacs, Torwico was obligated to conduct the cleanup. *See Towrico*, 8 F.3d at 151. Like the cleanup order in *Torwico*, the Regional Water Board's revised Draft Order imposes an injunction. California Water Code Section 13304(a) provides that a discharger "shall, upon order of the regional board, clean up the waste or abate the effects of the waste . . . ." Cal. Water Code § 13304(a). If Champion does not comply, the Water Boards' remedy is for the California "Attorney General, at the request of the board, [to] petition the superior court . . . for the issuance of an injunction requiring the person to comply with the order." *Id*. If Champion fails to comply with the injunction, the remedy is imposition of a fine or imprisonment for contempt. Cal. Civ. Proc. Code §§ 1218(a) (fine and imprisonment for five days), 1219 (imprisonment until compliance).

30. Champion's argument that it does not own the property is also misplaced. Torwico did not own the property either. *Torwico*, 8 F.3d at 151. The Third Circuit explained that this did not matter because the cleanup obligations "run with the waste." *Id*. Champion is perfectly capable of continuing to participate in the cleanup as part of the Discharger Group. (*See* Cook Dec., ¶15.)

31. Champion is also wrong that specific provisions in its plan concerning remediation in Fairfield, Illinois imply that it has no obligations in Benicia, California. There is no requirement that a reorganization plan enumerate cleanup obligations that are not claims. In accord with the Bankruptcy Code, the Reorganization Plan explicitly exempts obligations that are not claims. (Motion, ¶28.) And even if it had not, it would not matter because a bankruptcy plan cannot transform a non-claim obligation into a discharged claim.

32. Champion's pattern of conduct before this Motion confirms that it understood that the remediation obligation would not discharge. It assumed the relevant agreement. (*See* Dkt. No. 972, pp. 28, 44.) It repeatedly told to the Water Boards' representatives and this Court that it would continue remediation. (*See* Austin Dec., Ex. 1 (email explaining that remediation remains

15

Champion's responsibility), Dkt. No. 1369, pp. 12–13 (objection to proof of claim affirming that Champion remains obligated to remediate the Site).)  It assumed a contract to address the situation, kept the Discharger Group intact, and continued its remediation activities until it filed this Motion.  Champion's new position—that it is immune from cleanup obligations—runs contrary to established law and its own prior actions and representations.

### C. CHAMPION ASSUMED the OBLIGATION TO CONTRIBUTE TO OVERSIGHT COSTS BY ASSUMING the COST SHARING AGREEMENT.

33. Champion is obligated to continue paying oversight costs under the terms of the Joint Defense and Cost Sharing Agreement.[6]  (Dkt. Nos. 972, pp. 28, 44, 1381-1, pp. 2–3.)  That Agreement requires it to share these costs, and it assumed this contract in its reorganization.  An assumed contract is entitled to administrative expense priority.  *See* 11 U.S.C. § 365(g)(2), *In re Multech Corp.*, 47 B.R. 747, 751–52 (Bankr. N.D. Iowa 1985).  Because Champion assumed the Cost Sharing Agreement, this Court need not reach the question of whether Champion is obligated to pay oversight costs.

34. Champion's focus on the cost recovery language in the revised Draft Order, *see* Motion, ¶16, is misplaced.  That language informs the dischargers of their obligations under state law.  *See* Cal. Water Code § 13304(c)(1).  The State Water Board, not the Regional Water Board, sends invoices for oversight costs.  And the State Water Board has consistently sent the invoices to the dischargers' consultant, Environmental Resources Management.  (Won Dec., ¶¶19–20, Ex. 2.)  Neither Board determines the share that any one party contributes.

35. The immunity or unavailability of a discharger (*e.g.*, dissolved corporations) does not reduce the amount invoiced because all dischargers are jointly and severally responsible under the California Water Code Section 13304.  *See San Diego Gas & Elec. Co. v. San Diego Reg'l*

---

[6] Counsel has reviewed a copy of the Joint Defense and Cost Sharing Agreement, but omitted it from this filing to protect the privacy interests of the dischargers and avoid an unnecessary motion to seal.  Counsel will bring a copy to the hearing on November 25, 2019, that the Court may review if it considers it necessary.

*Water Quality Control Bd.*, 36 Cal. App. 5th 427, 436, 505 (2019).  The State Board rightly invoices the full cost to the dischargers' consultant.  If Champion seeks to reform its obligations under the Cost Sharing Agreement, that is between Champion, the other dischargers, and their consultant.

## V. CONCLUSION

36. Third Circuit precedent, on point, holds that Champion's cleanup obligations run with the waste.  Champion signed a Joint Defense and Cost Sharing Agreement with other dischargers to manage this obligation.  That group made progress at the Site, and Champion prudently assumed that contract in its reorganization.  It must continue to satisfy its cleanup obligations under California law.  This Court should sustain the Water Boards' objection and deny Champion's Motion.

XAVIER BECERRA
Attorney General of California
ANNADEL A. ALMENDRAS
Supervising Deputy Attorney General
MICHAEL S. DORSI
Deputy Attorney General

*/s/ Michael S. Dorsi*
Michael S. Dorsi
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-3802
Fax: (415) 703-5480
Email:  Michael.Dorsi@doj.ca.gov
*Attorneys for California State Water Resources Control Board and California Regional Water Quality Control Board, San Francisco Bay Region*