## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UCI INTERNATIONAL, LLC, *et al.*, | ) | Case No. 16-11354 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Re: Docket No. 1465** |

## CRANBROOK REALTY INVESTMENT FUND L.P.'S
## OBJECTION TO MOTION FOR ENFORCEMENT OF PLAN

Cranbrook Realty Investment Fund, L.P. ("Cranbrook"), by and through its undersigned counsel, submit this Objection to Motion of Reorganized Debtors for the Entry of an Order (I) Enforcing the Plan and Confirmation Order, Including the Discharge and Injunction Provisions, and (II) Granting Related Relief [Docket No. 1465] ("Motion").  As more fully set forth below, Cranbrook respectfully requests that this Court deny the Motion because, among other reasons, the Reorganized Debtors should not be permitted at this stage to repudiate, post-confirmation, an already assumed executory contract:

## BACKGROUND

1. Cranbrook is the current owner of the property located at 4186 Park Road, Benicia, California, referred to in the Motion as the "Benicia Industrial Park" (hereinafter, the subject property will sometimes be referred to as the "Site" or the "Subject Property"). Cranbrook purchased the Subject Property in July 2017 from Equity Office Properties Trust ("EOP"). Because the Motion seeks to relieve Champion (as defined below) of responsibilities under law and under contract, as described below, which relief would cause serious injury to Cranbrook, Cranbrook has standing to interpose its objections.

2.	At the time Cranbrook purchased the Subject Property, it was, and had been since approximately 2000, the subject of an ongoing investigation and remediation of contamination by certain hazardous substances, the most serious of which was Trichloroethylene (TCE). The investigation was being carried out under the supervision of the California Regional Water Quality Control Board for the San Francisco Bay Region, an agency of the State of California ("Water Board"). The Water Board is responsible for investigation and remediation of contamination that affects or may affect waters of the State of California.

3.	As of the early 2000s, the "responsible parties" for investigating and remediating the Subject Property were identified by the Water Board as Champion Laboratories, Inc., one of the Debtors herein ("Champion"); a predecessor entity of Maxion Wheels USA LLC ("Maxion"); EOP; and certain other parties not here relevant.

4.	When Cranbrook purchased the Subject Property from EOP in 2017, the Debtor group that includes Champion had already confirmed their Plan of Reorganization (the "Plan"), on December 6, 2016.

5.	As part of the Plan, Champion agreed to assume as an executory contract that certain agreement entitled "Benicia Industrial Park Joint Defense and Cost Sharing Agreement," dated November 14, 2002, as later amended by the "Modification to Benicia Industrial Park Joint Defense and Cost Sharing Agreement," dated April 14, 2004. (Hereinafter these two agreements will be referred to collectively as the "Cost Sharing Agreement"). Among the relevant parties to the Cost Sharing Agreement at its inception and at the time of its modification were Champion, EOP and a predecessor to Maxion.

6.	Pursuant to the terms of the Cost Sharing Agreement, Champion, EOP and Maxion agreed to share certain confidential information concerning the ongoing investigation and eventual

remediation of the Subject Property as part of a "joint defense" of their respective interests during such investigation and/or remediation, and to share in certain assigned percentages the costs, both past and future, of investigation and remediation. Such costs included those incurred in actual investigatory work at the Site, the costs of remediation as might be necessary, and the so-called "oversight costs" charged to the parties[1] by the Water Board for its supervision of the investigation and remediation. Nowhere in the Cost Sharing Agreement are the cost sharing responsibilities of any of the parties tied to either an actual cleanup order issued by the Water Board or any directive given to a specific party to the Cost Sharing Agreement by the Water Board or other responsible governmental authority. Specifically as to "future costs" the Cost Sharing Agreement provides that the parties will be responsible, in their assigned and agreed to percentages, "to share investigation and/or remediation costs incurred after the execution date of this [Cost Sharing] Agreement, so long as this Agreement remains in effect." (Cost Sharing Agreement, ¶ 4.1). By its own terms the Cost Sharing Agreement was to remain in effect "until the [Water] Board, or any other agency that has asserted jurisdiction of the [Subject] Property, issues an order or other documentation, such as a No Further Action letter, indicating that the investigation and remediation of the Property is complete . . . . unless the Parties agree to extend the terms of this Agreement." (Id. ¶ 8.1). No such termination of investigation or remediation has been approved or acknowledged by the Water Board. To the contrary, the Water Board has prepared a Tentative Order demanding further investigation and remediation of the Site by the named "Dischargers," Champion, Maxion and (now) Cranbrook.

---

[1] The invoices for the oversight costs were actually sent by the Water Board on a monthly basis to the environmental consultant firm retained by the parties to do the investigation and remediation, but they were paid by the parties in accordance with their percentage shares.

7. The Cost Sharing Agreement provided that it is assignable on the written consent of all the parties thereto. (¶ 15.3).

8. As part of its purchase and sale agreement with EOP, Cranbrook agreed to an assignment to it of the terms and conditions of the Cost Sharing Agreement, thereby replacing EOP as a party thereto (the "Assignment"). The Assignment was consented to in writing by the remaining parties to the Cost Sharing Agreement, including Champion and Maxion. Cranbrook thereby stood in the shoes of EOP with respect to its responsibilities under the Cost Sharing Agreement, including EOP's percentage of costs to be borne by it under said Agreement.

9. At the time of the Assignment, Cranbrook was aware that as part of the Plan Champion had assumed the Cost Sharing Agreement as an executory contract. Notice of such assumption, identifying the Cost Sharing Agreement by name, had been given by Champion in its Chapter 11 bankruptcy in December 2016 contemporaneous with the Order confirming the Plan. Cranbrook reasonably relied upon Champion's continued participation as a party to the Cost Sharing Agreement when it agreed to purchase the Subject Property from EOP. Its reliance was based in large part on Champion's assumption of the Cost Sharing Agreement in the confirmed Plan.

