**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UCI INTERNATIONAL, LLC, <u>et al.</u>, | ) | Case No. 16-11354 (MFW) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: November 25, 2019 @ 10:30 a.m. |
| | ) | Obj. Deadline: November 11, 2019 @ 12:00 noon |
| | ) | Re: Docket No. 1465 |

**OBJECTION OF MAXION WHEELS USA LLC TO MOTION OF REORGANIZED DEBTORS FOR THE ENTRY OF AN ORDER (I) ENFORCING THE PLAN AND CONFIRMATION ORDER, INCLUDING THE DISCHARGE AND INJUNCTION PROVISIONS, AND (II) GRANTING RELATED RELIEF**

Maxion Wheels USA LLC ("Maxion"), by and through its undersigned counsel, hereby objects (the "Objection") to the *Motion of Reorganized Debtors for the Entry of an Order (I) Enforcing the Plan and Confirmation Order, Including the Discharge and Injunction Provisions, and (II) Granting Related Relief* (the "Motion") [D.I. 1465] filed by UCI International, LLC ("UCI") and Champion Laboratories, Inc. ("Champion" and together with UCI, "Debtors") under sections 105(a), 524, 1129, and 1141 of the United States Code, 11 U.S.C. § 101, *et seq*. (as amended, "Bankruptcy Code")[1]. In support of its Objection, Maxion respectfully states as follows:

---

[1] Maxion is the successor to the debtors in another Chapter 11 case filed in the U.S. Bankruptcy Court for the District of Delaware, *In re Hayes Lemmerz International, Inc., et al.*, Case No. 09-11655 (MFW) (Jointly Administered). Pursuant to the Order dated November 3, 2009, D.I. 833, confirming the modified First Amended Joint Plan of Reorganization in that case, Maxion has the benefit of a discharge and other injunctive relief. Thus, notwithstanding anything to the contrary in this Objection, Maxion reserves all rights and remedies under its discharge and otherwise from its bankruptcy case, or arising as a result of such discharge or injunctive relief, including for a determination and order enforcing the confirmation order and discharge and injunction provisions under its confirmed plan of reorganization against the Board.

**INTRODUCTION**

1. Maxion, Champion, and Cranbrook Realty Investment Fund, L.P. are the current parties to the Benicia Industrial Park Joint Defense and Cost Sharing Agreement, dated November 14, 2002, as later amended by the Modification to Benicia Industrial Park Joint Defense and Cost Sharing Agreement, dated April 14, 2004 (collectively, "Cost Sharing Agreement").

2. The Cost Sharing Agreement relates to environmental remediation demanded or ordered by the San Francisco Bay Regional Water Quality Control Board (the "Board") with respect to a property located at 4186 Park Road, Benicia California (the "Benicia Industrial Park" or the "Site").  Pursuant to the Cost Sharing Agreement, Champion agreed, among other things, to share investigation and response costs for the Site incurred after the execution date of the Cost Sharing Agreement, and to cooperate in undertaking cleanup activities at the direction of the Board.

3. More specifically, the parties agreed to jointly engage an environmental consultant to direct appropriate cleanup activities at the Site, and to share in investigation and/or remediation costs at the Site "incurred after the execution date of this Agreement, so long as this Agreement remains in effect" at a proportion agreed-upon by the parties.  The parties' obligations under the Cost Sharing Agreement remain in effect until receipt of "documentation, such as a No Further Action letter, indicating that the investigation and remediation of the Property is complete and no further action will be required by the Parties."

4. In early 2019, the parties learned that the Board planned to impose additional cleanup obligations at the Site, which are expected to last for at least five and potentially fifteen years ("Cleanup Order").  The parties, including Champion, negotiated with the Board a modified Cleanup Order, a copy of which is attached hereto as **Exhibit A**.  Champion and its attorneys led

the negotiations which resulted in the Cleanup Order.  The Cleanup Order has the opposite effect of a No Further Action Letter – the Board has clearly indicated to the parties that it believes further action is needed at the Site.  Thus, the parties remain liable to one-another under the Cost Sharing Agreement for the foreseeable future.