10. Since Cranbrook took title to the Subject Property in July 2017 it has participated in good faith as one of the so-called "Park Road Group," which includes Champion and Maxion ("PRG"), in collaborating to undertake the ongoing investigation and cleanup of the Subject Property. During this time Champion has taken the lead in overseeing management of the investigation of the Site and has been the lead contact for the environmental consultant firm, ERM, Inc., that has directed, recommended and carried out all investigation and remediation of the Site.

In fact, Champion assumed the lead role in carrying out the obligations of the named Dischargers since at least 2004, thus pre-petition, post-petition, post-assumption, and post-confirmation.

11. In addition, since the Assignment, Cranbrook has dutifully paid its percentage share, under the terms of the Cost Sharing Agreement, of all costs incurred in the investigation, including without limitation its share of oversight costs invoiced by the Water Board. Champion also has been paying its percentage share during all of this time. At no time since Cranbrook has owned the Subject Property, or before to its knowledge, has Champion indicated that it would not continue to honor its responsibilities under the Cost Sharing Agreement. Nor until the filing of this Motion has Champion stated or even suggested that it would not continue to be a full participant with the other parties to the Cost Sharing Agreement in carrying out an investigation and remediation of the Site, as required by the Water Board.

12. In or about April 2019, the Water Board indicated that it would issue a Tentative Order for further investigation and remediation of the Site and did so shortly thereafter. If adopted, such an Order would impose additional cleanup obligations on the Site. Nevertheless, Champion continued to participate with Cranbrook and Maxion in negotiating acceptable terms to the proposed Tentative Order. It provided extensive comments to the Tentative Order and participated in meetings and telephone conferences with the Water Board staff in charge of the Site, along with representatives of Cranbrook and Maxion, through the end of August 2019.

13. In early September 2019, the Water Board and the PRG had reached what all parties believed was an acceptable form of Tentative Order for continued investigation and eventual complete remediation of the Site. However, prior to the scheduled hearing date before the assembled Water Board (September 11, 2019), Champion, through its environmental attorney, surprisingly announced that it had not yet reached a decision as to whether to contest the latest

version of the Tentative Order. Accordingly, the Water Board put off the hearing date until its next scheduled meeting, October 9, 2019. Still, Champion stated through counsel that it had not decided what to do.

14. As it turned out, Champion filed this Motion on October 8, 2019, without giving any prior notice of its intention to do so either to the other members of the PRG or to the Water Board.

**OBJECTION**

15. Champion is not entitled to the relief it seeks for the reasons set forth in the objections filed by the State of California on behalf of the Water Board and by Maxion, all of which are adopted by Cranbrook and incorporated herein by reference.

16. If Champion were to be released from its obligations to the Water Board as a Discharger (of contamination), it is not clear that it would not take the position thereafter that it owes no responsibility to the other parties to the Cost Sharing Agreement, who (either through themselves or their predecessors) negotiated the terms of such Agreement in good faith and in reliance on Champion's good faith in carrying out its own responsibilities under the Cost Sharing Agreement. This position would fly in the face of Champion's Plan, its assumption of the Cost Sharing Agreement as an executory contract, and Champion's post-confirmation acknowledgment of responsibility to carry out its obligations under the Cost Sharing Agreement (see Exhibit 1 to Declaration of Tamara Austin filed in support of the Water Board's objection [Docket No. 1469-1]), but it should not be given the opportunity to make such a brazen argument under the guise of the outcome of this Motion.

17. It would be inequitable and a grave injustice for the non-debtor participants in the Cost Sharing Agreement if Champion were to escape its obligations under said Agreement, in light

of the fact that Champion has already agreed, as part of its Plan, to accept the burdens and benefits of the Cost Sharing Agreement, and the other parties to such Agreement, including Cranbrook, have relied to their detriment on Champion's asserted acceptance of these burdens and benefits.

18. Champion is now estopped from claiming that its obligations as a contributor to contamination at the Site have been discharged, inasmuch as it has for nearly three years since assuming the obligations of a Discharger continued to participate in the ongoing, State-supervised investigation and cleanup without maintaining that it has no duty to do so, and it has continued to pay the costs incurred in carrying out these obligations without protest or claim of non-responsibility. Champion has therefore waived its right to claim now that it is entitled to be discharged from this obligation.

*[Remainder of Page Intentionally Left Blank.]*

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Cranbrook respectfully requests that this Court:

A.  Deny, or defer consideration of, any or all of the relief sought in the Motion of Reorganized Debtors for the Entry of an Order (I) Enforcing the Plan and Confirmation Order, Including the Discharge and Injunction Provisions, and (II) Granting Related Relief; and

B.  Otherwise grant such other and further relief as is consistent with this Objection and as may be just and appropriate in the circumstances.

| | |
|---|---|
| Dated: November 8, 2019<br>Wilmington, Delaware | **POTTER ANDERSON & CORROON LLP**<br><br>*/s/ Jeremy W. Ryan*<br>Jeremy W. Ryan (DE Bar No. 4057)<br>1313 North Market Street, Sixth Floor<br>Wilmington, DE 19801<br>Telephone:  (302) 984-6000<br>Facsimile:  (302) 658-1192<br>Email:  jryan@potteranderson.com<br><br>-and-<br><br>**BERLINER COHEN, LLP**<br>Ralph J. Swanson, Esq.<br>10 Almaden Blvd., Eleventh Floor<br>San Jose, California 95113<br>Telephone:  (408) 286-5800<br>Facsimile:  (408) 998-5388<br>Email:  Ralph.Swanson@berliner.com<br><br>*Attorneys for Cranbrook Realty Investment Fund, L.P.* |