**BANKRUPTCY AND ASSUMPTION OF THE COST SHARING AGREEMENT**

5.      On June 2, 2016 ("Petition Date"), Champion filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code which is jointly administered with its affiliates.  In 2016, Maxion received notice that Champion proposed to assume the Cost Sharing Agreement under Section 365 of the Bankruptcy Code ("Notice", a copy of which is attached hereto as **Exhibit B**).  The Notice stated "that the Debtors are proposing to assume the . . . Benecia [sic] Industrial Park Joint Defense and Cost Sharing Agreement Dated 11/14/2002 as modified pursuant to the Subject Agreement dated 4/14/2004."  Under the Notice, Champion acknowledged being in default under the Cost Sharing Agreement and proposed to cure the default by paying $13,998.46.

6.      Under Debtors' confirmed Joint Plan of Reorganization ("Plan"), as set forth in the Amended Assumed Executory Contracts and Unexpired Lease List attached as Exhibit 6.1.2 to the Second Plan Supplement, Debtors explicitly assumed the Cost Sharing Agreement.  D.I. 972 and 992.  Originally, Exhibit 6.1.2 did not include the Cost Sharing Agreement in the list of contracts being assumed.  D.I. 921.  The Second Plan Supplement amended Exhibit 6.1.2, and the only addition to the Exhibit is the inclusion of the Cost Sharing Agreement.  D.I. 972.  Without a doubt, the assumption of the Cost Sharing Agreement was deliberate and intentional.   A copy of the Second Plan Supplement is attached hereto as **Exhibit C**.

7.      "Assumption of the executory contract requires the debtor to accept its burdens as well as permitting the debtor to profit from its benefits." *In re Univ. Med. Ctr.*, 973 F.2d 1065,

1075 (3d Cir. 1992). A party who assumes an executory contract must assume it in its entirety; it may not be assumed in part and rejected in part. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984); *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir. 1984). When a debtor assumes an executory contract under section 365, the debtor must perform "in full, just as if the bankruptcy had not intervened." *In re Frontier Properties*, 979 F.2d 1358, 1367 (9th Cir. 1992); *In re Airlift Int'l*, 761 F.2d 1503 (11th Cir. 1985); *In re Steelship Corp.*, 576 F.2d 128, 132 (8th Cir. 1978). "Once an assumption order is entered, the creditor must perform in accordance with the terms of the assumed agreements. However, as a matter of fairness, before requiring the creditor to perform, courts require the debtor in possession to 'give[ ] to the other contracting party the full benefit of [its] bargain.'" *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (3d Cir. 2003) (internal citation omitted). In other words, a debtor cannot assume the benefits of an executory contract without assuming its burdens as well. Accordingly, reorganized Champion remains a party to, and obligated under, the Cost Sharing Agreement.

8.  Rejection of an executory contract "not only relieves the estate of onerous and burdensome future obligations but it also gives rise to a prepetition general unsecured claim for damages rather than an administrative expense priority" for the other party. *In re Spectrum Info. Tech., Inc.*, 190 B.R. 741, 746 (E.D.N.Y. 1996); see also *In re: General Datacom Indus., Inc.*, 407 F.3d 616, 617 (3d Cir. 2005). "Had the agreements been rejected, the breach of the agreements would have been deemed to have occurred immediately before the filing of the petition and the defendants would have been allowed general unsecured claims." See 11 U.S.C. § 365(g)(1); *NLRB v. Bildisco and Bildisco*, 465 U.S. at 531.

9.  Because Champion assumed the Cost Sharing Agreement, Maxion had no need to participate in the bankruptcy as a creditor nor assert a claim against Champion. And given that

the cure amount was identified as only $13,988.46, the Notice gave no hint of any argument that the contemporaneous discharge injunction also cancelled future liability under the Cost Sharing Agreement; the cure amount would in that circumstance need to be estimated for the then present value of cleanup costs which Champion would arguably not be paying because of the discharge. The Cost Sharing Agreement is governed by the laws of the State of California under a choice of law provision. Under California law, the remedy for breach of contract is expectation damages. See Cal. Civ. Code § 3281.

10. If Debtors had rejected the Cost Sharing Agreement in 2016, Maxion would have been a creditor holding a large general unsecured claim for damages, and would have received its "GUC Pro Rata Allocation of New Common Stock" under Champion's confirmed Plan. Instead, Debtors assumed the Cost Sharing Agreement, agreeing to perform their future obligations thereunder. It is no secret that those obligations included payment of money as needed to satisfy environmental remediation obligations established by the Board.

11. Further, post-confirmation, the Debtors relied on the existence of the assumed Cost Sharing Agreement to support their objection to the Board's protective proofs of claim. See D.I. 1369, a copy of which is attached hereto as **Exhibit D**. Specifically, the Debtors asserted that:

> "Reorganized Debtors assumed the Cost Sharing Agreement under the Plan, as set forth in the Amended Assumed Executory Contract and Unexpired Lease List attached as Exhibit 6.1.2 to the Second Plan Supplement, filed on December 2, 2016 . . . . Although the claimants of the Protective No Liability Claims are not direct parties to the Cost Sharing Agreement, the Debtors believe that the obligations undertaken by the Benicia Parties in that agreement are being performed to address claimants' concerns regarding the Site. As the remediation and monitoring obligations in the Cost Sharing Agreement were assumed pursuant to the confirmed Plan, the Reorganized Debtors remain obligated to perform their duties under the Cost Sharing Agreement."

This prior assertion is at odds with what the Debtors now appear to be trying to do via their Motion. By their very own admission, post-confirmation and post-assumption of the Cost Sharing

5

Detroit_16394235_7

Agreement, the Debtors acknowledge their continuing obligations under the assumed Cost Sharing Agreement.

## DEBTORS' MOTION SHOULD BE DENIED

12. The Board has filed an objection to the Motion (the "Board Objection") [DI 1469] arguing, among other things, that the discharge and related injunction do not apply to Debtors' clean up obligations at the Site.

13. "The court's authority to grant declaratory relief requested under 11 U.S.C. § 105(a) or 28 U.S.C. § 2201(a) is discretionary." *In re Cousins Int'l Food Corp.*, 553 B.R. 197, 201 (Bankr. D.P.R. 2016), aff'd in part, appeal dismissed in part, 565 B.R. 450 (B.A.P. 1st Cir. 2017). "[A] declaratory judgment should not be entered unless it disposes of a controversy and serves a useful purpose." *State Farm Mut. Auto. Ins. Co. v. Mid-Continent Cas. Co.*, 518 F.2d 292, 296 (10th Cir. 1975). State courts and bankruptcy courts have concurrent jurisdiction over the enforcement of discharge injunctions. See *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019).

14. Debtors did not serve the Motion on Maxion or Cranbrook, asserting that notice only to the Board was necessary. D.I. 1465, at p. 22. If Champion's response is that it will be continuing to pay its agreed share of future costs regardless of this Court's ruling on the discharge, then Maxion (and the other objecting parties) cannot understand the economic value or, indeed, the purpose of this Motion. Champion has refused to explain its rationale.

15. Not until the filing of the Motion has Champion indicated or even suggested that it would not continue to honor its obligations under the assumed Cost Sharing Agreement. For three years, post-confirmation and post-assumption, Debtors have not asserted that the discharge injunction applied, and instead continued to perform under the assumed Cost Sharing Agreement. Champion is now estopped and has waived any claim that its obligations under the assumed Cost

Sharing Agreement are discharged. Further, Debtors' motion unnecessarily risks putting the parties and this Court in a position where Champion might argue that two contemporaneous orders (discharge and assumption) are at odds.

16. In the Motion, Debtors acknowledge that they have, both before and since 2016, been subject to certain directives of the Board with respect to the Site, and that the Board asserts that Debtors "remain responsible to investigate, assess, monitor, remediate, and cleanup [sic] the site, which necessarily requires that the Reorganized Debtors incur significant costs and remit payments on account of such activity." D.I. 1465, at pp. 1-2. Far from an unexpected hiccup in the bankruptcy case, this outcome is entirely consistent with what Debtors agreed to do when they assumed the Cost Sharing Agreement. More importantly, this is consistent with the Bankruptcy Code and what Debtors represented to Maxion and the Board by assuming the Cost Sharing Agreement.

17. Debtors assert that a specific exception from discharge for similar environmental obligations related to real property in the State of Illinois "evidences the intent of Debtors not to agree to future liability in connection with the Benecia [sic] Industrial Park." D.I. 1465, at p. 3. This argument defies logic. Debtors obtained an explicit exclusion for environmental obligations in Illinois, while at the same time assuming an executory contract that called for Debtors to satisfy similar environmental obligations in California. This is far different than the conclusion that could be drawn had Debtors failed to address the Benicia Industrial Park environmental obligations whatsoever.

18. In their Motion, Debtors assert that they have complied with the Board's directives as part of a "business decision to remit certain payments to the State Board, rather than challenging whether their obligations related to the Benecia [sic] Industrial Park were discharged in accordance

with the terms of the Plan." Doc. 1465, at p. 13. Importantly, since the Plan was confirmed in December of 2016, Champion continued to participate in negotiations with the Board, to pay its share of oversight and cleanup costs, and negotiate the proposed Cleanup Order. *See* D.I. 992. Debtors have, at every step, led the Board and Maxion to believe that Champion would continue to perform under the assumed Cost Sharing Agreement. Only now, when the Board's expectations and directives are to be formalized in the Cleanup Order, do Debtors think to contest their liability.

19. Applying the discharge injunction for that purpose rewards Debtors for misleading the Court, Maxion, and the Board at the time of assumption of the Cost Sharing Agreement and under their objection to the Board's protective proofs of claim and is at odds with the confirmed Plan, and the Debtors' course of conduct.

20. Even assuming arguendo that the discharge is applicable to the Board, the discharge does not and cannot cancel, reduce, or impair the Debtors' obligations under the Cost Sharing Agreement. Debtors remain obligated to share the cost of any remediation ordered by the Board.

21. Even though Maxion was not served with the Motion, Maxion is justly concerned that Debtors will assert that application of the discharge injunction relieves them from their obligations under the Cost Sharing Agreement. However, the Court should not allow the Debtors to use the discharge injunction argument as a backdoor to escape liability under the assumed Cost Sharing Agreement.

## Conclusion

Debtors' obligations under the assumed Cost Sharing Agreement are no surprise. Debtors assumed the Cost Sharing Agreement and, in so doing, not only foreclosed Maxion from asserting a large claim in the bankruptcy, but also assured Maxion and the Board that Debtors would perform their obligations under the Cost Sharing Agreement. Only now, on the eve of the Cleanup Order

being entered, do Debtors appear to be attempting a backhanded rejection of the already assumed Cost Sharing Agreement.

WHEREFORE, Maxion respectfully requests that the Court enter an Order (i) denying the Motion, and (ii) granting such other relief as the Court deems just.

Date: November 11, 2019

                              BUCHANAN INGERSOLL & ROONEY PC

                              By: /s/ Mary F. Caloway (No. 3059)
                              Mary F. Caloway (No. 3059)
                              919 N. Market Street
                              Suite 990
                              Wilmington, Delaware 19801
                              Telephone: (302) 552-4200
                              Facsimile: (302) 552-4295
                              Email: mary.caloway@bipc.com

                                  -and-

                              BODMAN PLC
                              Marc M. Bakst (P41575)
                              6th Floor at Ford Field
                              1901 St. Antoine Street
                              Detroit, Michigan 48226
                              (313) 393-7530
                              mbakst@bodmanlaw.com

                              Attorneys for Maxion Wheels USA LLC